# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:25-CV-21176-DPG

DAVID JANNETTI, SARAH LYN
JANNETTI, ADAM JANNETTI, and
LEAH JANNETTI,

      Petitioners,

v.

STIFEL, NICOLAUS & CO., INC.,

      Respondent.

_____/

---

## RESPONDENT'S MOTION TO VACATE ARBITRATION AWARD

---

**Michael N. Kreitzer**
Florida Bar No. 705561
**Phillip M. Soven**
Florida Bar No. 1035504
kreitzerm@gtlaw.com
phil.soven@gtlaw.com
moisem@gtlaw.com
MIALitDock@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue,
Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

**G. Wayne Hillis, Jr.**
(*admitted pro hac vice*)
**Scott E. Zweigel**
(*admitted pro hac vice*)
**V. Justin Arpey**
(*admitted pro hac vice*)
whillis@bradley.com
szweigel@bradley.com
jarpey@bradley.com

**BRADLEY ARANT
BOULT CUMMINGS LLP**
Promenade Tower, 20th Floor
1230 Peachtree Street NE
Atlanta, GA 30309
Telephone: (404) 868-2001
Facsimile: (404) 868-2010

**Robert A. Sacks**
(*admitted pro hac vice*)
**Robert M.W. Smith**
(*admitted pro hac vice*)
sacksr@sullcrom.com
smithrob@sullcrom.com

**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Attorneys for Respondent Stifel, Nicolaus & Co., Inc.*

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. iii

I.  Summary of Facts and Procedural History ........................................................... 4

   A.  The Underlying Jannetti Arbitration. ...................................................... 4

   B.  The Deluca Arbitration. ......................................................................... 8

   C.  Ms. Charny's Wrongful Refusal to Recuse Herself from the Jannetti
       Proceeding .......................................................................................... 10

II. Argument ................................................................................................................ 12

   A.  Arbitrator Charny's Evident Partiality and Misbehavior Prejudiced
       Stifel and Deprived It of a Fundamentally Fair Hearing. ..................... 13

       1.  There Was Evident Partiality on Arbitrator Charny's Part That
           Requires the Award Be Vacated Under Section 10(A)(2) of the
           FAA. .................................................................................... 14

       2.  Arbitrator Charny's Refusal to Recuse Herself and False
           Certification Constituted "Misbehavior," Denied Stifel a Fair
           Hearing, and Exceeded Her Authority, Requiring That the Award
           Be Vacated Under Sections 10(A)(3) and (4) of the FAA. ........... 18

   B.  The Panel Exceeded Its Authority By Awarding Punitive Damages
       That Were Neither Requested By Petitioners Nor Allowed By The
       FSIPA..................................................................................................... 21

   C.  The Punitive Damages Award was Grossly Excessive and Violated
       Stifel's Right to a Fundamentally Fair Hearing. ................................... 25

       1.  This Court Can and Should Review the Excessiveness of the
           Arbitrators' Award. ............................................................ 25

       2.  The Punitive Damages Award is Grossly Excessive and Should Be
           Vacated. ............................................................................ 30

   D.  The Panel's Extraordinary $26.5 Million Attorneys' Fee Award Should
       Be Vacated Because the Panel Had No Basis to Make Such an Award
       and Exceeded Its Authority by Doing So. ........................................... 35

       1.  The Award Exceeded the Panel's Authority Because Petitioners
           Introduced No Evidence Regarding Attorneys' Fees and Costs. ......... 35

       2.  The Panel Exceeded Its Authority By Awarding Attorneys' Fees on
           Punitive Damages. ............................................................. 39

III. Conclusion .......................................................................................................... 42

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Marine, Inc. v. Cont'l Carbon Inc.*,
   481 F.3d 1302 (11th Cir. 2007) ............................................................................31

*Ainsworth v. Skurnick*,
   960 F.2d 939 (11th Cir. 1992) ..............................................................................41

*Antietam Indus., Inc. v. Morgan Keegan & Co.*,
   2013 WL 1213059 (M.D. Fla. Mar. 25, 2013) ............................................25, 41

*Aviles v. Charles Schwab & Co.*,
   435 F. App'x 824 (11th Cir. 2011) ......................................................................14

*Battles v. Am. Van Lines, Inc.*,
   2016 WL 1258597 (S.D. Fla. Mar. 31, 2016) ......................................................35

*Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region
   v. Union Pac. R. Co.*,
   522 F.3d 746 (7th Cir. 2008), *aff'd*, 558 U.S. 67 (2009) ................................19, 20

*Birmingham News v. Horn*,
   901 So. 2d 27 (Ala. 2004) ....................................................................................27

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)..........................................................................3, 26, 29, 34

*Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*,
   215 A.D.3d 956, 188 N.Y.S.3d 113 (2023) .........................................................41

*Buck v. Compton*,
   2023 WL 8812472 (6th Cir. Dec. 20, 2023) .......................................................20

*Busacca v. S.E.C.*,
   449 F. App'x 886 (11th Cir. 2011) ......................................................................27

*Cat Charter, LLC v. Schurtenberger*,
   646 F.3d 836 (11th Cir. 2011) .............................................................................21

*Citigroup Global Markets, Inc. v. Crandall*,
   2009 WL 10670164 (M.D. Fla. Apr. 8, 2009) .....................................................13

*CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc.*,
   662 F. App'x 701 (11th Cir. 2016) ......................................................................25

*Cote v. Philip Morris USA, Inc.*,
    985 F.3d 840 (11th Cir. 2021) ...................................................................32

*Davis v. Prudential Sec., Inc.*,
    59 F.3d 1186 (11th Cir. 1995) ........................................................ *passim*

*Diageo Dominicana, S.R.L. v. United Brands, S.A.*,
    314 So. 3d 295 (Fla. 3d DCA 2020) ...........................................................22

*E. F. Hutton & Co. v. Rousseff*,
    537 So. 2d 978 (Fla. 1989)...........................................................................24

*Edmondson v. Leesville Concrete*,
    500 U.S. 614 (1991)......................................................................................30

*Envirocycle Sols., Inc. v. Carpet Inn of Sarasota, Inc.*,
    933 So. 2d 1280 (Fla. 2d DCA 2006) ..........................................................37

*Fed. Vending, Inc. v. Steak & Ale of Fla., Inc.*,
    71 F. Supp. 2d 1245 (S.D. Fla. 1999) .........................................................14

*Ferraro L. Firm, P.A. v. Royal Merch. Holdings, LLC*,
    394 So. 3d 672 (Fla. 3d DCA 2024) ...........................................................27

*Fine v. Bear, Stearns & Co.*,
    765 F. Supp. 824 (S.D.N.Y. 1991) ..............................................................38

*Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*,
    314 F. Supp. 3d 1346 (S.D. Fla. 2018) ...............................................20, 23

*Franklin v. McCaughtry*,
    398 F.3d 955 (7th Cir. 2005) .......................................................................16

*Frazier v. CitiFinancial Corp., LLC*,
    604 F.3d 1313 (11th Cir. 2010) ...................................................................41

*Gasperini v. Ctr. for Humans., Inc.*,
    518 U.S. 415 (1996)......................................................................................10

*Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*,
    146 F.3d 1309 (11th Cir. 1998) ...................................................................15

*Glennon v. Dean Witter Reynolds, Inc.*,
    83 F.3d 132 (6th Cir. 1996) .........................................................................27

*Green v. Sch. Bd. of Hillsborough Cnty., Fla.*,
    25 F.3d 974 (11th Cir. 1994) .......................................................................35

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008)......................................................................................................41

*Harper v. Pro. Prob. Servs. Inc.*,
    976 F.3d 1236 (11th Cir. 2020) ...................................................................................20

*Hereford v. D.R. Horton, Inc.*,
    13 So. 3d 375 (Ala. 2009)............................................................................................27

*Hoeft v. MVL Grp., Inc.*,
    343 F.3d 57 (2d Cir. 2003), *abrogated on other grounds by Hall St. Assocs.,*
    *L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) ...............................................................16

*Honda Motor Co. v. Oberg*,
    512 U.S. 415 (1994)................................................................................................26, 30

*Horowitz v. Rossdale CLE, Inc.*,
    357 So. 3d 260 (Fla. 5th DCA 2023) ..........................................................................37

*Horton Homes, Inc. v. Shaner*,
    999 So. 2d 462 (Ala. 2008) ..........................................................................................27

*Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*,
    850 F.2d 876 (2d Cir. 1988)..........................................................................................29

*Irwin v. Marko*,
    417 So. 2d 1108 (Fla. 4th DCA 1982) .........................................................................19

*Karaha Bodas Co. v. Negara et al.*,
    364 F.3d 274 (5th Cir. 2004) ........................................................................................19

*Kates v. Seidenman*,
    881 So. 2d 56 (Fla. 4th DCA 2004) .............................................................................16

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
    341 F.3d 987 (9th Cir. 2003) ........................................................................................28

*Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*,
    2019 WL 2462865 (M.D. Fla. June 13, 2019).............................................................16

*Leslie v. Leslie*,
    859 So. 2d 543 (Fla. 4th DCA 2003) ...........................................................................19

*Levy v. Citigroup Glob. Markets, Inc.*,
    2006 WL 8432648 (S.D. Fla. Oct. 17, 2006)...............................................................14

*Lompe v. Sunridge Partners, LLC*,
    818 F.3d 1041 (10th Cir. 2016) ...................................................................................33

*Lugar v. Edmonson Oil*,
    457 U.S. 922 (1982) ..........................................................................................30

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
    901 F.3d 1282 (11th Cir. 2018) .......................................................................32

*MedValUSA Health Programs v. MemberWorks*,
    872 A.2d 423 (Conn. 2005) ...............................................................................27

*Mendel v. Morgan Keegan & Co.*,
    654 F. App'x 1001 (11th Cir. 2016) .................................................................14

*Mendez v. T-Mobile USA Inc.*,
    746 F. Supp. 3d 1377 (S.D. Fla. 2024) .............................................................13

*Mooney v. Holohan*,
    294 U.S. 103 (1935) ..........................................................................................30

*Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist.*
    *Council Carpenters Ben. Funds*,
    748 F.2d 79 (2d Cir. 1984) ...............................................................................15

*Morgan Stanley & Co., LLC v. Core Fund*,
    884 F. Supp. 2d 1229 (M.D. Fla. 2012) ...........................................................24

*Morton v. Heathcock*,
    913 So. 2d 662 (Fla. 3d DCA 2005) .................................................................37

*New York Times v. Sullivan*,
    376 U.S. 254 (1964) ..........................................................................................30

*Newman v. Ormond*,
    396 F. App'x 636 (11th Cir. 2010) ...................................................................36

*Norris v. United States*,
    820 F.3d 1261 (11th Cir. 2016) .......................................................................16

*NYKCool A.B. v. Pac. Fruit, Inc.*,
    507 F. App'x 83 (2d Cir. 2013) ........................................................................19

*Oliveira v. Ilion Taxi Aero Ltda*,
    830 So. 2d 241 (Fla. 4th DCA 2002) ...............................................................22

*Pac. Mut. Life Ins. Co. v. Haslip*,
    499 U.S. 1 (1991) ........................................................................................27, 30

*Philip Morris v. Williams*,
    549 U.S. 346 (2007) ..........................................................................................32

*Pochat v. Lynch*,
   2013 WL 4496548 (S.D. Fla. Aug. 22, 2013) ................................................................18, 20

*Port Everglades Auth. v. Andrews*,
   603 So. 2d 118 (Fla. 4th DCA 1992) ...............................................................................19

*Prudential Sec., Inc. v. Dalton*,
   929 F. Supp. 1411 (N.D. Okla. 1996) ..............................................................................28

*Rollins, Inc. v. Heller*,
   454 So. 2d 580 (Fla. 3d DCA 1984) .................................................................................24

*Rooms v. S.E.C.*,
   444 F.3d 1208 (10th Cir. 2006) ........................................................................................28

*Rosati v. Bekhor*,
   167 F. Supp. 2d 1340 (M.D. Fla. 2001) ...........................................................................41

*Rosensweig v. Morgan Stanley & Co.*,
   494 F.3d 1328 (11th Cir. 2007) .................................................................................18, 20

*Royal All. Assocs., Inc. v. Liebhaber*,
   2 Cal. App. 5th 1092 (2016) .............................................................................................35

*Royal Caribbean Cruises Ltd. v. Soskin*,
   2019 WL 12536389 (S.D. Fla. Feb. 6, 2019) ...................................................................16

*Saccameno v. U.S. Bank Nat'l Ass'n*,
   943 F.3d 1071 (7th Cir. 2019) ..........................................................................................33

*SafePoint Ins. Co. v. Castellanos*,
   394 So. 3d 731 (Fla. 3d DCA 2024) .................................................................................36

*Safeway Stores, Inc. v. United Food & Com. Workers Union, Loc. 400*,
   621 F. Supp. 1233 (D.D.C. 1985) ....................................................................................38

*Sands v. UZI Barany*,
   2008 WL 11520308 (S.D. Fla. Aug. 29, 2008) ................................................................41

*Sawtelle v. Waddell & Reed, Inc.*,
   304 A.D.2d 103 (N.Y. App. Div. 2003) ..........................................................................29

*Schmitz v. Zilveti*,
   20 F.3d 1043 (9th Cir. 1994) ............................................................................................15

*Schneider v. First Am. Bank*,
   336 So. 3d 43 (Fla. 4th DCA 2022) ..................................................................................25

*Schreiber v. Schreiber*,
  331 So. 3d 874 (Fla. 5th DCA 2021) ....................................................37

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) ..............................................................................30

*Soaring Wind Energy, L.L.C. v. Catic USA Inc.*,
  946 F.3d 742 (5th Cir. 2020) .............................................................24

*Sphere Drake Ins. Ltd. v. Lincoln Nat. Life Ins. Co.*,
  2006 WL 2699270 (N.D. Ill. Sept. 13, 2006) ..............................16, 28

*Standard Guar. Ins. Co. v. Quanstrom*,
  555 So. 2d 828 (Fla. 1990)................................................................36

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ................................................................. *passim*

*State v. Steele*,
  348 So. 2d 398 (Fla. 3d DCA 1977) ..................................................20

*Strasser v. Yalamanchi*,
  783 So. 2d 1087 (Fla. 4th DCA 2001) ...............................................19

*Tempo Shain v. Bertek*,
  120 F.3d 16 (2d Cir. 1997).........................................................27, 35

*Todd Shipyards v. Cunard Line*,
  943 F.2d 1056 (9th Cir. 1991) ..........................................................27

*Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*,
  607 F.2d 649 (5th Cir. 1979) .................................................16, 29, 30

*Trilogy Properties v. SB Hotel Assocs., LLC*,
  2011 WL 13115430 (S.D. Fla. May 16, 2011) ...................................24

*UBS Financial Services Inc. et al v. Hansen et al.*,
  4:25-cv-00120, Dkt. 1 (S.D. Iowa, March 31, 2025).........................34

*United States v. Archer*,
  531 F.3d 1347 (11th Cir. 2008) .........................................................30

*Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*,
  304 F.3d 1331 (11th Cir. 2002) ...................................................14, 15

*Venture Cotton Co-op v. Neudorf*,
  2014 WL 4557765 (Tex. App. 2014)..................................................27

*Verneus v. Axis Surplus Ins. Co.*,
    2018 WL 3417905 (S.D. Fla. July 13, 2018) ........................................................16

*Waddell, v. Holiday Isle, LLC*,
    2009 WL 2413668 (S.D. Ala. Aug. 4, 2009) .........................................23, 25, 38

*Williams v. First Advantage LNS Screening Sols. Inc*,
    947 F.3d 735 (11th Cir. 2020) ........................................................................26

*Wilson v. State*,
    311 So. 3d 964 (Fla. 1st DCA 2020) ..............................................................35

**Statutes**

9 U.S.C. § 10 ....................................................................................................1

9 U.S.C. § 10(a) ..............................................................................................12

9 U.S.C. § 10(a)(2) ....................................................................................15, 18

9 U.S.C. § 10(a)(3) ................................................................................... *passim*

9 U.S.C. § 10(a)(4) ................................................................................... *passim*

9 U.S.C. § 11 ....................................................................................................1

9 U.S.C. § 11(b) ...................................................................................... *passim*

9 U.S.C. § 12 ....................................................................................................1

Fla. Stat. § 57.104(2) ......................................................................................37

Fla. Stat. § 517.211 ...........................................................................4, 23, 24, 37

Fla. Stat. § 517.211(7) ..........................................................................3, 23, 36

Fla. Stat. § 517.301 ...........................................................................................4

Fla. Stat. § 768 ..............................................................................................22

Fla. Stat. § 768.72 ..........................................................................................13

Fla. Stat. § 768.72(2) ......................................................................................10

Fla. Stat. § 768.72(2)(b) ..................................................................................32

Fla. Stat. § 768.72(3) ......................................................................................10

Fla. Stat. § 768.72(3)(c) ..................................................................................32

Fla. Stat. § 768.73 ...........................................................................................................21

Fla. Stat. § 768.73(1)(a) ..................................................................................................21

Fla. Stat. § 768.73(1)(b) ..................................................................................................21

Fla. Stat. § 768.725 ........................................................................................................10

Fla. Stat. § 768.737 ........................................................................................................10

## RESPONDENT'S MOTION TO VACATE ARBITRATION AWARD

Stifel, Nicolaus & Co., Inc. ("Stifel") moves to vacate a shocking, runaway award in a FINRA arbitration that was infected with fundamental prejudice by a panel member who had already pre-determined that Stifel had acted improperly and lied about her ability to be impartial when she refused to step aside. The result was the largest award in FINRA history in a retail customer arbitration. A full 80% of the unprecedented $132.5 million award entered in the underlying arbitration on March 12, 2025 (the "Award") (Dkt. 1-3) consisted of punitive damages and attorneys' fees that could not properly stand even if the basic liability finding were not otherwise defective. The award must be vacated not only because the law requires it and Stifel is entitled to it, but because the continuing integrity of FINRA's arbitration process depends upon it. The Court should vacate or modify the Award pursuant to Sections 10, 11, and 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10-12, and simultaneously deny the Petition to Confirm Arbitration Award (the "Petition") filed by Petitioners,[1] for the following reasons:

*First,* the Court should vacate the award in its entirety under Sections 10(a)(2) and (3) as a result of the "evident partiality" and "misbehavior" on the part of Arbitrator Stephanie Charny. Less than two weeks before the start of the hearing in this matter, Ms. Charny rendered an award in a virtually identical arbitration against Stifel brought by different claimants but involving the same claims, same alleged misconduct by the same Stifel financial advisor and supervisory personnel, same arguments, and most of the same witnesses and documentary evidence. In that award, Ms. Charny and her co-panelists did not merely rule against Stifel but found that Stifel's conduct was so egregious that she imposed $9 million in punitive damages against the firm.

---

[1]     Stifel is filing a separate response to the Petition that references this Motion to Vacate Arbitration Award.

Ms. Charny's award by definition reflects both a negative opinion of Stifel and an opinion on the very same subject matter she would be asked to evaluate in the *Jannetti* proceeding. Though no fair minded person could possibly have done so, Ms. Charny nevertheless certified the very next day—albeit falsely and implausibly—that she had formed no negative opinions about Stifel or the subject matter of the arbitration and could decide this case impartially. Then, over Stifel's objection, she refused to recuse herself from presiding in this proceeding and the unprecedented $132.5 million award resulted. Yet the prior award was so prejudicial that the Panel excluded details of the award from being presented in this case, including to the Panel itself, with the Panel's Chair opining that such information "may jeopardize the ruling in this case." (Transcript 10-18-2024 at 25:7-16 (**Exhibit N-4**)). Of course, that exclusion was utter fiction because Ms. Charny presided over the prior case. Under these clear circumstances, Ms. Charny's partiality was evident and her participation as an arbitrator in this matter deprived Stifel of a fair hearing and requires that the resulting award be vacated.

*Second*, to the extent the entire award is not vacated, the Court should vacate the $79,512,876 punitive damages award under Section 10(a)(4) and modify the Award under Section 11(b). The punitive damages award should be vacated under Section 10(a)(4) because the Arbitrators exceeded their authority by awarding punitive damages that were neither requested nor allowed by statute. The Arbitrators' massive punitive award was three times the statutory damages the panel awarded on Petitioners' claim under the Florida Securities and Investor Protection Act ("FSIPA"). But in their Second Amended Statement of Claim (the "Amended Statement of Claim" or "ASOC" (**Exhibit B**)), Petitioners did not ask for punitive damages on their claim under the FSIPA (only on their common law fraud and breach of fiduciary duty claims with smaller alleged damages). Because the ASOC defined the scope of the claims submitted to the Panel under the

Parties' submission agreement and did not seek punitive damages on the FSIPA claim, the Panel exceeded its authority to award them under that statute. In any event, the FSIPA does not authorize an award of punitive damages, only statutory damages and attorneys' fees.

The punitive damages award should also be vacated under Section 10(a)(4) because the $79.5 million punitive damages award is grossly excessive and violates Due Process. At almost $80 million, the punitive damages award is roughly five times the approximately $16.3 million in actual net out-of-pocket loss incurred by Petitioners, and when one counts the purported attorneys' fees the Panel tacked on to the punitive damages award, it is approximately six and one-half times Petitioners' out-of-pocket loss. That level is not sustainable under the principles laid out in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

***Third*,** the Court should vacate the more than $26 million attorneys' fee award—an amount equal to 25% of compensatory *and punitive* damages—under Section 10(a)(4) because even if attorneys' fees were authorized, the Panel had no basis to make any fee award and therefore exceeded its powers by doing so. Petitioners offered ***no*** evidence—zero, nada, zilch—concerning the amount of fees they actually incurred, the amount of time expended by their attorneys, or even the terms of their fee agreement, including whether it was hourly or contingent and, if contingent, what the terms of that contingency were. Accordingly, the Panel had no evidentiary basis to determine the amount of "reasonable" attorneys' fees, the only fees allowed under the FSIPA, which was the sole basis for the Panel's attorneys' fee award. *See* Fla. Stat. § 517.211(7); *see also* Award ¶ 7. And to make matters worse, the Panel inflated the amount of the attorneys' fee award four times by awarding fees on punitive damages, even though Petitioners never sought attorneys'

3

fees on punitive damages—again, exceeding their authority and demonstrating the runaway nature of the Award.

For all these reasons, Stifel respectfully requests that this Court vacate the Award in its entirety or, at a minimum, vacate the punitive damages and attorneys' fees portions of the Award.

## I.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

The *Jannetti* Arbitration is one of 25 separate FINRA arbitrations filed against Stifel by former customers of Stifel financial advisor Chuck Roberts, 22 of whom are represented by Petitioners' counsel (the "Roberts Arbitrations"). Claimants in the Roberts Arbitrations seek to recover losses, largely during the late 2021-23 market downturn, on debt securities known as "structured notes," individual stocks, and other investments recommended by Mr. Roberts. The factual allegations and legal claims in all of the Roberts Arbitrations are virtually identical and focus on the same core allegations.

### A.  The Underlying Jannetti Arbitration.

Petitioners' Amended Statement of Claim asserted six claims: (1) breach of fiduciary duty, (2) negligence, (3) negligent supervision, (4) fraud, (5) breach of contract, and (6) a statutory claim for violation of the FSIPA, Fla. Stat. §§ 517.211 and 517.301. In addition to seeking compensatory and statutory damages, Petitioners sought punitive damages on their claims for breach of fiduciary duty and fraud, but critically for purposes of this motion, they did not seek punitive damages under the FSIPA. (ASOC at 15-19 (**Exhibit B**)).

Petitioners and Stifel signed a FINRA mandatory submission agreement pursuant to which they agreed to submit to arbitration only "the present matter in controversy, as set forth in the [] statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims." (Parties' Submission Agreements ¶¶ 1-2 (**Exhibit D**)). In other words, here the matters submitted to arbitration were limited to those set forth in Petitioners' Amended Statement of Claim and

Stifel's Answer. The Parties further agreed "to be bound" by "the procedures and rules of FINRA relating to arbitration." (*Id.*) FINRA appointed a panel of three public arbitrators to hear the case, including Stephanie Charny (the "Arbitrators" or "Panel"). (*See* Panel Notice Letter (**Exhibit E**)).

The merits hearing began on October 14, 2024. Seven of the 12 witnesses who testified at the hearing were Stifel employees. In presenting their case to the Panel, Petitioners[2] focused heavily on allegedly misleading text messages about structured notes that Mr. Roberts sent to other customers using his personal device in violation of Stifel's policies and industry rules, as well as Stifel's alleged failure to adequately supervise Mr. Roberts' text messages. (*See, e.g.*, Claimants' Pre-Hearing Brief at 2-8, 12, 18-23, 26-27, 52, 61-62 (**Exhibit F**); Transcript 10-15-2024 at 130:4 – 143:18 (**Exhibit N-2**)).[3] For example, in both their pre-hearing brief and at the hearing, Petitioners asserted that Mr. Roberts' "text messages are the best and most credible evidence of what Roberts believed and represented about the material risks of structured notes and structured note strategy at issue." (Claimants' Pre-Hearing Brief at 5 (**Exhibit F**); Transcript 1-24-2025 at

---

[2]       Petitioner David Jannetti, the lead claimant, controlled all of the Petitioners' Stifel accounts and was the only Petitioner who communicated with Mr. Roberts and Stifel about them. He is a sophisticated investor and successful businessman who had amassed a net worth of more than $70 million. He is a college graduate with a finance degree, had more than 25 years of securities investing experience before ever doing business with Stifel or Mr. Roberts, was an experienced real estate investor and a member of a hard money lending syndicate that made high-interest-rate loans to real estate buyers, had experience investing in cryptocurrency, and was experienced using leverage. (*See* Transcript 10-22-2024 at 115:19 – 138:15 (**Exhibit N-5**); Transcript 10-23-2024 at 110:23 – 120:21 (**Exhibit N-6**); Transcript 10-24-2024 at 5:23 – 10:17, 140:15 – 24; 176:19 – 179:9, 189:10 – 190:6, 196:6 – 200:16, 206:14 – 221:6, 225:1 – 228:23) (**Exhibit N-7**); Transcript 10-25-24 at 45:15 – 46:19; 91:15 – 98:17 (**Exhibit N-8**); Jannetti Financial Statement (**Exhibit P-5**); *see also generally* Jannetti Text Threads (**Exhibits P-3** and **P-4**) (evidencing Mr. Jannetti's sophistication, knowledge, and experience with regard to structured notes and investing in general)). Stifel has attached excerpts of the transcripts the Court may determine are relevant to this factual background and its legal arguments. Full transcripts are available and can be provided upon request.

[3]       Page cites to the transcripts refer to the original page numbers at the top right corner of the page. Page cites to all other exhibits refer to pdf document page numbers.

29:4-9 (**Exhibit N-11**) (text messages are "[t]he most important evidence in the case."). Petitioners also argued extensively that Mr. Roberts was a "bad actor" based on his record of customer complaints and regulatory sanctions and that Stifel failed to adequately supervise him in light of that record.[4] (*See* Claimants' Pre-Hearing Brief at 32-36; *e.g.*, Transcript 10-17-2024 at 83:15 – 93:11 (**Exhibit N-3**); Transcript 10-18-2024 at 135:23 – 141:12 (**Exhibit N-4**); and Transcript 12-06-2024 at 24:16 – 29:12 (**Exhibit N-9**)).

There was a dispute as to the extent to which Mr. Jannetti was informed about and understood the risks of the structured notes and other investment strategies in Petitioners' accounts.[5] What was not in dispute was that Petitioners' accounts performed well until November 2021, generating a positive return of more than $3 million (a 30-35% return) in just 17 months. (*See* Claimant Expert's P&L Statements (**Exhibit O-13**); Stifel Expert's P&L Statements (**Exhibit P-7**)). And when the equity markets collapsed starting in late 2021 and continuing into 2023 due to persistent inflation and rising interest rates, Petitioners' accounts incurred approximately

---

[4]     Stifel moved *in limine* to exclude text messages between Mr. Roberts and other customers that Mr. Jannetti never received or saw, and to exclude evidence of prior customer complaints, arbitration awards, and regulatory sanctions against Mr. Roberts. (Stifel's Motion in Limine at 3-11 (**Exhibit H** at 3-11)). The Panel denied Stifel's motion. (Order on Motion in Limine (**Exhibit H** at 35-38)).

[5]     For example, although Mr. Jannetti claimed not to understand the risks, a contention the Panel apparently credited, he was informed in writing 44 separate times about the risk that the market price of the equity asset to which a structured note is linked could fall below a preset price and lead to a loss of the investment's value, and his own text messages demonstrated his knowledge and level of investment sophistication. (*See* Transcript 10-23-24 at 221:17 – 222:20 (**Exhibit N-6**); Transcript 1-24-25 at 186:21 – 187:17 (**Exhibit N-11**); Jannetti Emails (**Exhibit P-2**); Account Agreement (**Exhibit P-1** at 32); *see generally* Jannetti Text Thread (**Exhibit P-3**)). And Mr. Jannetti created his own spreadsheet linked to a live feed from Yahoo Finance so that he could track the price of the reference asset for each structured note he held relative to the asset's barrier so he could assess on a daily basis the likelihood that the note would pay quarterly coupons and return full principal at maturity. (*See* Transcript 10-23-24 at 154:20 – 157:19 (**Exhibit N-6**); Jannetti Spreadsheet Analysis (**Exhibit P-6**)).

$16 million in actual losses. (*See* Claimant Expert's P&L Statements (**Exhibit O-13**); Respondent Expert's P&L Statements (**Exhibit P-7**); Claimant's Damages Chart (**Exhibit O-14**)).

The Panel issued the final award on March 12, 2025. (Award at 6). The unprecedented Award, which exceeds $132.5 million, is the largest FINRA award in history in a retail customer arbitration. (*See* Bindon Declaration ¶¶ 7-10 (**Exhibit W**)). It consists of $26,504,292 in statutory damages under the FSIPA, which although purportedly "compensatory" are higher than the damages sought by Petitioners on any of their other claims. (*See* Award ¶¶ 1-4; Claimants' Damages Chart (**Exhibit O-14**)). The $132.5 million Award contains $79,512,876 in punitive damages, an amount equal to exactly three times the FSIPA statutory damages awarded by the Panel. (*See* Award ¶ 6). And it then adds $26,504,292 in attorneys' fees and costs, an amount equal to "25% of the total compensatory damages and punitive damages." (*Id.* ¶ 7). The Panel's attorneys' fee award, which as explained below was entered absent any evidence at all about Petitioners' actual attorneys' fees, fee arrangement or the time expended by their counsel, is equal in amount to the statutory damages (which themselves exceed Petitioners' actual losses) standing alone. (*See id.* ¶¶ 1-7).[6] Although Petitioners never asked for attorneys' fees to be awarded on punitive damages—a concept that frankly defies logic since punitive damages are not intended to compensate a plaintiff[7]—by imposing attorneys' fees on punitive damages the Panel effectively increased punitive damages by another 25%. And the combined $106,017,168 awarded for

---

[6]     The Award does not differentiate between attorneys' fees and costs. At closing, the Petitioners' counsel asserted—without evidence—that he incurred $122,772 in costs, meaning the amount awarded was essentially all attorneys' fees. (Transcript 1-24-25 at 71:11 – 12 (**Exhibit N-11**)).

[7]     Punitive damages are not meant to be extra compensation for a plaintiff's loss but are aimed at deterrence on behalf of the public. *See State Farm*, 538 U.S. at 416-17.

punitive damages and attorneys' fees is approximately 6.5 times the out-of-pocket loss claimed by Petitioners. (*See* Claimants' Damages Chart (**Exhibit O-14**)).

### B. The Deluca Arbitration.

Prior to the hearing in the *Jannetti* Arbitration at issue here, one of the appointed arbitrators, Stephanie Charny, served as an arbitrator in the first Roberts Arbitration to be heard on the merits, *Louis R. Deluca, et. al. v. Stifel*, FINRA Case No. 23-01288 (the "*Deluca* Arbitration"). At the time Ms. Charny was appointed initially in this proceeding, the *Deluca* Arbitration had not been briefed or heard.

The *Deluca* Arbitration turned out to be virtually identical to the *Jannetti* Arbitration in most material respects, as the parties' prehearing briefs in both cases clearly demonstrate. (*See Deluca* Parties' Pre-Hearing Briefs (**Exhibit Q** and **Exhibit R**)). Brought by the same legal counsel who represents Petitioners here, that was their strategy from the beginning, which Stifel did not know (and could not have known) at the time Ms. Charny was appointed to the *Jannetti* panel. As a result, the *Deluca* Arbitration involved essentially the same alleged conduct by the same Stifel personnel alleged to be the basis for liability in the *Jannetti* Arbitration. (*See generally Deluca* Claimants' Pre-Hearing Brief (**Exhibit Q**)). The claims and allegations in the *Deluca* Arbitration involved the same financial advisor, Chuck Roberts, the same investment strategies, many of the same securities, many of the same communications, including the same text messages, and the same alleged conduct by the same supervisory personnel at issue in this case. (*See, e.g.*, *id.* at 2-31).

Consistent with Claimants' counsel's strategy, the evidence introduced in both cases was substantially the same, including many identical exhibits, most of the same fact witnesses, and the same four expert witnesses—in fact, 10 of the 12 witnesses who testified in *Jannetti* testified before Ms. Charny in *Deluca* about largely the same topics. (*See* Arpey Declaration ¶¶ 5-6 and exhibits

thereto (**Exhibit X**); Claimants' Hearing Exhibits (**Exhibits O-1** to **O-12**)). In presenting their case, the *Deluca* claimants, just as Petitioners in this case, focused on the same text messages sent by Mr. Roberts to many of his other clients. (*See, e.g.*, Deluca Transcript Vol. 1 at 115:13 – 120:12; 129:10 – 133:22 (**Exhibit S-1**); Deluca Transcript Vol. 8 at 2321 (**Exhibit S-4**); *see also* Arpey Declaration ¶ 6 & Ex. 2 thereto (**Exhibit X**); Text & Chat Log (**Exhibit O-6**)). And as in this case, the *Deluca* claimants introduced evidence to support a theory that Mr. Roberts was a "bad actor" who Stifel failed to supervise adequately. (*See, e.g.*, Deluca Transcript Vol. 1 at 49:6 – 67:2 (**Exhibit S-1**); Deluca Transcript Vol. 7 at 2001:7 – 2004:6, 2017:19 – 2021:22 (**Exhibit S-3**); Roberts' CRD, AWC, and Heightened Supervision Documents (**Exhibits O-1** to **O-4**); Arpey Declaration ¶ 6 & Ex. 2 thereto (**Exhibit X**)). Indeed, the very same text messages and alleged inadequate supervision presented in this case were the themes emphasized in *Deluca* when arguing for an award of punitive damages in that case:

> Claimants are seeking punitive damages. It is important that this $8 billion publicly traded company that hired a bad actor and failed to enforce reasonable supervision of the bad actor, and the bad actor acted poorly in violation of rules from day one went under double-heightened supervision and continued to text misrepresentations to hundreds of clients in tens of thousands of text messages that they were punished. Send a message to Stifel.

(Deluca Transcript Vol. 11 at 290:10-18 (**Exhibit S-5**)). The *Deluca* claimants, over Stifel's objections, were also permitted to introduce, and Ms. Charny therefore heard evidence about, the other pending Roberts Arbitrations. (Deluca Transcript Vol. 3 at 511:19 – 515:15 (**Exhibit S-2**)).

On October 3, 2024, less than two weeks before the start of the *Jannetti* Arbitration, Arbitrator Charny and her two co-panelists issued an award in favor of the *Deluca* claimants, awarding them a total of $4,065,436 in compensatory damages (inclusive of interest under the FSIPA), $9,000,000 in punitive damages, $1,100,000 in attorneys' fees, and $100,000 in costs. (*Deluca* Award (**Exhibit T**)). Although the *Deluca* award contained no explanation for the

punitive damages award, under applicable Florida law punitive damages could only have been awarded if Arbitrator Charny and her co-panelists found, based on "clear and convincing evidence," that (1) Mr. Roberts "was personally guilty of intentional misconduct or gross negligence," and (2) Stifel "actively and knowingly participated in such conduct," "knowingly condoned, ratified, or consented to such conduct," or itself committed "gross negligence." Fla. Stat. § 768.72(2), (3); *see also* Fla. Stat. § 768.725 (placing the burden on plaintiff to establish, "by clear and convincing evidence, its entitlement to an award of punitive damages"); Fla. Stat. § 768.737 (applying statutory limits on punitive damages to arbitration proceedings).[8]

### C.  Ms. Charny's Wrongful Refusal to Recuse Herself from the Jannetti Proceeding.

The day after she issued the *Deluca* award, Ms. Charny submitted an updated arbitrator oath and disclosure in the *Jannetti* proceeding ("Oath"), as required by FINRA rules. (*See* Updated Oath/Checklist for Charny (**Exhibit I**)). In that updated Oath, Ms. Charny acknowledged that the *Deluca* Arbitration involved "the same or similar subject matter" as the *Jannetti* Arbitration, checked "yes" to the question of whether the *Deluca* claimants and the Claimants here asserted "any of the same allegations or causes of action" (*Id.* at 8, No. 4(a)-(b)); and acknowledged that the two matters involved the same counsel (*Id.* at 6, No. 1). Despite that and defying logic and common sense, Ms. Charny then certified "no" to the question: "Have you formed an opinion, positive or negative, about any of the parties, their counsel or the subject matter of the arbitration?" (*Id.* at 8, No. 1).

Ms. Charny's certification that she had formed no opinion about any of the parties or the subject matter of the arbitration was indisputably and necessarily false. Her finding in *Deluca* that

---

[8]     Florida's statutory limits on punitive damages also apply in this Court. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 430-431 (1996).

the same Stifel personnel involved in the same conduct had acted wrongly is itself an expression of a negative view of Stifel and the very personnel, subject matter and claims she knew and acknowledged were also involved in this case. But more importantly, her determination in *Deluca* that Stifel's conduct was sufficiently egregious to justify, in her view, an award of punitive damages, necessarily reflects that she had formed—indeed, endorsed—a negative view about Stifel and those individuals. Precisely because the *Deluca* award reflected her judgment and negative opinions about Stifel and the very same people and conduct at issue in *Jannetti* based on her determination of the same essential factual and legal issues, it was impossible for Ms. Charny—as it would be for any person in her position—to decide the *Jannetti* Arbitration fairly and impartially. To reach an outcome different from her award in *Deluca*, she would have to make factual findings in *Jannetti* directly contrary to the ones she had already made in *Deluca* based on her assessment of largely the same evidence from the same people whose conduct she had already concluded was egregious enough to warrant a $9 million punitive damages award.

Following receipt of Ms. Charny's updated Oath and her implausible assertion that she nevertheless remained capable of rendering "an objective and impartial determination," Stifel filed a motion asking Ms. Charny to recuse herself from the panel in *Jannetti*. (*See* Stifel's Motion to Recuse (**Exhibit J** at 1-6, 23-30)).[9] Ms. Charny summarily denied Stifel's motion to recuse, ignoring the acknowledged overlap and views she had just expressed about the very matters at issue and reaffirming the impossible claim that "I am certain that I can serve and decide the case impartially." (Charny Order on Motion to Recuse (**Exhibit K** at 2, 4)). Stifel then moved the FINRA Dispute Resolution Services Director to remove Arbitrator Charny on the same grounds

---

[9]     Under FINRA rules, "[a]ny party may ask an arbitrator to recuse himself or herself from the panel for good cause. Requests for arbitrator recusal are decided by the arbitrator who is the subject of the request." FINRA Rule 12406.

as in its motion to recuse (Stifel's Letter to FINRA Director (**Exhibit L**)), but the Director denied the motion on grounds not germane to the relief requested here (FINRA Director's Letter Denying Removal (**Exhibit M**)). On the first day of the *Jannetti* hearing, before opening statements, Stifel verbally objected to the composition of the Panel and refused to accept it, citing its motion to recuse Ms. Charny. (Transcript 10-14-2024 at 5:12 – 6:12 (**Exhibit N-1**)). When Petitioners attempted to introduce evidence of the *Deluca* award in this case, the Panel excluded the information, with the Panel's Chair opining that presenting that information to the Panel "may jeopardize the ruling in this case" and the Panel "unanimously . . . decid[ing] not to allow it in." (Transcript 10-18-2024 at 20:10 – 21, 25:7 – 16 (**Exhibit N-4**)). The fiction of excluding this information from a Panel that included Ms. Charny—one of three arbitrators in *Deluca*—was self-evident throughout the case. (*See, e.g.*, *id.* at 26:25 – 27:5 ("I don't know, and [Ms. Charny] can't tell me.")).

## II.     ARGUMENT

Section 10(a) of the FAA authorizes a court to vacate an arbitration award on four grounds: (1) "where the award was procured by corruption, fraud, or undue means;" (2) "where there was evident partiality or corruption in the arbitrators, or either of them;" (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Further, a Court is empowered to modify an arbitration award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b). Even though a "federal court's review of an arbitration award is highly deferential and

extremely limited," *Mendez v. T-Mobile USA Inc*., 746 F. Supp. 3d 1377, 1380 (S.D. Fla. 2024), Sections 10 and 11 of the FAA provide courts with important authority to provide relief where, like here, an arbitration goes awry and the FAA's requirements are met. *See, e.g.*, *Citigroup Global Markets, Inc. v. Crandall*, 2009 WL 10670164, at *5 (M.D. Fla. Apr. 8, 2009).

    The Award here is shocking, aberrational, and the result of a fundamentally unfair process. As discussed below, this Court should vacate the Award under Sections 10(a)(2), (3), and (4) or at minimum vacate or modify the punitive damages and attorney fee components of the Award under Sections 10(a)(3) and (4), and 11(b) of the FAA.

### A. Arbitrator Charny's Evident Partiality and Misbehavior Prejudiced Stifel and Deprived It of a Fundamentally Fair Hearing.

    The Court should vacate the Award under Sections 10(a)(2), (3), and (4) because "there was evident partiality" and "misconduct" by Arbitrator Charny, which exceeded her authority. Just *two weeks* before the *Jannetti* hearing, Arbitrator Charny awarded $9 million in punitive damages against Stifel in the *Deluca* Arbitration based on the same claims, allegations, and subject matter involving the same financial advisor and supervisory personnel, and following a hearing involving most of the same witnesses and documents as *Jannetti*. The punitive damages award in *Deluca* required Ms. Charny to find that Mr. Roberts and Stifel were guilty of "intentional misconduct" or "gross negligence" under Fla. Stat. § 768.72. *See also* Arbitrator's Guide at 69 (**Exhibit Y**) (requiring arbitrators to find that "respondent [] engaged in *serious misconduct*" to award punitive damages) (emphasis added). Of necessity, therefore, Ms. Charny had formed an opinion adverse to Stifel about the very same subject matter and people she would be required to evaluate in order to decide the upcoming *Jannetti* proceeding. Yet, despite making that judgment just one day earlier in *Deluca*, Ms. Charny signed an updated Oath certifying that while the two cases involved the

same or similar allegations and subject matter, she had not formed "*any* opinion" about Stifel or the subject matter of the *Jannetti* Arbitration.

Ms. Charny's updated Oath is fundamentally incompatible with the punitive damages award she rendered in *Deluca*, and she was neither honest in her renewed certification nor impartial in this proceeding. Her misconduct in refusing to recuse herself despite Stifel's request and her evident partiality exceeded her authority and tainted the proceedings, prejudicing Stifel and resulting in a $132.5 million award, including an unheard of $79.5 million in punitive damages representing the highest punitive damages award in a retail customer case in FINRA history.

1.   **There Was Evident Partiality on Arbitrator Charny's Part That Requires the Award Be Vacated Under Section 10(A)(2) of the FAA.**

Vacating an arbitration award for evident partiality under Section 10(a)(2) of the FAA requires either that "(1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002) (citation and punctuation omitted). The question of "actual conflict" is equivalent to demonstrable bias. *See Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 829 (11th Cir. 2011) ("Partiality as used in the FAA is synonymous with bias in favor of or against a party."); *Mendel v. Morgan Keegan & Co.*, 654 F. App'x 1001, 1004-05 (11th Cir. 2016); *Fed. Vending, Inc. v. Steak & Ale of Fla., Inc.*, 71 F. Supp. 2d 1245, 1247 (S.D. Fla. 1999). "A party seeking to vacate an arbitration award for evident partiality must present evidence that would support a reasonable impression of partiality on the arbitrator's behalf." *Levy v. Citigroup Glob. Markets, Inc.*, 2006 WL 8432648, at *5 (S.D. Fla. Oct. 17, 2006) (citation omitted). The alleged partiality "must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Aviles*, 435 F. App'x at 828. As the Second Circuit has explained, proof of "actual bias" is not required because "[b]ias is

always difficult, and indeed often impossible, to 'prove.'" *Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984).

Importantly, Ms. Charny's evident partiality is a basis to vacate the Award even absent evidence of partiality on the part of the other two *Jannetti* arbitrators. The FAA itself expressly provides for vacatur not only where all arbitrators were partial, but "either of them." 9 U.S.C. § 10(a)(2). As one circuit court has explained, there is good reason for this rule, as the arbitrators do not act in isolation, but collaborate and influence one another in making a decision. *See Schmitz v. Zilveti*, 20 F.3d 1043, 1049 (9th Cir. 1994) (citations and punctuation omitted), *disapproved of on other grounds by Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998); *see also Univ. Commons-Urbana*, 304 F.3d at 1341 (holding that alleged conduct on the part of one arbitrator in a three-member panel showed potential bias and thus constituted "prima facie grounds for vacatur of the arbitration award").[10]

FINRA's Code of Ethics for Arbitrators in Commercial Disputes ("Code of Ethics")— which all FINRA arbitrators are required to follow and which governed Ms. Charny's conduct in this arbitration—mandates that "an arbitrator may not have prejudged any of the specific factual or legal determinations to be addressed during the arbitration." Code of Ethics, Comment to Canon I, at 4-5 (emphasis added) (**Exhibit Z**); Arbitrator's Guide at 14 (**Exhibit Y**); *FINRA, Arbitrator Ethics*, https://www.finra.org/arbitration-mediation/rules-case-resources/ethics; *see also Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*, 2019 WL 2462865, at *3 (M.D. Fla. June

---

[10]     As just one example of how infected this proceeding was with Ms. Charny's prior knowledge, Ms. Charny was not even walled-off from the decision to exclude the *Deluca* information here. Instead, the Panel "caucus[ed]" and collectively decided that hearing more than "the facts of this case"—facts Ms. Charny was incredibly well-versed in from *a few weeks prior*— could cause "problem[s] with this case" and "jeopardize" the Panel's ruling. (Transcript 10-18-2024 at 24:23 – 25:16 (**Exhibit N-4**)).

13, 2019) (citing Code of Ethics in granting motion to disqualify appraiser on grounds of partiality); *Verneus v. Axis Surplus Ins. Co.*, 2018 WL 3417905, at *6 (S.D. Fla. July 13, 2018) (same). The reason for FINRA's rule is obvious. As the Seventh Circuit has observed in a judicial setting, when a decisionmaker "has prejudged the facts or the outcome of the dispute before her," she "cannot render a decision that comports with due process." *See Franklin v. McCaughtry*, 398 F.3d 955, 962 (7th Cir. 2005);[11] *see also Norris v. United States*, 820 F.3d 1261, 1265 (11th Cir. 2016) ("Even in the absence of actual bias, a judge's interest or prejudice may pose such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." (citation and punctuation omitted)); *Hoeft v. MVL Grp., Inc.,* 343 F.3d 57, 66 (2d Cir. 2003) (arbitrator's "alleged prejudgment of the parties' dispute" was a type of impropriety warranting further inquiry in connection with motion to vacate arbitration award), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *see also Kates v. Seidenman*, 881 So. 2d 56, 58 (Fla. 4th DCA 2004) ("While a trial judge may form mental impressions and opinions during the course of hearing evidence in a case, the judge is not permitted to pre-judge the case.").

There is no question that Ms. Charny prejudged the key material factual and legal issues at the core of the *Jannetti* Arbitration. While she had not done so when she was initially appointed, less than two weeks before the start of the *Jannetti* hearing, Ms. Charny determined that the same

---

[11]     Courts have observed that "a fundamentally fair arbitration hearing is one that essentially equates with due process." *Sphere Drake Ins. Ltd. v. Lincoln Nat. Life Ins. Co.*, 2006 WL 2699270, at *7 (N.D. Ill. Sept. 13, 2006) (citing cases). And an "arbitral award should therefore be vacated if the party challenging the award proves that he was not given a meaningful opportunity to be heard as our due process jurisprudence defines it." *Royal Caribbean Cruises Ltd. v. Soskin*, 2019 WL 12536389, at *4 (S.D. Fla. Feb. 6, 2019); *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979) ("All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard.").

alleged misconduct by the same financial advisor and his supervisors based on most of the same fact and expert witnesses in *Deluca* necessitated an award of $9 million in punitive damages. To make that determination, Ms. Charny at minimum formed a judgment that the very same people—Mr. Roberts and Stifel's supervisory personnel—and the very same conduct—such as texting and overconcentrating clients' funds in structured notes that Mr. Roberts did not properly explain and for which he was not adequately supervised or disciplined—amounted to willful wrongdoing or gross negligence that rose to the level of "serious misconduct." Ms. Charny's finding that the conduct was so egregious and culpability so severe that it warranted $9 million in punitive damages necessarily reflects that she had formed a negative impression of these very witnesses, who testified and defended their conduct but whose testimony the adverse punitive award rejects, and of Stifel itself, which she found was culpable at a level appropriate in her view to warrant millions of dollars of punishment. In fact, the Panel itself deemed this information prejudicial enough to warrant wholesale exclusion from the case, but of course, it could not be excluded from Ms. Charny, who presided over *Deluca*. (*See* Transcript 10-18-2024 at 25:7 – 16 (**Exhibit N-4**)).

To defend against Petitioners' allegations in *Jannetti*, Stifel had the insurmountable task of convincing Ms. Charny that each of her preexisting conclusions in *Deluca* was mistaken. Overcoming her prior judgments would require Ms. Charny to determine that the same conduct, claims, evidence, and witnesses suddenly warranted the exact opposite outcome. That starting point is incompatible with an impartial and unbiased arbitration and is the reason Stifel objected to Ms. Charny's participation on this Panel in the first place.

Although Ms. Charny's award in *Deluca* is itself proof positive of her unfitness to thereafter sit as an arbitrator to hear the virtually identical *Jannetti* case given her pre-determination of the core issues, if additional proof were needed to demonstrate her evident

partiality, it certainly exists here. Three Roberts Arbitrations have been decided on the merits to date: the *Deluca* Arbitration, *Douglas Muhlbauer, et al. v. Stifel*, FINRA Case No. 23-01270 (the "*Muhlbauer* Arbitration"), and the *Jannetti* Arbitration. Ms. Charny was on the panel in *Deluca* and *Jannetti*, and both panels awarded punitive damages—in the *Jannetti* case rendering an unprecedented punitive award totaling approximately 6.5 times Petitioners' actual damages. Ms. Charny was not on the panel in *Muhlbauer*, and that panel denied any claims for punitive damages and awarded the claimants only a fraction of the statutory damages and attorneys' fees requested and awarded in the two cases where Ms. Charny was an arbitrator. (*Muhlbauer* Award (**Exhibit U**)). Thus if proof of actual impact were required to demonstrate that partiality was evident, not merely theoretical, that added element also exists here.

Ms. Charny's preconceived notions of this case do not simply suggest bias—her partiality is evident, and the Award must be vacated under Section 10(a)(2).[12]

## 2. Arbitrator Charny's Refusal to Recuse Herself and False Certification Constituted "Misbehavior," Denied Stifel a Fair Hearing, and Exceeded Her Authority, Requiring That the Award Be Vacated Under Sections 10(A)(3) and (4) of the FAA.

A party to an arbitration proceeding has a right to a "fundamentally fair hearing." *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007). "Vacatur is warranted . . . where the arbitrators' conduct deprives the party of a fundamentally fair hearing." *Pochat v. Lynch*, 2013 WL 4496548, at *12 (S.D. Fla. Aug. 22, 2013). A fundamentally fair arbitration hearing at minimum requires "adequate notice, a hearing on the evidence and an ***impartial decision***

---

[12]    Indeed, the FINRA Director of Dispute Resolution applied similar reasoning to remove a potential arbitrator in another Roberts Arbitration because that arbitrator, over ten years prior, had issued an award against Mr. Roberts. The Director found that "[b]ecause of the prior award against Chuck Roberts and his central role in the present arbitration, it is reasonable to infer that [potential arbitrator] may be biased or lack impartiality in the present case." (FINRA Director's Removal Order in *Diamantopolous* (**Exhibit V**)).

*by the arbitrator*." *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 522 F.3d 746, 751 (7th Cir. 2008) (emphasis added), *aff'd*, 558 U.S. 67 (2009); *see also Karaha Bodas Co. v. Negara et al.*, 364 F.3d 274, 298-99 (5th Cir. 2004); *NYKCool A.B. v. Pac. Fruit, Inc.*, 507 F. App'x 83, 88 (2d Cir. 2013) ("Section 10(a)(3) of the FAA provides for vacatur of arbitration awards if the arbitrators were guilty of misconduct in engaging in any misbehavior that amounts to a denial of fundamental fairness" (citation and punctuation omitted)).

Because Ms. Charny's determination in *Deluca* necessarily embodies her prejudgment of core issues in the *Jannetti* case, Ms. Charny was required to recuse herself not just as a matter of fundamental fairness but under the overwhelming weight of Florida law and FINRA rules. *See Port Everglades Auth. v. Andrews*, 603 So. 2d 118, 118 (Fla. 4th DCA 1992) (holding that trial judge should have recused himself where there was evidence that he "may have prejudged the case"); *Leslie v. Leslie*, 859 So. 2d 543, 544 (Fla. 4th DCA 2003) (referring to a judge's prejudgment as "so prejudicial as to mandate recusal"); *Irwin v. Marko*, 417 So. 2d 1108, 1109 (Fla. 4th DCA 1982) ("[T]he respondent judge has created the appearance of having prejudged the attorney's fee issue in advance of hearing it and, accordingly, is required by our law to recuse himself."); *see also Strasser v. Yalamanchi*, 783 So. 2d 1087, 1091 (Fla. 4th DCA 2001) (referring to "the legion of Florida case law that mandates recusal when litigants successfully demonstrate a reasonable, well-grounded fear that they will not receive a fair and impartial trial or that the judge has pre-judged the case"); FINRA Rule 12406; *see also* FINRA Code of Ethics, 2024, at 6 (**Exhibit Z**); Arbitrator's Guide at 14 (**Exhibit Y**). By refusing to recuse herself, Ms. Charny ensured that Stifel's arguments and presentation of evidence on key factual and legal issues were effectively futile.

Ms. Charny compounded her failure to recuse herself by falsely certifying that she had not formed any negative opinion about Stifel "or the subject matter of the arbitration." No one could plausibly make such a certification the day after issuing an award imposing $9 million in punitive damages, *particularly* after acknowledging she was being asked to evaluate similar claims, facts and witnesses as in *Deluca.* In short, Ms. Charny's unwillingness to recuse herself despite her prejudgment of the factual and legal issues, and her false certification of her impartiality, constitute misbehavior that prejudiced Stifel's right to a fundamentally fair hearing before an impartial arbitrator, requiring vacatur of the Award. *See* 9 U.S.C. § 10(a)(3); *Rosensweig*, 494 F.3d at 1333; *Pochat*, 2013 WL 4496548, at *12; *Union Pac. R. Co*., 522 F.3d at 751; *see also Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1241 (11th Cir. 2020) ("[I]t is by now well-settled that . . . anyone discharging a judicial function . . . must be impartial."); *State v. Steele*, 348 So. 2d 398, 403 (Fla. 3d DCA 1977) ("Any error based on the lack of impartiality of the trier of fact constitutes a denial of due process and, accordingly, is per se reversible error.").[13]

---

[13]    In their Submission Agreement, the Parties agreed that FINRA's rules and procedures would define the terms on which they submitted their dispute to arbitration. (*See* Submission Agreements ¶¶ 1-2 (**Exhibit D**)). FINRA's rules and procedures include the FINRA Dispute Resolution Services Arbitrator's Guide, *see, e.g., Buck v. Compton*, 2023 WL 8812472, at *5 (6th Cir. Dec. 20, 2023) (citing the Arbitrator's Guide in determining that arbitrators did not violate FINRA rules), which requires arbitrators to abide by the Code of Ethics, which prohibits prejudging the dispute. FINRA Code of Ethics, 2024, at 6 (**Exhibit Z**); Arbitrator's Guide at 14 (**Exhibit Y**). Ms. Charny was thus bound, as a matter of the Parties' agreement to arbitrate before her, to be truthful in her disclosures and impartial in carrying out her Oath. Although the Court need not reach this issue given the obvious partiality that requires the Award be vacated under FAA Section 10(a)(3), FAA Section 10(a)(4) provides an alternative basis for vacating the Award because by failing to be truthful or impartial, Ms. Charny's conduct exceeded her authority under the governing Submission Agreement. *See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc*., 314 F. Supp. 3d 1346, 1356 (S.D. Fla. 2018) (court may vacate award if "the arbitrator acts outside the scope of his contractually delegated authority), *aff'd, Floridians for Solar Choice, Inc. v. Paparella*, 802 F. App'x 519 (11th Cir. 2020); *see also Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) (The "authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed," and "arbitrators are bound to perform their contractual duties.").

**B. The Panel Exceeded Its Authority By Awarding Punitive Damages That Were Neither Requested By Petitioners Nor Allowed By The FSIPA.**

The Court should also vacate the punitive damages portion of the Award (and the attorneys' fees awarded on punitive damages) because the Arbitrators violated the parties' Submission Agreement by awarding punitive damages to Petitioners under the FSIPA, which Petitioners neither requested in their Statement of Claim nor at the hearing and which in fact are not permitted under the FSIPA. The Arbitrators therefore exceeded their authority, and those portions of the Award should be vacated under Section 10(a)(4) and the Award modified under Section 11(b).

It is clear the Panel awarded punitive damages solely under the FSIPA for three reasons. *First*, the Award expressly says so. Paragraph 6 of the Award states that Stifel is liable for and "shall pay punitive damages" pursuant to "Chapter 517." (Award ¶ 6). That is consistent with the amount of the punitive damages award, which is exactly three times Petitioners' statutory damages under § 517.[14] Florida's general punitive damages statute, Fla. Stat. § 768.73, expressly limits allowable punitive damages to a multiple of compensatory damages. *See, e.g.*, Fla. Stat. § 768.73(1)(a)-(b) (limiting punitive damages, in part, to "[t]hree times" or [f]our times the amount of compensatory damages awarded to each claimant entitled thereto"). During his closing argument, Petitioner's counsel argued that three times the compensatory damages is "the standard." (Transcript 1-24-25 at 97:25 – 99:1 (**Exhibit N-11**)). The fact that the punitive damages award is *exactly* three times the amount of statutory damages requested and awarded under the FSIPA confirms the Panel awarded punitive damages only under the FSIPA. (*See* Claimants' Damages Chart (**Exhibit O-14**)).

---

[14] The damages sought by Claimants on their other claims were less than the damages they sought on their statutory claim under Section 517. (*See* Claimants' Damages Chart (**Exhibit O-14**)).

*Second*, although the Award purports to also award punitive damages pursuant to the common law and Fla. Stat. § 768, they cannot be the source of the punitive damages award because punitive damages are not permitted without a finding of liability on the underlying legal claim. The Panel neither found liability nor awarded compensatory damages on Petitioners' common law claims, foreclosing them as the source of the award. *See Diageo Dominicana, S.R.L. v. United Brands, S.A.*, 314 So. 3d 295, 301 (Fla. 3d DCA 2020) ("[W]ithout a finding of liability on the underlying fraud claims there can be no valid award of punitive damages."); *Oliveira v. Ilion Taxi Aero Ltda*, 830 So. 2d 241, 242 (Fla. 4th DCA 2002) ("[A]s a matter of law a judgment for [punitive] damages cannot be entered where there is no finding of liability."). The amount of compensatory damages for which the Panel found Stifel liable (a total of $26,504,292 for all claimants) is precisely the amount of statutory damages Petitioners requested and argued were required under the FSIPA. (*See id.* at 63:3-5, 64:5-8). Petitioners did not request damages in this amount for any claim other than their FSIPA claim, and the Panel had no basis whatsoever to award this amount of damages under any common-law claim. Moreover, the Award states, "Respondent is liable for and shall pay to Claimants interest on the above-stated sums [the amounts requested and awarded under the FSIPA] at the Florida Statutory rate ***pursuant to Florida Statutes Chapter 517*** from the date the Award in this case is entered until the Award is paid in full." (Award ¶ 5 (emphasis added)). The only plausible reading of this provision is that liability was found, and damages were awarded, under the FSIPA.

*Third*, the Panel awarded attorneys' fees "pursuant to Florida Statute Chapter 517." (*Id.* ¶ 7). Because attorneys' fees under § 517.211 can be awarded only for a violation of the statute, the FSIPA necessarily served as the basis for liability, the resulting award of statutory damages, and the concomitant award of attorneys' fees. *See* Fla. Stat. § 517.211(7) ("In any action *brought under*

*this section*, including an appeal, the court shall award reasonable attorney fees to the prevailing party . . . .") (emphasis added). Conversely, by not specifically addressing liability or awarding compensatory damages on any of Petitioners' common law claims, the Panel expressly denied those claims. (Award ¶ 9 (stating that "[a]ny and all claims for relief not specifically addressed herein . . . are denied")).

Because the Panel awarded punitive damages on Petitioners' FSIPA claim, the Arbitrators violated the Submission Agreement and exceeded their authority. "[T]he law is well-established that an arbitrator can bind the parties only on issues that they have agreed to submit to him." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1194 (11th Cir. 1995) (internal quotations omitted). In their Submission Agreement, the parties submitted to the Arbitrators the "present matter in controversy as set forth in" their "statement of claim." (Submission Agreements ¶ 1 (**Exhibit D**)). But Petitioners *did not request* punitive damages under their FSIPA claim—instead, they requested only "rescission and/or statutory damages." (ASOC ¶ 96 (**Exhibit B**)). Accordingly, the Arbitrators were not authorized to award any such relief under the FSIPA, and in doing so, they exceeded their authority. *See Davis*, 59 F.3d at 1194-95 (holding that because "Statement of Claim ma[de] no request for attorneys' fees," the issue "was not submitted to the arbitrators, and the arbitrators therefore exceeded their powers in deciding the issue"); *Waddell, v. Holiday Isle, LLC*, 2009 WL 2413668, at *14-15 (S.D. Ala. Aug. 4, 2009) (vacating an arbitration award because arbitrator exceeded his power by rendering an award on an issue not submitted to him)*; Floridians for Solar Choice*, 314 F. Supp. 3d at 1356 (an award may be vacated where it reflects the arbitrators' "own notions of economic justice rather than drawing its essence from the contract"); *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 757 (5th Cir. 2020) ("An arbitral

action contrary to express contractual provisions will not be respected on judicial review.") (citation and punctuation omitted).

There is a good reason why Petitioners did not request punitive damages under the FSIPA. The statute does not allow them. *See* Fla. Stat. § 517.211 (listing recoverable damages, none of which are punitive); *Trilogy Properties v. SB Hotel Assocs.*, *LLC*, 2011 WL 13115430, at *2 (S.D. Fla. May 16, 2011) (Judge Adalberto Jordan) (striking plaintiffs' request for punitive damages because "nothing in the language of the . . . Florida Securities and Investor Protection Act . . . allows punitive damages.") (citing Fla. Stat. § 517.211); *E. F. Hutton & Co. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989) ("Because section 517.211 contains an express civil liability provision, Florida courts need fashion no court-made civil right. They need only follow the clear language of the statute. . . . The remedy is restricted to consideration paid."); *cf. Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (plaintiff was not entitled to punitive damages under Florida Deceptive and Unfair Trade Practices Act because, while the "Act specifically provides for the recovery of actual damages," it "makes no provision for punitive damages").

Because the Arbitrators violated the Submission Agreement by awarding punitive damages under § 517.211, a statute that does not allow punitive damages and a claim on which Petitioners did not request punitive damages, the Arbitrators exceeded their authority, and the punitive damages portion of the Award (including attorneys' fees on punitive damages) should be vacated. *See Morgan Stanley & Co., LLC v. Core Fund*, 884 F. Supp. 2d 1229, 1231 (M.D. Fla. 2012) (arbitrators exceed their powers when they "grant relief not authorized in the arbitration agreement"); *Waddell*, 2009 WL 2413668, at *15 (vacating award because the arbitrator exceeded his authority by granting affirmative relief on a matter not submitted to him); *see also Antietam Indus., Inc. v. Morgan Keegan & Co.*, 2013 WL 1213059, at *9 (M.D. Fla. Mar. 25, 2013)

(arbitrators exceeded their authority by finding that petitioners were entitled to attorneys' fees because that issue has not been submitted to the arbitrators); *cf. Schneider v. First Am. Bank*, 336 So. 3d 43, 47 (Fla. 4th DCA 2022) ("When an award of relief is not sought by the pleadings, it is error to grant such relief.") (citation and punctuation omitted).

### C.  The Punitive Damages Award was Grossly Excessive and Violated Stifel's Right to a Fundamentally Fair Hearing.

The Court should also vacate the punitive damages portion of the Award under FAA Section 10(a)(4) for the independent reason that it is grossly excessive and exceeds Constitutional boundaries. The Award is by far the largest in history in a FINRA consumer arbitration and exceeds any other award by tens of millions of dollars. It is so excessive and so fails to comport with basic standards of fairness that, if not reigned in, it raises questions about the continued viability of FINRA arbitration as an alternative to judicial actions.

### 1.  <u>This Court Can and Should Review the Excessiveness of the Arbitrators' Award.</u>

It is axiomatic that an arbitrating party is "entitled to a fair arbitration proceeding." *CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc.*, 662 F. App'x 701, 705 (11th Cir. 2016) (citing *Rosensweig*, 494 F.3d at 1333). The Parties' agreement to arbitrate here was premised on that core tenet, which was embodied in their Submission Agreement through FINRA's rules incorporated into that Submission Agreement, including that the Panel would act impartially and decide the matter in accordance with legal principles. While mere legal error is not reviewable by this Court under the FAA, nothing in the Parties' agreement to arbitrate empowered the Panel to issue a decision that reflects their personalized notion of justice rather than a decision grounded in reason, fairness, and legal principles. By doing so, the Arbitrators exceeded the authority the Parties gave them to decide their dispute. *See* Arbitrator's Guide at 64 (**Exhibit Y**) (instructing that "arbitrators [] not disregard" the law and noting that, by doing so, the "award may be

vacated"). And while a court's review of an arbitration award under the FAA is undoubtedly limited, it is not so feckless that a court is constrained to confirm and add its imprimatur to a runaway award like the one at issue here.

Those fundamental legal principles at issue on this motion include the Constitutional limits on punitive damages. The Supreme Court has made clear that "[e]lementary notions of fairness" enshrined in the Constitution "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *See BMW of N. Am.*, 517 U.S. 559, 574 (1996); *see also Williams*, 947 F.3d at 750 ("When the punitive damages award in a civil proceeding is grossly excessive in relation to the relevant state interest underlying prohibition of the particular conduct at issue, the civil defendant has not received fair notice and the award is therefore unconstitutional."). Applying that principle, the Supreme Court has held for decades that excessive awards of punitive damages violate due process protections—and that courts must have the power to review them for such violations. *See, e.g.*, *Gore*, 517 U.S. at 574; *see also State Farm*, 538 U.S. at 416-17 (noting that "there are procedural *and* substantive constitutional limitations on these awards.") (emphasis added); *Honda Motor Co. v. Oberg*, 512 U.S. 415, 421 (1994) ("Judicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded."). Indeed, the Supreme Court has explicitly noted that an award of punitive damages must be set aside if it "was reached in proceedings lacking the basic elements of fundamental fairness." *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 9 (1991) (quoting *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 276-77 (1989)). The Court therefore can and should review whether the Arbitrators' award of punitive damages in the underlying arbitration exceeded their authority because it was excessive.

While the Eleventh Circuit has expressed skepticism about whether "constitutional due process protections" fully extend to private arbitration proceedings, *see Davis*, 59 F.3d at 1190-91, even if that were correct (and many courts say it is not),[15] it does not preclude this Court from reviewing and vacating the unauthorized punitive damages award here. As an initial matter, *Davis* dealt with a private arbitration conducted under the auspices of the American Arbitration Association ("AAA"), not FINRA. *See Davis*, 59 F.3d at 1187. Unlike the AAA, FINRA is properly considered a government actor and thus subject to constitutional due process requirements. *See Busacca v. S.E.C.*, 449 F. App'x 886, 890 (11th Cir. 2011) (assuming that "FINRA constitutes a governmental entity subject to the Due Process Clause" and observing that "[w]e have not yet determined whether FINRA is a government actor subject to the Clause's requirements. Other circuits have reached conflicting holdings on this question."); *see also Rooms v. S.E.C.*, 444 F.3d 1208, 1214 (10th Cir. 2006) (applying due process requirements to NASD, the predecessor to FINRA). While a self-regulatory organization, FINRA derives its authority from federal law, its funding is provided for by federal law, it is directly supervised by the SEC, its rules carry the force of law, and it acts similar to a government agency in wielding significant authority, including the quasi-judicial adjudication of claims against its member companies. That Stifel and those other member companies are required to submit to FINRA arbitration at the customer's

---

[15]    Other courts have simply assumed that such protections have attached. *See, e.g.*, *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 139 (6th Cir. 1996). There is a widespread split of authority on this issue, the better reasoned authority falling on the side favoring review. *Compare id.*, *Todd Shipyards v. Cunard Line*, 943 F.2d 1056, 1063–64 (9th Cir. 1991), and *MedValUSA Health Programs v. MemberWorks*, 872 A.2d 423, 434 (Conn. 2005) (following *Davis*), *with Tempo Shain v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997), *Ferraro L. Firm, P.A. v. Royal Merch. Holdings, LLC*, 394 So. 3d 672, 675 (Fla. 3d DCA 2024), *Venture Cotton Co-op v. Neudorf*, 2014 WL 4557765, *5 (Tex. App. 2014) (rejecting *Davis*), and *Birmingham News v. Horn*, 901 So. 2d 27, 66–67 (Ala. 2004) (same), *overruled on other grounds by Horton Homes, Inc. v. Shaner*, 999 So. 2d 462 (Ala. 2008), and *again overruled on other grounds by Hereford v. D.R. Horton, Inc.*, 13 So. 3d 375 (Ala. 2009).

request, and its rules and procedures—including limits on private contractual provisions, such as those related to punitive damages, that would otherwise reduce the due process concerns at issue here—highlights the need for constitutional protections in FINRA arbitrations. This is a far cry from the private arbitration in *Davis*.

Next, *Davis* addressed whether a special standard of review should be applicable for due process violations and found that it should not. But Stifel is not seeking any special review. Rather, the punitive aspects of the Award cannot be sustained because they violate the underlying notion of fundamental fairness that inheres in the FAA and provides the same essential protections as basic due process. *See id.* at 1190 (addressing argument that "the district court's confirmation of the punitive damages award violates the Due Process Clause of the Fifth and Fourteenth Amendments"). As mentioned above, "a fundamentally fair arbitration hearing is one that essentially equates with due process." *Sphere Drake Ins*., 2006 WL 2699270, at *7 (N.D. Ill. Sept. 13, 2006); *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (stating that the narrow grounds for vacatur listed in the FAA were "designed to preserve due process"); *Prudential Sec., Inc. v. Dalton*, 929 F. Supp. 1411, 1417 (N.D. Okla. 1996) ("Federal courts presented with a claim to vacate an arbitration award under § 10 of the FAA generally looked to a determination of whether the arbitration process provided ***fundamental fairness, in essence, fundamental due process***." (emphasis added)).

Indeed, courts have reviewed punitive damages awarded in arbitration for *non*-constitutional excessiveness on multiple occasions. *See Sawtelle v. Waddell & Reed, Inc.*, 304 A.D.2d 103, 109-11 (N.Y. App. Div. 2003) (collecting cases and determining that it was "besides the point" whether constitutional protections applied in "private arbitration" because "*Gore* is not only applicable to due process analysis of a punitive damage award but also provides a guide for

determining whether such an award is irrational"). In doing so, at least one court has remarked "that *Gore* provides the appropriate standard in determining the excessiveness of an arbitration award of punitive damages under FAA review." *See id.* Given the staggering size of the punitive damages award at issue in this case, this Court should do the same here. Put bluntly, an award of this magnitude shocks the judicial conscience and would constitute a complete denial of justice to Stifel. *Cf. Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876, 883 (2d Cir. 1988). Thus, this Court is not precluded from reviewing the punitive damages award for fundamental fairness under the FAA.[16]

*Davis* should not be read to preclude or limit this Court's obligation to review the punitive damages award. However, recognizing that this Court does not have the authority to disregard the Eleventh Circuit (and Stifel is not asking it to do so), if the Court were to interpret *Davis* to preclude such review, then *Davis* should be overruled for several reasons. *First*, *Davis* is inconsistent with *Totem Marine*, which is prior panel precedent. *See Totem Marine*, 607 F.2d at 651 ("All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard."). The Court should follow *Totem Marine*, not *Davis*. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). *Second*, *Davis* failed to account for the Supreme Court's observation that a punitive damages award could not be upheld "if it was reached in proceedings lacking the basic elements of fundamental fairness." *Haslip*, 499 U.S. at 9 (citing *Browning Ferris Industries*, 492 U.S. at 276–77). And, as a matter of procedural due process, the "denial of judicial review of the size of

---

[16]     The mere fact that Stifel agreed to arbitration does not amount to a waiver of these protections, either. Arbitration is mandatory under FINRA rules if requested by the customer. Nothing in the FAA or the relevant arbitration agreement would amount to Stifel's knowing, intentional waiver of its right to review of a punitive damages award for excessiveness. And any construction of the FAA that would automatically do so violates the Constitution as applied to Stifel.

punitive damages" is unconstitutional. *Honda Motor*, 512 U.S. at 432. *Third*, *Davis* improperly grounded its analysis on the belief that judicial confirmation of an arbitral award was not state action. *See Davis*, 59 F.3d at 1190–92. But the Supreme Court has held that judicial enforcement of private agreements constitutes state action. *Shelley v. Kraemer*, 334 U.S. 1, 18-20 (1948); *see also Edmondson v. Leesville Concrete*, 500 U.S. 614, 631 (1991); *Lugar v. Edmonson Oil*, 457 U.S. 922, 937 (1982); *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Mooney v. Holohan*, 294 U.S. 103, 113 (1935).

It cannot be constitutional for a state to delegate its power to punish certain conduct to private arbitrators while insulating that same power from the concomitant restraints imposed on the state by the Constitution. Surely no one would doubt a court's ability to vacate an arbitrator's decision to impose more significant punishments—say, imprisonment or the death penalty. Punitive damages should be treated no differently. The concept of fundamental fairness in arbitration hearings simply demands review of such awards for excessiveness. Holding otherwise would cede the judiciary's review of outsized punitive damages awards in FINRA arbitration full-stop, whether the award is $79.5 million in punitive damages, as here, or $1 billion or even more in the next case. It cannot be that any punitive award in any amount is beyond judicial scrutiny merely because the excessive award was rendered by an arbitrator rather than a lower court. Removing that judicial safeguard erodes the foundation of FINRA arbitrations and threatens their use as an alternative to judicial action.

## 2.   The Punitive Damages Award is Grossly Excessive and Should Be Vacated.

The Panel awarded Petitioners, who claimed an out-of-pocket loss of $16.3 million, punitive damages in the amount of $79.5 million, and then tacked on an additional 25% in purported attorneys' fees on the punitive damages, making the total punitive portion of the award more than $106 million out of a total award of almost $133 million. This enormous punitive award

comes on top of a statutory award of "compensatory" damages, which, at $26.5 million, was already $10 million more than Petitioners' out-of-pocket loss. This massive, runaway punitive Award bears no correlation to the matters in dispute in this case and is unsustainable under any notion of proportionality or fairness.

The Supreme Court has "instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418. The Court must "maintain as [its] overarching aim eliminating the risk that a defendant is punished arbitrarily or without fair notice of the possible consequences of its actions." *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1318 (11th Cir. 2007). Here, there is little question that Stifel was without notice of the possibility of the staggering punitive award imposed by the Arbitrators.

There are five specific factors that the Court considers in assessing reprehensibility: (1) whether "the harm caused was physical as opposed to economic," (2) whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others," (3) whether "the target of the conduct had financial vulnerability," (4) whether "the conduct involved repeated actions or was an isolated incident," and (5) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. There is no requirement that a certain number of the factors be present, but "reprehensibility grows more likely as more factors are present." *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 847 (11th Cir. 2021) (quotation marks and citations omitted).

31

Here, only one factor—"repeated actions"—is even arguably present.[17] None of the other factors applies. ***First***, the harm here was purely economic—there was no allegation or evidence of physical harm to Petitioners. ***Second***, none of Stifel's conduct evidenced a disregard for the health or safety of Petitioners because, once again, the harm was purely economic. ***Third***, Petitioners were not financially vulnerable; rather, the evidence showed Petitioner David Jannetti was a well-educated, sophisticated businessman and experienced investor who had amassed a net worth of approximately $70 million. (*See, e.g.*, Jannetti Financial Statement (**Exhibit P-5**); *see also generally* Jannetti Text Thread (**Exhibit P-3**)). ***Fourth***, there was no evidence of malice, trickery, or intentional deceit on the part of Stifel. The express factual findings in the Award (assuming they are correct, which Stifel disputes) show only negligence or gross negligence at most. (*See* Award ¶ 6); *see also* Fla. Stat. § 768.72(2)(b), (3)(c) (allowing punitive damages against employer based on a "clear and convincing" showing of gross negligence).

To assess the second *State Farm* guidepost, the Eleventh Circuit considers "whether the ratio of punitive damages to compensatory damages" is "unconstitutionally excessive." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1290 (11th Cir. 2018). "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425; *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1090 (7th Cir. 2019) (noting "that a 'substantial' award merits a ratio closer to 1:1."). In cases decided since *State Farm,* "compensatory damages have

---

[17] Notably, any "repeated actions" are only relevant to the extent they were directed at Mr. Jannetti. The Arbitrators cannot "punish a defendant for injury that it inflicts upon non-parties . . . , *i.e.* . . . those who are, essentially, strangers to the litigation." *Philip Morris v. Williams*, 549 U.S. 346, 353 (2007). To the extent the Arbitrators punished Stifel due to Mr. Roberts' contacts with *other* customers, evidence of which was admitted over Stifel's objections, the Arbitrators ran afoul of this constitutional limitation, too.

often been considered 'substantial' when they are over $1,000,000." *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1069 (10th Cir. 2016). Here, the Arbitrators' statutory "compensatory" damages award was substantial—it was a staggering $26,504,292 and exceeded Petitioners' actual out-of-pocket losses by approximately $10 million. Then, the Arbitrators tacked on $79,512,876 in total punitive damages—three times the statutory damages—and added $26,504,292 in attorneys' fees—over $20 million more than Petitioners even requested—resulting in a 4:1 ratio of punitive damages and fees to statutory "compensatory" damages and a 6.5:1 ratio to actual out of pocket loss. Given the size of the statutory damages award, this ratio unquestionably has transgressed the "outermost limit of the due process guarantee" and must be remitted to, at minimum, a 1:1 ratio of compensatory damages to punitive damages. *State Farm*, 538 U.S. at 425.

The third factor the Court must examine is "the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 425. The Arbitrators' award in this case includes the highest punitive damages award in a retail customer case in *FINRA history*. In the last 20 years, there have been a total of 5,411 FINRA customer arbitration cases that resulted in an award of damages. (*See* Bindon Declaration ¶ 7 (**Exhibit W**)). Only 386 of those, or approximately 7%, resulted in an award of punitive damages. (*Id.*). Only 58 of these punitive damages awards exceeded $1 million, and only ten exceeded $5 million. (*Id.* ¶¶ 7-8). Of the ten cases with more than $5 million in punitive damages, three were default awards against parties who did not appear at the hearing. (*Id.* ¶ 8). And another one of these awards was later overturned on a motion to vacate. (*Id.* ¶ 9). Only two cases involved a punitive

damages award of more than $26 million—the *Jannetti* award and the award issued in *Dennis Hansen, et al. v. UBS,* FINRA No. 21-00488, issued shortly before the *Jannetti* award. (*Id.* ¶ 10).[18]

Aside from its unprecedented nature, consideration of the factual context only reinforces how excessive and disproportionate the punitive Award is in this case. This is not a case involving a firm preying on a widow, orphan, or a sick, infirm or vulnerable customer. It does not involve theft or any finding of fraud. Whatever one thinks about the wisdom of the investment strategies followed, the adequacy of the disclosure of the risks of those strategies, or the quality of Stifel's supervision and discipline of Mr. Roberts—issues Stifel is not rearguing to this Court—the case involves claims by a wealthy, successful businessman with extensive investment experience and no financial duress. In the hierarchy of factors warranting and justifying punitive damages, this case is if anything at the lower, not the upper, end of the spectrum. It is certainly not a case justifying the highest punitive award ever rendered in a FINRA customer arbitration. *Gore* and *State Farm* require that this Court set aside the Arbitrators' grossly excessively punitive damages award.[19]

---

[18]     UBS filed a motion to vacate the award on March 31, 2025. *See UBS Financial Services Inc. et al v. Hansen et al.,* 4:25-cv-00120, Dkt. 1 (S.D. Iowa, March 31, 2025).

[19]     An additional reason the punitive damages award cannot stand under FAA Section 10(a)(3), is that the Panel excluded important testimony from Stifel's expert about the reasonableness of Stifel's supervision and discipline of Mr. Roberts in response to the Roberts Arbitrations and the prior awards while at the same time allowing Petitioners to argue that this very conduct by Stifel warranted punitive damages. Petitioners' counsel examined witnesses to try to show that Stifel acted callously by retaining Mr. Roberts and not disciplining him despite the Roberts Arbitrations and the *Deluca* and *Muhlbauer* awards. (*See* Transcript 10-17-2024 at 156:15 – 157:1 (**Exhibit N-3**); Transcript 10-18-2024 at 140:6 – 141:12 (**Exhibit N-4**); Transcript 12-06-2024 at 129:25 – 130:16 (**Exhibit N-9**)). Stifel sought to rebut this contention with evidence from its supervision expert, Peter Kennedy (*see* Transcript 1-22-2025 at 99:25 – 100:6-8 (**Exhibit N-10**)), but the Panel sustained Petitioners' objection and refused to allow Mr. Kennedy to testify about the reasonableness of Stifel's actions. (*Id.* at 104:10 – 24). The ground for exclusion—that the details of the prior awards had not been admitted—was particularly odd and prejudicial since one of the Arbitrators, Ms. Charny, had presided over *Deluca* and had full knowledge of the details.

**D. The Panel's Extraordinary $26.5 Million Attorneys' Fee Award Should Be Vacated Because the Panel Had No Basis to Make Such an Award and Exceeded Its Authority by Doing So.**

**1. <u>The Award Exceeded the Panel's Authority Because Petitioners Introduced No Evidence Regarding Attorneys' Fees and Costs.</u>**

Claimants introduced no evidence whatsoever concerning attorneys' fees. They introduced no evidence concerning the nature of their fee agreement with counsel—*i.e.*, whether it was hourly, contingent, fixed or otherwise. They offered no evidence of the amount of fees or costs they had allegedly incurred. They offered no evidence of the percentage or terms of any contingent fee that might be applicable. And they offered no evidence of the time their lawyers expended or the hourly rates applicable to that time such that the Panel might have assessed (and Stifel would have had an opportunity to challenge) reasonableness or whether any lodestar multiplier was warranted. The only reference to such matters was Petitioners' counsel's argument in closing asking for an award of fees but, of course, "[s]tatements made by counsel in the course of closing arguments are not evidence." *Green v. Sch. Bd. of Hillsborough Cnty., Fla.*, 25 F.3d 974, 979 (11th Cir. 1994); *Wilson v. State*, 311 So. 3d 964, 967 (Fla. 1st DCA 2020) ("[C]losing arguments are not evidence.").

Despite this complete lack of evidence, the Panel awarded Petitioners a whopping $26,504,292 in fees and costs. The award was equal in amount to the entire statutory

---

Petitioners' counsel then repeatedly argued in closing that the Panel should award punitive damages to "send a message" to Stifel based on its lack of discipline of Mr. Roberts in the face of the Roberts Arbitrations and prior awards. (*See* Transcript 1-24-2025 at 92:16 – 93:2, 93:23 – 94:6, 98:9 – 13, 99:13 – 20 (**Exhibit N-11**)). The Panel's resulting Award identifies this very ground as a basis for the massive punitive damages awarded against Stifel. (*See* Award ¶ 6 (listing a lack of "re-training" as one of the grounds for awarding punitive damages)). The exclusion of this evidence deprived Stifel of a fair hearing and provides a further basis to vacate the punitive award under FAA Section 10(a)(3). *See, e.g.*, *Battles v. Am. Van Lines, Inc.*, 2016 WL 1258597, at *5 (S.D. Fla. Mar. 31, 2016) ("When the exclusion of relevant evidence actually deprived a party of a fair hearing, . . . it is appropriate to vacate an arbitral award." (citation and punctuation omitted)); *Royal All. Assocs., Inc. v. Liebhaber*, 2 Cal. App. 5th 1092, 1109 (2016); *Tempo Shain*, 120 F.3d at 20-21.

"compensatory" damage award, which the Panel achieved by awarding attorneys' fees of 25% of the statutory *and punitive damages*. The attorneys' fees awarded by the Panel were alone $10 million more than Petitioners' alleged out-of-pocket loss. (Claimants' Damages Chart (**Exhibit O-14**)). This outlandish award is not mere error but a wholesale abdication of the Panel's responsibility in excess of its authority.

The Panel's only basis for awarding attorneys' fees to Petitioners was the FSIPA, which requires an award of "***reasonable*** attorney fees to the prevailing party unless the court finds that the award of such fees would be unjust." Fla. Stat. § 517.211(7) (emphasis added); (*see* Award ¶ 6 (awarding attorneys' fees "pursuant to Florida Statutes Chapter 517")). To calculate reasonable attorneys' fees under Florida law, "the basic starting point" is the "lodestar approach," followed by a potential "contingency fee multiplier." *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 833 (Fla. 1990); *Newman v. Ormond*, 396 F. App'x 636, 640 (11th Cir. 2010) ("Florida has adopted the federal lodestar approach to calculating reasonable attorney's fees."). The "lodestar figure" is calculated by multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney." *SafePoint Ins. Co. v. Castellanos*, 394 So. 3d 731, 734 (Fla. 3d DCA 2024).

In contingency fee cases, after the lodestar figure is calculated, a contingency multiplier may be applied to account for the "risk of nonpayment." *Quanstrom*, 555 So. 2d at 833. This multiplier is based on several factors, evidence of which "must be presented to justify the utilization of a multiplier." *Quanstrom*, 555 So. 2d at 834; *see Castellanos*, 394 So. 3d at 734. Further, the Florida legislature recently amended the attorneys' fees statute to substantially narrow the situations in which a contingency fee multiplier may be applied. *See* Fla. Stat. § 57.104(2). The statute now provides:

> In any action in which attorney fees are determined or awarded by the court, there is a strong presumption that a lodestar fee is sufficient and reasonable. This presumption may be overcome **only in a rare and exceptional circumstance** with evidence that competent counsel could not otherwise be retained.

Fla. Stat. § 57.104(2) (emphasis added).[20] In other words, in most contingency-fee cases, reasonable attorneys' fees cannot exceed the number of hours the plaintiff's attorney reasonably worked multiplied by the attorney's reasonable hourly rate.

Florida law is clear that an award of attorneys' fees must be supported by specific evidence. *See Horowitz v. Rossdale CLE, Inc.*, 357 So. 3d 260, 263 (Fla. 5th DCA 2023) ("[T]he court had no basis for calculating a fee award because no witness provided testimony authenticating any sworn billing records that detailed the nature and volume of the legal work completed."); *Schreiber v. Schreiber*, 331 So. 3d 874, 877 (Fla. 5th DCA 2021) ("[Party's] failure to adduce competent evidence of [attorneys'] fees resulted in a complete lack of evidence on which a fee award could properly be based and requires reversal."); *Envirocycle Sols., Inc. v. Carpet Inn of Sarasota, Inc.*, 933 So. 2d 1280, 1281 (Fla. 2d DCA 2006) (reversing award of attorneys' fees under § 517.211 because "the trial court entered a final judgment that included an award of all attorney's fees requested by [plaintiff] but made no findings as to hourly rate or number of hours reasonably expended," and also failed to make any findings addressing the objections raised"); *Morton v. Heathcock*, 913 So. 2d 662, 670 (Fla. 3d DCA 2005) (reversing the determination of amount of attorneys' fees because the attorneys failed to submit authenticated evidence of fees, even though "an expert witness testified extensively . . . regarding the services rendered by the [plaintiffs'] attorneys and the reasonable value of those services").

---

[20]     This amendment became effective on March 24, 2023, *before* the initial statement of claim was filed in the *Jannetti* Arbitration.

The FINRA Arbitrators' Guide likewise requires requests for attorneys' fees to be supported by evidence: "If the panel determines that a party has a right to recovery [of attorneys' fees], *that party must prove the amount* to the satisfaction of the panel. The panel may permit *testimony or evidence* to be submitted during the case-in-chief, or in post-hearing written submissions." Arbitrators' Guide at 71 (**Exhibit Y**) (emphasis added). As discussed above, the parties agreed to be bound by the FINRA rules and procedures, including the Arbitrator's Guide. (*See* Submission Agreements (**Exhibit D**)); *Hosier*, 835 F. Supp. 2d at 1105. These rules and procedures at minimum require parties to prove their claims through evidence.

The wholesale lack of justification for a $26.5 million attorneys' fee award here is shocking. Petitioners introduced no affidavit, no testimony, no time sheets, no billing records, not even evidence that their fee arrangement was a contingency rather than a fixed or hourly fee. Completely absent was any evidence of a lodestar figure—either the number of hours or counsel's hourly rates. There was, in short, nothing at all to establish the basis for an award of any amount of attorneys' fees or costs or their reasonableness. By awarding fees with no evidence to do so, the Arbitrators exceeded their authority and their fee award must be vacated under FAA Section 10(a)(4). *See Waddell*, 2009 WL 2413668, at *14-15; *see also Safeway Stores, Inc. v. United Food & Com. Workers Union, Loc. 400*, 621 F. Supp. 1233, 1241 (D.D.C. 1985) (although "errors in the determination of factual issues alone do not warrant the overturning of an award," the award may be vacated "if no support whatsoever exists" for the award); *Fine v. Bear, Stearns & Co.*, 765 F. Supp. 824, 828 (S.D.N.Y. 1991) ("[A]n arbitration award may be vacated if it lacks any factual support.").

Moreover, the Panel's decision to award fees without hearing any supporting evidence is analogous to a "refus[al] to hear evidence pertinent and material to the controversy"—the type of

misconduct expressly warranting vacatur of the award under FAA Section 10(a)(3). After all, this section of the FAA contemplates that a valid arbitration award will be based on "evidence," which was wholly lacking here with respect to attorneys' fees. *See* 9 U.S.C. 10(a)(3). Thus, the attorneys' fee award should be vacated under Section 10(a)(3) as well.

Beyond the absence of any evidence to support it, the absurdity and unreasonableness of the $26.5 million fee award is demonstrated by other evidence. The only evidence in the record about attorneys' fees was from Stifel's counsel in support of Stifel's request for attorneys' fees. (Hillis Affidavit on Attorneys' Fees (**Exhibit P-8**)). The Panel's award of $26,504,292 in attorneys' fees to Petitioners was more than 17 times Stifel's counsel's fees.[21] The awards in *Deluca* and *Muhlbauer*, the two other Roberts Arbitrations that have been tried, further demonstrate that had evidence been introduced as required, it could not have led to the *Jannetti* panel's attorneys' fees award. In *Deluca*, the panel awarded $1,100,000 in attorneys' fees to the claimants, and in *Muhlbauer* the arbitrators awarded $469,773 in attorneys' fees. (*See Deluca* and *Muhlbauer* Awards (**Exhibit T** and **Exhibit U**)). Even taking the higher *Deluca* fee award, one could not use it to justify the attorneys' fee award in this case that was 24 times greater.

## 2. The Panel Exceeded Its Authority By Awarding Attorneys' Fees on Punitive Damages.

Approximately $20 million ($19.9 million) of the attorneys' fees awarded by the Panel were awarded as 25% of the Panel's $79.5 million award of punitive damages, effectively bringing the total punitive component of the Award up to $100 million. There was no legal or evidentiary

---

[21] On information and belief, Petitioners employed at most three lawyers in this arbitration. Even if each of these lawyers charged the same rate as Stifel's lead counsel, each of them would have to have worked on this case full-time (2,000 hours a year) for *more than 5.7 years* to generate $26 million in fees.

basis for the Panel to award attorneys' fees on punitive damages under the FSIPA. In doing so, the Panel exceeded its authority.

*First,* Petitioners themselves never asked for such an award, and they certainly did not ask for an attorneys' fees award approaching anywhere near the $26 million awarded. Putting aside that he introduced no evidence to support it, during closing argument, Petitioner's counsel expressly asked for "reasonable" attorneys' fees, which is all the FSIPA permits. (*See* Transcript 1-24-25 at 70:21 – 71:1 (**Exhibit N-11**) (citing the FSIPA and stating that "we are seeking reasonable attorney's fees."). Petitioners' counsel suggested calculating the fee award based on 25% of *compensatory* damages, as follows:

> So a $20 million award, for example, 25 percent would be an additional amount of $5 million of attorney's fee because the idea of 517 and the attorney's fees provision is to make the client whole. You're compensating for the fact that the victim had to hire an attorney to prosecute the case to get the recovery, and the intent is to make the client whole after payment of attorney's fees.

(*Id.* at 71:17 – 24).

*Second*, FSIPA Section 517 allows only statutory damages, not punitive damages, and the FSIPA was the only legal basis for an award of attorneys' fees. (*See* discussion *supra*, Section II.B). Therefore, the Panel exceeded its authority by awarding attorneys' fees under the FSIPA based on a percentage of punitive damages that the FSIPA does not permit, and that Petitioners never even requested.

*Third*, the purpose of attorneys' fees is to make a prevailing party whole—not to provide a windfall. Punitive damages, by contrast, are not intended to compensate a claimant but to penalize a respondent in order to send a message about conduct that rises to a level of culpability. *State Farm*, 538 U.S. at 416-17. There is no logical justification for awarding attorneys' fees on top of

punitive damages to make a plaintiff whole since punitive damage are not compensatory in the first place.

In sum, nothing authorized the Panel to award attorneys' fees without any supporting evidence, while violating Florida's requirements for calculating such fees. Nothing authorized the Panel to award an amount of fees that was patently unreasonable under any permissible calculation and $20 million more than Petitioners requested. Accordingly, the Panel exceeded its authority and committed misbehavior prejudicing Stifel's rights by its attorneys' fees award. *See Antietam Indus.*, 2013 WL 1213059, at *9 ("When arbitrators decide an attorneys' fees issue not submitted to them, they have exceeded their powers and vacatur of that portion of the award is proper under § 10(a)(4)."); *Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957-58, 188 N.Y.S.3d 113 (2023) (vacating the entire arbitration award on the grounds that the arbitrator exceeded his powers by awarding attorneys' fees equal to 50% of the compensatory damages without "any evidence as to the hours of legal work by the petitioner's counsel or the hourly rate"); *see also Rosati v. Bekhor*, 167 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001) (finding that an "award of attorney's fees would be unjust," given the large size of compensatory and punitive damages). Therefore, this Court should vacate the attorneys' fee portion of the Award under Section 10(a)(4) of the FAA or modify the Award under Section 11(b) to eliminate the award of attorneys' fees.[22]

---

[22]     To the extent the Eleventh Circuit's decision in *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322-24 (11th Cir. 2010) is overruled or, as Stifel believes was the case, is determined to have been wrongly decided because it misinterprets *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), the attorneys' fee award should also be vacated because (a) it is "arbitrary and capricious," *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992); *see also Sands v. UZI Barany*, 2008 WL 11520308, at *4 (S.D. Fla. Aug. 29, 2008) ("The court will deem an arbitration award arbitrary and capricious if the court cannot find any factual basis for the arbitrator's decision."), and (b) the Panel also manifestly disregarded the law in awarding the attorneys' fees.

### III.    CONCLUSION

For the foregoing reasons, Stifel respectfully requests that this Court vacate the arbitration award entered on March 12, 2025, in FINRA Case No. 23-01342 in its entirety. To the extent any portion of the Award is permitted to stand (and none should), Stifel requests that the punitive damages and attorney fee portions be vacated and that only the statutory damages award in the amount of $26,504,292 be confirmed.

Respectfully submitted May 16, 2025.

[SIGNATURES ON FOLLOWING PAGE]

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: */s/ Michael N. Kreitzer*
**MICHAEL N. KREITZER**
Florida Bar No. 705561
kreitzerm@gtlaw.com
moisem@gtlaw.com
MIALitDock@gtlaw.com
**PHILLIP M. SOVEN**
Florida Bar No. 1035504
phil.soven@gtlaw.com
moisem@gtlaw.com

G. Wayne Hillis, Jr. (*admitted pro hac vice*)
Scott E. Zweigel (*admitted pro hac vice*)
V. Justin Arpey (*admitted pro hac vice*)
**BRADLEY ARANT BOULT CUMMINGS LLP**
Promenade Tower, 20th Floor
1230 Peachtree Street NE
Atlanta, GA 30309
Telephone: (404) 868-2001
Facsimile: (404) 868-2010
whillis@bradley.com
szweigel@bradley.com
jarpey@bradley.com

Robert A. Sacks (*admitted pro hac vice*)
Robert M.W. Smith (*admitted pro hac vice*)
**SULLIVAN & CROMWELL LLP**
sacksr@sullcrom.com
smithrob@sullcrom.com
1888 Century Park East
Los Angeles, CA 90067-1725
Telephone: (310) 712-6600

*Attorneys for Respondent Stifel, Nicolaus & Co., Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was e-filed this May 16, 2025, and served to counsel of record for all parties via the Court's CM/ECF system.

/s/ Michael N. Kreitzer
MICHAEL N. KREITZER