**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No. 1:25-cv-21176-DPG**

DAVID JANNETTI, SARAH LYN JANNETTI,
ADAM JANNETTI, AND LEAH JANNETTI,

       Petitioners,

v.

STIFEL, NICOLAUS & CO., INC.,

       Respondent.

_____ /

**PETITIONERS' MEMORANDUM OF LAW IN OPPOSITION TO
RESPONDENT'S MOTION TO VACATE ARBITRATION AWARD AND
IN SUPPORT OF PETITIONERS' CROSS-MOTION FOR
POST-AWARD PREJUDGMENT INTEREST AND SANCTIONS**

| | | |
|---|---|---|
| Jeffrey Erez | Jonathan E. Minsker | Melanie Damian |
| Florida Bar No. 0102369 | Florida Bar No. 0038120 | Florida Bar No. 99392 |
| Stefan Apotheker | jminsker@minskerlaw.com | mdamian@dvllp.com |
| Florida Bar No.: 0012502 | | |
| jerez@erezlaw.com | | |
| sapotheker@erezlaw.com | | |

**EREZ LAW**
One Downtown
1 SE 3rd Avenue, Suite 1670
Miami, Florida 33131
Telephone:  (305) 728-3320
Toll Free:  (888) 840-1571
Facsimile:  (786) 842-7549

**MINSKER LAW PLLC**
1100 Biscayne Boulevard
Suite 3701
Miami, Florida 33132
Telephone:  (786) 988-1020

**DAMIAN VALORI CULMO**
1000 Brickell Avenue
Suite 1020
Miami, Florida 33131
Telephone:  (305) 371-3960
Facsimile:  (305) 371-3965

*Attorneys for Petitioners David Jannetti, Sarah Lyn Jannetti, Adam Jannetti and Leah Jannetti*

**TABLE OF CONTENTS**

Table of Authorities……………………………………………………………………………….. iii

Preliminary Statement……………………………………………………………………………… 1

Relevant Facts………………………………………………………………………………… 5

      A.    The Jannettis' Investments With Stifel……………………………………........... 5

      B.    The Jannetti and Deluca Arbitrations…………………………………........... 8

      C.    The Jannetti Hearing And Award………………………………………...... 11

Argument………………………………………………………………………………... 13

I.    Applicable Standard -- Judicial Review Of Arbitral Awards Is Extremely
Narrow and Exceedingly Deferential………………………………………………... 13

II.    Arbitrator Charny Was Impartial And Did Not Engage In Misconduct
Or Exceed Her Authority……………………………………………………………... 15

      A.    Stifel Waived, Or Is Estopped From Asserting, Any Objection
To Arbitrator Charny………………………………………………………… 15

      B.    Arbitrator Charny Was Unbiased As A Matter Of Law………………………... 18

      C.    Arbitrator Charny Did Not Engage In Misconduct……………………………… 23

      D.    Arbitrator Charny Did Not Exceed Her Authority……………………………… 26

III.    The Punitive Damages Award Was Within The Panel's Authority…………………….. 28

      A.    The Parties Empowered The Arbitrators To Decide The Issue
Of Punitive Damages………………………………………………………… 28

      B.    Stifel Mischaracterizes The Award In An Improper Effort To
Create Grounds for Vacatur………………………………………………….. 29

          1.  Stifel Improperly Asks the Court to Make Assumptions
About the Basis for the Award……………………………………… 29

          2.  Stifel's Claimed Error of Law Is Not Grounds for Vacatur………………… 32

      C.    Stifel Was Not Deprived Of A Right To Due Process……………………….. 34

1.  Due Process Rights Do Not Apply In Private Arbitrations…………………. 34

2.  The Arbitration Was Fundamentally Fair……………………………………… 40

D.  The Punitive Damages Award Is Not Excessive………………………………. 42

IV.  The Panel Did Not Exceed Its Authority In Awarding Attorneys' Fees……………….. 45

A.  Stifel's Assertion That The Jannettis Did Not Introduce Sufficient
Evidence Of Their Attorneys' Fees Is Not A Legitimate Basis
For Vacatur Or Modification Under §10(a)(4) Or §11(b)……………………… 45

B.  The Panel Did Not Exceeded Its Authority By Awarding
Attorneys' Fees On Punitive Damages…………………………………………… 47

V.  The Court Should Grant The Cross-Motion And Award Post-Award
Prejudgment Interest And Sanctions………………………………………….… 49

A.  The Jannettis Are Entitled To Post-Award Prejudgment Interest ……………… 49

B.  Stifel's Motion To Vacate Is Frivolous And Warrants Sanctions………………. 50

Conclusion ……………………………………………………………………………….... 51

ii

**Table of Authorities**

**Cases**

*Action Marine, Inc. v. Continental Carbon Inc,*

   *481 F.3d at 1318 (11th Cir. 2007)*.................................................................................... 43, 44

*Aegis Capital Corp. v. Cohen*,

   2019 WL 7168305 (S.D. Fla. Dec. 24, 2019)............................................................................ 18

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*,

   508 F.3d 995 (11th Cir. 2007) ................................................................................................. 13

*Ainsworth v. Skurnick,*

   960 F.2d 939 (11th Cir. 1992) ................................................................................................. 48

*Antietam Indus., Inc. v. Morgan Keegan & Co.,*

   2013 WL 1213059 (M.D. Fla. Mar. 25, 2013) ..................................................................... 32, 47

*Appalachian Artworks v. JAKKS Pacific, Inc.,*

   718 Fed. Appx 776 (11th Cir. 2017) ......................................................................................... 47

*Aviles v. Charles Schwab & Co.,*

   435 F. App'x 824, (11th Cir. 2011)........................................................................................... 18

*B.L. Harbert Int'l, LLC v. Hercules Steel Co.,*

   441 F.3d 905 (11th Cir. 2006) ................................................................................................. 50

*Badgerow v. Walters*,

   596 U.S. 1, 9, 142 S. Ct. 1310, 212 L. Ed. 2d 355 (2022)........................................................ 50

*Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac.*

   *R. Co.,*

   522 F.3d 746 (7th Cir. 2008), *aff'd*, 558 U.S. 67 (2009)........................................................ 26

*Biscayne Beach Club Condo. Ass'n v. Westchester Surplus Lines Ins. Co.,*

   111 F.4th 1182 (11th Cir. 2024) ...................................................................................... 15

*BMW of N. Am, Inc. v. Gore,*

   517 U.S. 559 (1996) ............................................................................................... 4, 40

*Busacca v. S.E.C.,*

   449 F. App'x 886 (11th Cir. 2011) ................................................................................. 37

*Cat Charter, LLC v. Schurtenberger,*

   646 F.3d 836 (11th Cir. 2011) ...................................................................................... 27

*CM South East Texas Houston, LLC v. Careminders Home Care, Inc.,*

   662 Fed. Appx. 701 (11th Cir. 2016) ............................................................................. 40

*Commodities & Minerals Enterprise, Ltd. v. CVG Ferrominera Orinoco C.A.,*

   111 F.4th 1294 (11th Cir. 2024) .................................................................................... 14

*Computer Task Group, Inc. v. Palm Beach County,*

   782 So.2d 942 (Fla. 4th DCA 2001) .............................................................................. 26

*Cote v. Philip Morris USA, Inc.,*

   985 F.3d 840 (11th Cir. 2021) ...................................................................................... 44

*Davis v. Prudential Securities, Inc.,*

   59 F.3d 1186 (11th Cir.1995) .......................................................................... 32, 34, 36,

*Diageo Dominicana, S.R.L. v. United Brands, S.A.,*

   314 So. 3d 295 (Fla. 3d DCA 2020) .............................................................................. 33

*Edmondson v. Leesville Concrete,*

   500 U.S. 614 (1991) .................................................................................................. 39

*Envirocycle Sols., Inc. v. Carpet Inn of Sarasota, Inc.,*

iv

933 So. 2d 1280 (Fla. 2d DCA 2006)......................................................................................... 47

*Everglades Auth. v. Andrews*,

603 So. 2d 118 (Fla. 4th DCA 1992)........................................................................................ 24

*Fed. Vending, Inc. v. Steak & Ale of Fla., Inc.*,

71 F. Supp. 2d 1245 (S.D. Fla. 1999)....................................................................................... 19

*Ferraro L. Firm, P.A. v. Royal Merch. Holdings, LLC,*

394 So. 3d 672 (Fla. 3d DCA 2024).......................................................................................... 36

*Fine v. Bear, Stearns & Co.,*

765 F. Supp. 824 (S.D.N.Y. 1991) ........................................................................................... 47

*First Options of Chicago, Inc. v. Kaplan*,

514 U.S. 938 (1995) .................................................................................................................. 14

*Floridians for Solar Choice, Inc. v. Paparella,*

802 F. App'x 519 (11th Cir. 2020).................................................................................... 27, 32

*Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.,*

314 F. Supp. 3d 1346 (S.D. Fla. 2018).................................................................................... 27

*Fort Hill Buildings, Inc. v. National Grange Mut. Ins. Co.,*

866 F.2d 11 (1st Cir. 1989) ...................................................................................................... 27

*Franklin v. McCaughtry*,

398 F.3d 955 (7th Cir. 2005) .................................................................................................... 23

*Gellman v. Hunsinger,*

2012 WL 4295289, No. 18-cv-2641-BAS-AGS (S.D. Cal. Sep 20, 2021).............................. 35

*Gherardi v. Citigroup Global Markets, Inc.*,

975 F.3d 1232 (11th Cir. 2020)................................................................................................ 14

*Glennon v. Dean Witter Reynolds, Inc.*,

    83 F.3d 132 (6th Cir. 1996) ............................................................................. 35

*Graulau v. Credit One Bank, N.A.*,

    2024 WL 1174022 (11th Cir. March 19, 2024)................................................... 14, 48

*Grigsby & Associates, Inc. v. M Securities Investments, Inc.*,

    2010 WL 11452307 (S.D. Fla. Sept. 30, 2010) ............................................ 49

*Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*,

    78 F.4th 1252 (11th Cir. 2023) ...................................................................... 13

*Hagman v. Citigroup Global Markets, Inc.*,

    2011 WL 975535 (Cal. Super. Feb. 9, 2011) ............................................... 25

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,

    552 U.S. 576 (2008) ...................................................................................... 14

*Harper v. Pro. Prob. Servs. Inc.*,

    976 F.3d 1236 (11th Cir. 2020) .................................................................... 25

*Hidroelectrica Santa Rita, S.A. v. Corporacion AIC, S.A.*,

    119 F.4th 920 (11th Cir. 2024) ..................................................................... 14

*Hoeft v. MVL Grp., Inc.*,

    343 F.3d 57 (2d Cir. 2003) ........................................................................... 23

*Honda Motor Co. v. Oberg*,

    512 U.S. 415 (1994) ................................................................................. 39, 41

*Horowitz v. Rossdale CLE, Inc.*,

    357 So. 3d 260 (Fla. 5th DCA 2023)............................................................ 47

*Hosier v. Citigroup Global Markets, Inc.*,

835 F.Supp. 2d 1098 (D. Co. 2011)........................................................................ 46

*Irwin v. Marko*,

417 So. 2d 1108, 1109 (Fla. 4th DCA 1982)........................................................ 24

*Jaffe v. Grant*,

793 F.2d 1182 (11th Cir. 1986) ............................................................................ 24

*Johnson v. Directory Assistants Inc.*,

797 F.3d 1294 (11th Cir. 2015) ............................................................................ 48

*JPay, Inc. v. Kobel*,

2020 WL 5763930 (S.D. Fla. Sept. 28, 2020) ................................................ 13, 45

*Karaha Bodas Co. v. Negara et al.*,

364 F.3d 274 (5th Cir. 2004) ................................................................................ 26

*Kates v. Seidenman*,

881 So. 2d 56 (Fla. 4th DCA 2004)....................................................................... 23

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,

341 F.3d 987 (9th Cir. 2003) ................................................................................ 41

*Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*,

2019 WL 2462865 (M.D. Fla. June 13, 2019) ...................................................... 22

Leslie v. Leslie,

859 So. 2d 543 (Fla. 4th DCA 2003)..................................................................... 24

*Levy v. Citigroup Global Markets, Inc.*,

2006 WL 8432648 (S.D. Fla. Oct. 17, 2006) ........................................................ 24

*Lifecare Int'l, Inc. v. CD Med., Inc.*,

68 F.3d 429 (11th Cir. 1995) ................................................................................ 18

*Liteky v. U.S.,*

    510 U.S. 540 (1994) ........................................................................................................ 20

*Lugar v. Edmonson Oil,*

    457 U.S. 922 (1982) ........................................................................................................ 39

*Maldonado v. Rhoden,*

    2021 WL 1293425 (M.D. Fla. Apr. 7, 2021)............................................................... 20

*Mantle v. Upper Deck Co.,*

    956 F.Supp. 719 (N.D. Tex. 1997) .......................................................................... 35, 42

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*

    514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)................................................... 36

*Matter of Briscoe Protective, LLC v North Fork Surgery Ctr., LLC,*

    215 A.D.3d 956 (N.Y. App. Div. 2023) ..................................................................... 48

*McGinnis v. Am. Home Mortg. Servicing, Inc.,*

    901 F.3d 1282 (11th Cir. 2018) .................................................................................. 44

*McLaurin v. Terminix Int'l Co., LP,*

    13 F.4th 1239 (11th Cir. 2021)................................................................................... 48

*McWhorter v. City of Birmingham,*

    906 F.2d 674 (11th Cir. 1990) ................................................................................... 20

*MedValUSA Health Programs, Inc . v. MemberWorks, Inc.,*

    273 Conn. 634, 872 A.2d 423, cert. denied sub nom ............................................... 35

*Mendel v. Morgan Keegan & Co.,*

    654 F. App'x 1001 (11th Cir. 2016)........................................................................... 19

*Miccosukee Tribe of Indians of Fla. v. Cypress,*

56 F.Supp.3d 1324 (S.D. Fla. 2014) ........................................................................ 20

*Mooney v. Holohan*,

294 U.S. 103 (1935) ................................................................................................ 39

*Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters*

*Ben. Funds*,

748 F.2d 79 (2d Cir. 1984) ..................................................................................... 21

*Morgan Keegan & Co. v. Lalonde,*

No. CIV. A. 00-2520, 2001 WL 43600 (E.D. La. Jan. 16, 2001) ...................... 35, 42

*Morgan Keegan & Co. v. Smythe*,

2014 WL 2462853 (Tenn. App. 2014) .................................................................... 21

*Morgan Stanley & Co, LLC v. Core Fund*,

884 F.Supp.2d 1229 (M.D. Fla. 2012) ................................................................ 28, 32

*Morton v. Heathcock*,

913 So. 2d 662 (Fla. 3d DCA 2005) ........................................................................ 47

*Murillo v. A Better Way Wholesale Autos, Inc.,*

2019 WL 3081062, No. 3:17-CV-1883 (VLB) (D. Conn. July 15, 2019) ............... 35

*New York Times v. Sullivan*,

376 U.S. 254 (1964) ................................................................................................ 39

*Newman v. Ormond*,

396 F. App'x 636 (11th Cir. 2010) .......................................................................... 47

*Norris v. United States*,

820 F.3d 1261 (11th Cir. 2016) ............................................................................... 23

*NYKCool A.B. v. Pac. Fruit, Inc.,*

ix

507 F. App'x 83 (2 d Cir. 2013) .............................................................................. 26

*O.R. Sec., Inc. v. Pro. Planning Assocs., Inc.*,

857 F.2d 742 (11th Cir. 1988) ............................................................... 30, 34, 44

*Okun v. Litwin Securities, Inc.*,

652 So.2d 387 (Fla. 3rd DCA 1995) ........................................................................ 49

*Oliveira v. Ilion Taxi Aero Ltda*,

830 So. 2d 241 (Fla. 4th DCA 2002) ...................................................................... 33

*Oxford Health Plans, LLC v. Sutter*,

569 U.S. 564 (2013) ............................................................................... 14, 33

*Pac. Mut. Life Ins. Co. v. Haslip*,

499 U.S. 1 (1991) ................................................................................................ 39

*Park v. First Union Brokerage Services, Inc.*,

 926 F.Supp. 1085 (M.D. Fla. 1996) ....................................................................... 36

*Perpetual Sec., Inc. v. Tang*,

290 F.3d 132 (2d Cir. 2002) .................................................................................. 37

*Philip Morris v. Williams,*

*549 U.S. 346, 353 (2007)* .................................................................................... 43

*Pochat v. Lynch*,

2013 WL 4496548 (S.D. Fla. Aug. 22, 2013) ........................................................ 26

*Porush v. Lemire*,

6 F.Supp.2d 178 (E.D. N.Y. 1998) ........................................................................ 35

*Prudential Sec., Inc. v. Dalton,*

929 F. Supp. 1411 (N.D. Okla. 1996) .................................................................... 41

*Riccard v. Prudential Ins. Co.*,

    307 F.3d 1277 (11th Cir. 2002) ........................................................................................ 13

*Roberts v. AT&T Mobility LLC*,

    No. 15-CV-03418-EMC, 2016 WL 1660049 (N.D. Cal. Apr. 27, 2016), *aff'd*, 877 F.3d 833

    (9th Cir. 2017) ................................................................................................................... 39

*Rollins v. Black,*

    167 Fed. Appx. 798 (11th Cir. 2006) ............................................................................... 49

*Rollins v. Black,*

    Case No. 3:03-cv-00772 (M.D. Fla. June 21, 2006) ........................................................ 49

*Rooms v. S.E.C.,*

    444 F.3d 1208 (10th Cir. 2006) ....................................................................................... 38

*Rosati v. Bekhor*,

    167 F.Supp.2d 1340 (M.D. Fla. 2001).......................................................................... 31, 48

*Rosensweig v. Morgan Stanley & Co.,*

    494 F.3d 1328 (11th Cir. 2007) ................................................................................... 26, 40

*Royal Caribbean Cruises Ltd. v. Soskin*,

    2019 WL 12536389 (S.D. Fla. Feb. 6, 2019) ............................................................... 24, 40

*SafePoint Ins. Co. v. Castellanos*,

    394 So. 3d 731 (Fla. 3d DCA 2024)................................................................................. 47

*Safeway Stores, Inc. v. United Food and Commercial Workers Union*, Local 400,

    621 F. Supp. 1233 (D.D.C. 1985)..................................................................................... 47

*Sands v. UZI Barany,*

    2008 WL 11520308 (S.D. Fla. Aug. 29, 2008) ................................................................ 48

*Santisteban v. State*,

    72 So.3d 187 (Fla. 4th DCA 2011)........................................................................ 20

*Saturn Telecomms Svcs, Inc. v. Covad Commc'ns Co.*,

    560 F. Supp.2d 1278 (S.D. Fla. 2008)............................................................ 1, 33, 44

*Scandinavian Reins. Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*,

    668 F.3d 60 (2d Cir. 2012) ..................................................................................... 22

*Schneider v. First Am. Bank*,

    336 So. 3d 47 (Fla. 4th DCA 2022)........................................................................ 33

*Shanghai Liyu Optoelectronics Co., Ltd. v. Brite Lite Tribe, LLC*,

    2025 WL 1575800 (S.D. Fla. June 4, 2025)........................................................... 49

*Shelley v. Kraemer*,

    334 U.S. 1 (1948) ................................................................................................... 39

*Shimko v. Wells Fargo Clearing Services, LLC*,

    2019 WL 13549465 (S.D/. Fla. Dec. 27, 2019)...................................................... 27

*Soaring Wind Energy, L.L.C. v. Catic USA Inc.*,

    946 F.3d 742 (5th Cir. 2020) ................................................................................. 32

*Sphere Drake Ins. Ltd. v. Lincoln Nat. Life Ins. Co.*,

    2006 WL 2699270 (N.D. Ill. Sept. 13, 2006)................................................... 40, 41

*Spirit of the East, LLC v. Yale Products, Inc.*,

2023 WL 2890013 (11th Cir. Apr. 11, 2023) ............................................................ 14

*Standard Guar. Ins. Co. v. Quanstrom*,

    555 So. 2d 828, 833 (Fla. 1990) ............................................................................ 47

*Sawtelle v. Waddell & Reed, Inc.*,

    304 A.D.2d 103 (N.Y. App. Div. 2003) ...................................................................... 41

*State Farm Mut. Auto. Ins. Co. v. Campbell*,

    538 U.S. 408 (2003) ..................................................................................................... 4,40

*State v. Steele*,

    348 So. 2d 398 (Fla. 3d DCA 1977) .............................................................................. 24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,

    559 U.S. 662 (2010) ....................................................................................................... 34

*Strasser v. Yalamanchi*,

    783 So. 2d 1087 (Fla. 4th DCA 2001) ........................................................................... 24

*Tecnicas Reunidas de Talara S.A.C. v. SSK Ingenieria y Construccion*,

    40 F.4th 1339 (11th Cir. 2022) ...................................................................................... 15

*Tempo Shain v. Bertek,*

    120 F.3d 16 (2d Cir. 1997) ............................................................................................. 35

*Todd Shipyards Corp. v. Cunard Line, Ltd.,*

    943 F.2d 1056 (9th Cir.1991) ........................................................................................ 42

*Torres v. Morgan Stanley Smith Barney LLC*,

    2020 WL 13413689 (S.D. Fla. April 8, 2020) ............................................................... 29

*Torres v. Morgan Stanley Smith Barney, LLC*,

    839 Fed. App'x 328 (11th Cir. 2020) ............................................................................. 13

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,*

    607 F.2d 649 (5th Cir. 1979) ................................................................................... 38, 40

*UBS Financial Services Inc. of Puerto Rico v. Efron*,

2023 WL 8412592 (S.D. Fla. Sept. 25, 2023) ......................................................... 23

*United Merch. Wholesale Inc. v. Direct Containers Inc.,*

 No. 2:18-CV-617-KM-JBC, 2018 WL 3601232, at *6 (D.N.J. July 26, 2018) ................. 35, 42

*United States v. Bailey*,

 175 F.3d 966 (11ᵗʰ Cir. 1999) ........................................................................... 20

*Venture Cotton Co-op v. Neudorf,*

 2014 WL 4557765 (Tex. App. 2014) ..................................................................... 36

*Verneus v. Axis Surplus Ins. Co.,*

 2018 WL 3417905 (S.D. Fla. July 13, 2018) ........................................................... 22

*Vertrue, Inc . v. MedValUSA Health Programs, Inc.,*

 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005) ............................................... 35

*Waddell v. Holiday Isle, LLC*,

 2009 WL 2413668 (S.D. Ala. Aug. 4, 2009) ........................................................ 32, 47

*Waller v. Roche*,

 138 Fed. Appx 165 (11ᵗʰ Cir. 2005) ..................................................................... 20

*White Springs Agricultural Chemicals, Inc. v. Glawson Investment Corp.,*

 660 F.3d 1277 (11ᵗʰ Cir. 2011) ........................................................................... 44

*Williams v. First Advantage LNS Screening Sols. Inc.*,

 947 F.3d 735 (11th Cir. 2020) ............................................................................ 41

*Williams v. Philip Morris Inc.,*

 *344* or. 45 (2008) ......................................................................................... 43

Statutes

9 U.S.C.S. §11 .............................................................................................. 31

Fla. Stat. § 57.105(7)...................................................................................................... 46

Fla. Stat. § 682.1 ............................................................................................................ 48

Fla. Stat. § 682.11 .......................................................................................................... 48

Fla. Stat. § 768.73 .......................................................................................................... 42

Petitioners, David Jannetti ("Jannetti"), Sarah Lyn Jannetti, Adam Jannetti and Leah Jannetti (collectively, the "Jannettis") respectfully submit their memorandum of law in opposition to the motion to vacate arbitration award [ECF No. 27] (the "Motion") filed by Respondent, Stifel, Nicolaus & Co., Inc. ("Stifel"), and in support of the Jannettis' cross-motion for post-award prejudgment interest and sanctions (the "Cross-Motion"), and in support thereof, state as follows:

## PRELIMINARY STATEMENT

"Everyone supposedly loves arbitration. At least until arbitration goes badly." *Saturn Telecomms Svcs, Inc. v. Covad Commc'ns Co.*, 560 F. Supp.2d 1278, 1279 (S.D. Fla. 2008). Such is the case here.

This action arises out of extreme misconduct by Stifel -- the 7th largest brokerage firm in the country with a parent company market capitalization of $11.2 billion -- and its former broker Chuck Roberts, who has a history of complaints, lawsuits, violations, sanctions, suspensions, terminations and supervision mandates issued against him. In early 2020, Roberts befriended Jannetti, and then took advantage of their close personal relationship to induce Jannetti and his minor children to make highly speculative and risky investments in a complex product known as "structured notes." Roberts falsely described the investments to his customers as "solid," "steady," and "money good," even though Roberts knew the investments were highly inappropriate, and recommended them solely to generate millions of dollars in commissions for himself and Stifel. Roberts admitted as much in a text message to his colleague: "[Customer Name Redacted] gladly did this round of notes… I'm calling and chiseling every motherf**ker."

But Roberts was not acting alone at Stifel. To the contrary, Stifel -- which continued to employ and failed to supervise Roberts despite his years of misconduct -- intentionally suppressed a letter that had been drafted to advise Jannetti that his account was dangerously over-concentrated

in structured notes. Stifel did so to protect itself -- and the profits it was making -- at Jannetti's expense. As a result of these and other shocking acts and omissions by Roberts and Stifel, a three-member panel of arbitrators unanimously found Stifel liable to the Jannettis for compensatory damages, punitive damages and attorneys' fees in the total amount of $132.5 million.[1]

Rather than finally take responsibility for its egregious treatment of the Jannettis (and other Stifel clients), Stifel now seeks to vacate the Award based on a number of frivolous and legally unsupportable arguments. Stifel improperly seeks to relitigate in this forum many of the same arguments that were previously rejected by the Panel and FINRA, and Stifel improperly asks this Court to review and reverse factual findings and legal rulings concerning issues that the parties indisputably submitted to the Panel. In doing so, Stifel badly misstates the applicable law, misrepresents the substance of the Panel's and FINRA's rulings, and ignores well-established Supreme Court and Eleventh Circuit precedent precluding courts from second guessing arbitrators.

First, Stifel fails to meet its "heavy burden" to establish that Arbitrator Stephanie Jeannette Charny ("Charny") was guilty of evident partiality and misconduct and exceeded her authority by refusing to recuse herself and certifying that she could be impartial. Stifel cites to none of the evidence the law requires to prove such an accusation -- *i.e.*, evidence of bias that is direct, definite and capable of demonstration rather than remote, uncertain and speculative. Rather, Stifel relies entirely on its own self-serving and entirely speculative conclusion that Charny must have been biased because she previously served as an arbitrator in a similar case -- the *Deluca* Arbitration -- where the panel also unanimously found Stifel liable for compensatory damages, punitive damages

---

[1] It was not until just one week before the deadline for the Jannettis to file this brief, that Stifel -- knowing that this brief would disclose the extent of Roberts' and Stifel's misconduct -- publicly disclosed that Roberts was "voluntarily" leaving Stifel's employ. Simultaneously with that disclosure, FINRA barred Roberts from the securities brokerage industry for life. (*See* Ex. 2; Ex. 15-B. p. 9.)

and attorneys' fees.

As an initial matter, Stifel has waived and/or is estopped from accusing Charny of bias as a result of her service on the *Deluca* Arbitration.   Stifel elected to rank Charny to serve in both cases -- rather than strike her -- as part of its chosen litigation strategy.   As such, Stifel knowingly assumed the obvious and foreseeable risk that Charny could issue an unfavorable award in the *Deluca* Arbitration, while still serving as an arbitrator in the *Jannetti* Arbitration.   Yet after Charny was appointed to both panels, Stifel chose to sit idle for more than fourteen months without raising any objections or concerns that Charny's service in two similar cases might affect her ability to be impartial (hoping, of course, that she would rule in Stifel's favor in both cases).   The law does not permit Stifel to remain silent, wait to see whether its chosen litigation strategy will pay off, and then belatedly object when it does not.

But even if Stifel had not waived its objection to Charny when it chose to rank her for service on multiple Roberts Arbitrations, it has abjectly failed to meet its heavy burden to demonstrate her partiality or misconduct.   That an arbitrator previously issued an adverse award against a party in a similar case -- including punitive damages -- simply does not constitute evidence of bias, misconduct or exceeding authority, let alone the kind of definitive and direct evidence required for vacatur.   It is axiomatic that the rulings of an arbitrator -- or a judge -- in a related case are not grounds for recusal in a case with similar facts and parties.   Indeed, arbitrators and judges often serve on cases involving similar facts and parties precisely because they are presumed to be impartial.   That is why it takes direct and definitive evidence of specific acts or omissions to recuse a judge or arbitrator (not speculation based on prior rulings), and that is why FINRA rejected this exact same argument in denying Stifel's belated motion to remove Charny. In this regard, Stifel's motion is not only an improper attack on the integrity of Charny, it is an improper attack on the arbitration process to which it agreed.

3

Second, Stifel's request that the Court vacate or modify the punitive damages award improperly requests that the Court review the Panel's factual and legal determination of the issue. But the parties indisputably submitted the issue of punitive damages to the Panel, which is the beginning and the end of the inquiry under applicable law. And regardless, the Panel's punitive damages award of three times the compensatory damages is unquestionably permissible under Florida law. Stifel's attempt to relitigate the Panel's calculation of compensatory damages in an effort to arrive at a higher punitive damages ratio amounts to nothing more than an assertion of factual or legal error by the arbitrators, which is not grounds for vacatur.

Recognizing that the Court cannot review the legal and factual basis for the punitive damages award, Stifel attempts to mask its improper attack on the merits of the award as an attack on the fairness of the process. In doing so, Stifel misstates and contorts the applicable law by arguing that the due process standards applied by the United States Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003), to punitive damages verdicts issued by a jury also apply to arbitrations. But of course, the law is precisely the opposite. It is well-settled that the *Gore* and *State Farm* standards do not apply to an arbitration and -- to the extent due process concerns even apply -- all that is required in the arbitral context is for a party to receive adequate notice and a fair hearing. It is beyond dispute that Stifel received precisely that. In this regard, Stifel's entire argument concerning the punitive damages award is merely a repackaging of its argument that the proceeding was fundamentally unfair because Charny previously ruled against Stifel. The Court should reject Stifel's circular -- and disingenuous -- argument.

Third, Stifel's attack on the Panel's award of attorneys' fees similarly should be rejected. It is beyond dispute that the parties explicitly submitted the issue of attorneys' fees to the Panel, both in writing and verbally. Accordingly, Stifel's argument improperly invites the Court to

4

review the factual and legal basis for the Panel's decision.   The Court should decline to do so.

Finally, the Court should grant the Jannettis' Cross-Motion for post-award prejudgment interest and for sanctions.   It is settled law that a party is entitled to prejudgment interest from the time of the award to its confirmation (including on any punitive, non-economic portions of the award), as compensation for being deprived of the use of money to which it is entitled.   This principle applies even where, as here, the award is silent as to the issue with respect to punitive damages and attorneys' fees.   Moreover, Stifel's Motion is without any factual legal basis and constitutes a significant waste of the parties' and the Court's time and resources.   Stifel's continuing delay and denial is without justification, and should be sanctioned through an award of the attorneys' fees and costs incurred by the Jannettis in connection with Stifel's frivolous Motion.

## RELEVANT FACTS

### A.      The Jannettis' Investments With Stifel.

In late 2019, Jannetti was introduced to Chuck Roberts ("Roberts"), who was one of the single largest revenue generating financial advisors at Stifel.  (*See* Ex. 3-B, Tr. 10-15-2024 at 160:22; Ex. 3-G, Tr. 10-23-2024 at 1611:4-1612:1.)   In 2021 alone, Roberts generated in excess of $45 million in gross commissions and fees, $21.4 million of which resulted from the sale of structured notes.  (*See* Ex. 4.)   At the time he met Roberts, Jannetti was 54 years old, had recently sold his business, and was interested in establishing accounts for himself and his three children, two of whom were minors at the time. (*See* Ex. 3-B, Tr. 10-15-2024 at 163:9-16; Ex. 3-F, Tr. 10-22-2024 at 1351:1-9.)

In early 2020, Roberts recommended that the Jannettis invest in a product known as structured notes, which he recommended and sold to his customers.   Neither Jannetti nor any of his children had any familiarity or experience with structured notes prior to becoming customers of Stifel and Roberts, even though Roberts certified that Jannetti's minor and college-aged children

5

supposedly had more than 10 years of investing experience. (*See* Ex. 3-F, Tr. 10-22-2024 at 1369:8–1374:5; Ex. 5, pdf p. 36.)   Roberts represented to the Jannettis and/or other clients that the structured notes were "prudent," "money good," "slow and steady," "solid," "very solid," "like watching paint dry," "like a substitution for bonds," and "temper[ed] volatility". (*See* Ex. 6; Ex. 3-B, Tr. 10-15-24 at 143:19-144:2.)   But contrary to Roberts' representations, structured notes actually are high-risk investments. (*See* Ex. 3-F, Tr. 10-22-2024 at 1371:8–1375:19; Ex. 3-B, Tr. 10-15-2024 at 179:12-22.)[2]   Worse still, Roberts failed to disclose his true intentions -- reflected in a text message from Roberts to his partner -- to swindle the Jannettis and his other clients:

> "[Customer Name Redacted] gladly did this round of notes… I'm calling and chiseling every motherf**ker."

(*See* Ex. 7.)[3]

From February 2020 to December 2021, Roberts sold the Jannettis $68.4 million worth of contingent coupon structured notes, linked to speculative technology stocks and the volatile S&P Biotechnology Index and S&P Regional Banking Index, while generating in excess of $1.2 million in commissions for himself and Stifel. (*See* Ex. 8, Expert Report of Dr. Craig McCann, pdf p. 77, p. 75 of Slide Presentation.)   By June 2021, 72.5% of the Jannettis' Stifel accounts were concentrated in high-risk structured notes, far exceeding Stifel's own internal policy, which limits structured notes to no more than 30% of the assets in a customer's portfolio. (*See id.*, pdf p. 17, p. 15 of Slide Presentation; Ex. 41, at 6.)   The risks associated with this significant concentration in structured notes were further exacerbated by the fact that 75.9% of the Jannettis' structured note

---

[2] Structured notes are a highly complex type of security involving a debt instrument combined with a derivative component that is based upon complex formulas linked to the performance of one or more securities. (*See* Ex. 9, at 1-2; Ex. 10, at 3-5.)

[3] Oxford Languages defines "chisel" as an informal term meaning: to "cheat or swindle" someone. And Merriam-Websters defines "chiseling" as: "to employ shrewd or unfair practices on in order to obtain one's end."

holdings were concentrated in structured notes linked to the same two volatile securities.  (*See id.,* pdf p. 48, p. 46 of Slide Presentation.)

In October 2021, Stifel management drafted a letter directed to Jannetti to inform him of the risk created by his accounts being 77.62% concentrated in structured notes.  (*See* Ex. 11)  However, Roberts' immediate supervisor, Lori Lucarelli, interceded before the letter could be sent, and instructed that the letter *not* be sent.  (*See* Ex. 11; Ex. 3-E, Tr. 10-18-2024 at 926:19-25–927:1-3.)   In other respects, Roberts evaded supervision at Stifel by conducting business with his customers, including Jannetti, via tens of thousands of text messages sent from Roberts' unmonitored and unsupervised personal mobile device, in violation of Stifel policy.  (*See* Ex. 3-A, Tr. 10-14-2024 at 103:25–106:16.)   In September 2024, Stifel paid $35 million to resolve charges by the Securities and Exchange Commission (SEC) related to its "widespread and longstanding" failure to adequately supervise its employees prohibited use of personal mobile devices to conduct firm business.  (*See* Ex. 13, *In the Matter of Stifel, Nicolaus & Co., Inc.*, 2024 WL 4277335, at *1-9 (S.E.C. Release No. 6722 Sept. 24, 2024.)

Roberts also managed a Solutions Program discretionary account for Jannetti, which was dangerously concentrated in a small number of speculative stocks.  (*See* Ex. 3-B, Tr. 10-15-2024 at 338:8-339:6.)   As of June 2022, 76% of Jannetti's discretionary account was concentrated in just three highly speculative stocks, which violated the model-based investment philosophy that had been approved by Stifel and agreed upon by Jannetti.  (*See* Ex. 12; Ex. 3-B, Tr. 10-15-2024 at 339:1-16.)

In addition, Roberts advised Jannetti to finance his investments through an unsuitable and excessive use of leverage.  (*See* Ex. 3-F, Tr. 10-22-2024 at 1436:2-6.)   At its peak in 2022, Jannetti's margin loan balance exceeded $11.8 million.  (*See* Ex. 8, pdf p. 65, p. 63 of Slide Presentation.)   Roberts also advised Jannetti to take out a $5.6 million mortgage and invest the

proceeds in structured notes. (*See* Ex. 3-F, Tr. 10-22-2024 at 1408:2-16.) From May 2022 to November 2022, as his structured notes declined in value, Jannetti received numerous margin calls resulting in a series of forced liquidations, causing Jannetti to realize millions of dollars in losses. (*See* Ex. 3-D, Tr. 10-17-2024 at 619:16–620:5.) In addition to those losses, Jannetti lost $3.1 million due to the overconcentration of his account in speculative stocks. (*See* Ex. 8, pdf p. 89, p. 88 of Slide Presentation.)

**B.      The *Jannetti* and *Deluca* Arbitrations.**

On May 11, 2023, the Jannettis filed the underlying arbitration (the "Arbitration") against Stifel, asserting claims for breach of fiduciary duty, negligence, negligent supervision, fraud, breach of contract and violation of the Florida Securities and Investor Protection Act ("FSIPA").[4] The Jannettis alleged that their losses were caused by, among other things, Stifel's and Roberts' misrepresentations and omissions, the excessive and unsuitable use of leverage, and Stifel's failure to adequately supervise Roberts despite having actual knowledge of his extensive and disturbing history of misconduct. (*See* Ex.14.)

What Stifel and Roberts did to the Jannettis is not an isolated incident. In addition to having been the subject of more than a half dozen customer complaints and/or arbitration claims at the time he was hired by Stifel, Roberts recently has been the subject of 29 additional FINRA arbitrations (the "Roberts Arbitrations"), including, among others, the *Deluca* Arbitration. (*See* Ex. 15-A.)[5]

---

[4] On August 27, 2024, the Jannettis filed their Second Amended Statement of Claim. (Ex. 14.).

[5] Contrary to Stifel's assertions (Motion at 1, 4, 8, 17), the *Deluca* and *Jannetti* Arbitrations were not virtually identical. While both Arbitrations do involve several overlapping issues related to the same financial advisor and some of the same investments, the two cases are significantly and materially different in numerous important respects. The *Deluca* Claimants and the *Jannetti* Claimants each had their own unique circumstances and suitability factors, and the extent of their relationship with Roberts was very different. For example, the lead Claimant in the *Deluca*

In the *Deluca* Arbitration, on June 30, 2023, FINRA provided Stifel and the *Deluca* Claimants with an Arbitrator Ranking Form containing a list of potential arbitrators that included Charny.  (Ex. 19.)   Stifel elected not to strike Charny, and instead chose to rank her.   A few days later in the *Jannetti* Arbitration, FINRA provided the Jannettis and Stifel with an Arbitrator Ranking Form containing a list of potential arbitrators that also included Charny.  (Ex. 20.)   Stifel again elected not to strike Charny (despite Stifel's ranking her in the *Deluca* Arbitration), and instead chose to rank her a second time.[6]

On July 28, 2023, FINRA informed Stifel that Charny had been appointed as an arbitrator in the *Deluca* Arbitration.   (Ex. 22.)   A few days later, on August 4, 2023, FINRA informed Stifel that Charny had been appointed as an arbitrator in the *Jannetti* Arbitration.   (*See* Ex. 23.)

Stifel's chosen litigation strategy of selecting Charny to serve as an arbitrator in multiple Roberts Arbitrations is not unique to the *Jannetti* and *Deluca* Arbitrations.   Stifel has ranked a total of seven arbitrators to serve twice in 14 Roberts Arbitrations, with Charny being one of those seven.  (*See* Ex. 24, Declaration of Jeffrey Erez.)   In fact, all three arbitrators on the *Jannetti* Panel were also ranked by Stifel to serve in another Roberts Arbitration.   (*Id.* at pdf p. 5.)

The *Deluca* Arbitration proceeded to a hearing first.   The final hearing in the *Deluca*

---

Arbitration is a 62-year-old investor who had very limited contact with Roberts.  (*See* Ex. 16, Tr. 7-11-2024 at 851:2-3, 861:12-2, 877:23–879:17, 883:20-25, 891:7-17.).   In the *Jannetti* Arbitration, Jannetti had extensive communications with Roberts, who befriended Jannetti and fostered an active social relationship with him in order to gain his trust and ultimately management of his significant assets.  (*See* Ex. 3-B, Tr. 10-15-2024, at 208:6–210:7.)   In the *Deluca* Arbitration, the accounts at issue were not leveraged, and the *Deluca* Claimants did not receive margin calls or incur forced liquidations.  (*See* Ex. 17.)   By contrast, in the *Jannetti* Arbitration, the excessive and unsuitable use of leverage was a central issue and one of the primary factors causing the Jannettis' losses.  (*See* Ex. 18, at 24-25.)

[6] Stifel's Motion creates the false impression that Charny was simply "appointed" by FINRA, without any involvement or input from Stifel.  (*See* Motion at 5, 8, 16.)   The opposite is true. Charny was selected mutually by the parties in accordance with FINRA Rule 12403.  (*See* Ex. 21, FINRA Rule 12403.)

9

Arbitration was held on July 8-12, 15-17 and August 26-28, 2024.  On October 3, 2024, the *Deluca* Arbitration panel issued its award, unanimously finding Stifel liable for, among other things, $4,065,436 in compensatory damages, $9,000,000 in punitive damages and $1,100,000 in attorneys' fees.  (Ex. 25 at 2-3.).  The *Deluca* award is silent as to the basis for its award of punitive damages.  (*See id.*)[7]

On October 4, 2024, immediately after receiving the *Deluca* Arbitration award, Stifel filed an Emergency Motion to Recuse Charny (the "Motion to Recuse").  (Ex. 26.)  In the Motion to Recuse, Stifel asserted that -- despite Stifel having intentionally ranked Charny in both the *Deluca* and *Jannetti* Arbitrations -- Charny's ruling in the *Deluca* Arbitration rendered her incapable of being fair and impartial in the *Jannetti* Arbitration.  (*See* Ex. 26 at 6.)  On October 11, 2024, Charny issued an Order denying Stifel's Motion to Recuse and in her Order, affirmatively stated: "I am certain that I can serve and decide the case impartially."  (Ex. 28.)

That same day, Stifel filed a motion to the FINRA Director seeking to remove Charny. (the "Motion to Remove").  (Ex. 29.)  In the Motion to Remove, Stifel asserted the same arguments to the FINRA Director that it now makes to this Court.  (*See id.*; *see also* Ex. 31, at 1-2; Ex. 30.)   The FINRA Director promptly denied Stifel's Motion to Remove.  (Ex. 32.)  In doing so, the FINRA Director ruled that Stifel -- which sought removal based solely on Charny's ruling in the *Deluca* Arbitration -- failed to allege any "information under [FINRA] Rule 12405 *that was not previously known by the parties*."  (*Id.*) (emphasis added.)[8]  Thus, the FINRA

---

[7] On November 7, 2024, another FINRA arbitration panel issued its award in the matter of *Douglas Muhlbauer et al. v. Stifel, Nicolaus & Co, Inc.*, FINRA DR Case No. 23-01270 (the "*Muhlbauer* Arbitration").  The *Muhlbauer* panel unanimously found Stifel liable for $1,879,092 in compensatory damages and $469,773 in attorney's fees.  (*See* Ex. 27 at 3.)

[8] Rule 12405 provides, in relevant part, that an arbitrator must disclose (1) Any direct or indirect financial or personal interest in the outcome of the arbitration; (2) Any existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any

Director essentially ruled that because Stifel had actual knowledge that Charny was serving in both the *Deluca* and *Jannetti* Arbitrations, Stifel could not seek removal merely because of an adverse ruling issued in the *Deluca* Arbitration -- *i.e.*, Charny's punitive damages ruling in the *Deluca* Arbitration did not constitute an undisclosed circumstance that was likely to affect her impartiality or might reasonably create an appearance of partiality or bias.   (*Id.* at 1.)[9]

### C.      The Jannetti Hearing And Award.

On October 14-18, 21-25, December 6, 9-13, 2024 and January 22-24, 2025, the evidentiary hearing in the *Jannetti* Arbitration was conducted in Boca Raton, Florida, before a three member FINRA Dispute Resolution arbitration panel (the "Panel").   Both parties were provided with notice and a full and fair opportunity to be heard.   To that end, the Panel heard a total of 19 days of evidence and arguments. The parties presented eleven witnesses, including seven fact witnesses and four expert witnesses.   The parties presented the Panel with thousands of pages of documentary evidence, and submitted extensive pre-hearing briefing on a broad range of legal and factual issues, including, among other things, attorneys' fees and punitive damages. (*See* Ex. 18, at 45, 82-86; Ex. 33, at 47-48.)

During the *Jannetti* Arbitration hearing, Roberts admitted to knowingly violating Stifel's

---

party's representative, or anyone who the arbitrator is told may be a witness in the proceeding, *that are likely to affect impartiality or might reasonably create an appearance of partiality or bias*; (3) Any such relationship or circumstances involving members of the arbitrator's family or the arbitrator's current employers, partners, or business associates; and (4) Any existing or past service as a mediator for any of the parties in the case for which the arbitrator has been selected. (Emphasis added.)

[9] In its Motion, Stifel falsely states that the FINRA Director denied the Motion to Remove "on grounds not germane to the relief requested here."   (Motion at 12.)   That assertion is -- to put it mildly -- not accurate.   The FINRA Director denied Stifel's Motion to Remove precisely because her punitive damages ruling in the *Deluca* Arbitration did not constitute an undisclosed circumstance likely to affect her impartiality or reasonably create an appearance of partiality or bias.

own compliance policies by sending Jannetti misleading and unapproved documents containing prohibited projections about the notes' future performance.  (*See* Ex. 3-B, Tr. 10-15-2024 at 144:17-25–145:1-3, at 158:12-24, at 300:21-25–301:1-4; Ex. 34).  Roberts further admitted to sending these documents via text message in order to evade supervision by Stifel.  (*See* Ex. 3-A, Tr. 10-14-2024 at 103:25–106:16.)  Moreover, during the hearing, multiple Stifel witnesses, including Roberts, materially altered their testimony on several important issues such as the degree of risk associated with the contingent coupon structured notes at issue.[10]

At the conclusion of the hearing, the parties delivered their closing arguments.  During those arguments, the parties specifically addressed the Jannettis' request for punitive damages and attorneys' fees. (*See* Ex. 3-J, Tr. 01-24-2025 at 232:8-235:13.)

On March 12, 2025, the Panel issued a unanimous Award in favor of the Jannettis, finding Stifel liable for compensatory damages in the amount of $26,504,292, punitive damages in the amount of $79,512,876, and attorneys' fees in the amount of $26,504,292.  (Ex. 1.)  With respect to punitive damages, the Award states:

> Respondent had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Claimants would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in damage. Respondent's egregious conduct included but was not limited to: (1) overconcentration of Claimants' accounts in Structured Notes and overconcentration of Claimants' accounts in limited industries; (2) choosing not to send an Over Concentration Letter on October 21, 2021, based on a specific phone conference with Claimants despite evidence that Respondent's notes of the conference confirm the subject of over concentration was not discussed or addressed; (3) disregarding Respondent's investment philosophy in Claimants'

---

[10] *See* Ex. 3-A, Tr. 10-14-24 at 69:3 – 71:12; Ex. 3-B, Tr. 10-15-24 at 182:12 – 183:6; Ex. 3-C, Tr. 10-16-24 at 416:15 – 417:23, at 541:4 – 542:14; Ex. 3-D Tr. 10-17-24, at 653:24 – 654:23, at 729:21 – 731:19, at 732:4 – 733:1, at 735:15 -20, at 736:12 – 737:10, at 737:11-24, at 738:8-25, at 745:2-20, at 749:17 – 751:6, at 778:8 – 780:12, at 789:9-25; Ex. 3-E, Tr. 10-18-24 at 885:25 – 886:18, at 890:3 – 891:19, at 892:21 – 894:8; Ex. 3-F, Tr. 10-22-24, at 1242:7 – 1245:3; Ex. 3-G, Tr. 10-23-24 at 1645:25 – 1648:1; Ex. 3-H, Tr. 12-12-24 at 3083:18 – 3087:4, at 3149:5 – 3151:17; Ex. 3-I, Tr. 12-13-24 at 3331:5-16, at 3332:24 – 3333:9.

Solutions Account; (4) placing the financial interest of Respondent ahead of the interests of Claimants; (5) permitting/encouraging leverage absent a reasonable basis to believe Claimants had the financial ability to meet such commitments in violation of FINRA Rule 2111 as well as Respondent's Stated Guidelines; (6) violating its fiduciary duty owed to Claimants; (7) failing to exercise heightened supervision including re-training as required; (8) permitting and encouraging offering of "custom" structured note products via texts in violation of the Securities and Exchange Commission recordkeeping requirements which texts contained inaccurate and misleading terminology; (9) the branch manager had no knowledge that Unnamed Person Roberts was required to have heightened supervision; and (10) Claimants were not advised that Unnamed Person Roberts decided to stop offering single stock structured notes.

(Ex. 1 at 3.)

## ARGUMENT

I.   **Applicable Standard -- Judicial Review Of Arbitral Awards Is Extremely Narrow and Exceedingly Deferential.**

"If there is one bedrock rule in the law of arbitration, it is that a federal court can vacate an arbitral award only in exceptional circumstances… So almost always an arbitral award should represent the end, not the start of a legal dispute." *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 78 F.4th 1252, 1261 (11th Cir. 2023), *cert. denied,* 144 S. Ct. 1096, 218 L. Ed. 2d 340 (2024).   Because arbitration is an alternative to litigation, "judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007).

The FAA imposes a "heavy presumption in favor of confirming arbitration awards." *See Torres v. Morgan Stanley Smith Barney, LLC*, 839 Fed. App'x 328, 330 (11th Cir. 2020); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288-89 (11th Cir. 2002).   The presumption is so heavy that the confirmation of an arbitration award is "usually routine or summary." *Riccard,* 307 F.3d at 1288. Thus, as this Court previously has held, "federal courts should defer to the arbitrator's decision whenever possible." *JPay, Inc. v. Kobel*, 2020 WL 5763930, at *3 (S.D. Fla. Sept. 28, 2020) (*citing Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010).

13

Section 10(a) of the FAA identifies the four "exclusive grounds" upon which an arbitration award may be vacated. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008); *see also Gherardi v. Citigroup Global Markets, Inc.*, 975 F.3d 1232, 1236 (11th Cir. 2020) ("Vacatur is allowed 'only in very unusual circumstances' and those 'very unusual circumstances' are described in the statute.") (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Relying on *Hall Street*, the Eleventh Circuit has held that judicially-created bases for vacatur, including the "manifest disregard of the law", "public policy" and "arbitrary and capricious" doctrines, are no longer valid. *Frazier,* 604 F.3d at 1324 (11th Cir. 2010); *see also Graulau v. Credit One Bank, N.A.*, 2024 WL 1174022, at *2 (11th Cir. March 19, 2024) *Spirit of the East, LLC v. Yale Products, Inc.,* 2023 WL 2890013, at *4. (11th Cir. Apr. 11, 2023). Thus, the party seeking vacatur bears a heavy burden to prove one of the four narrow statutory grounds for vacatur. *Riccard*, 307 F.3d at 1288-89.

To that end, the FAA does not permit arbitration awards to be vacated due to an arbitrator's error of fact or law. *See Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 572 (2013); *Hidroelectrica Santa Rita, S.A. v. Corporacion AIC, S.A.*, 119 F.4th 920, 925 (11th Cir. 2024) ("'an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits."); *Commodities & Minerals Enterprise, Ltd. v. CVG Ferrominera Orinoco C.A.,* 111 F.4th 1294, 1300 (11th Cir. 2024) ("A court is bound by the arbitrator's findings and conclusions even when it is convinced [the arbitrator] committed serious error."). In fact, "an arbitrator's actual reasoning is of such little importance" to the court's review "that it need not be explained – the decision itself is enough." *Gherardi*, 975 F.3d at 1237. In this regard, a "motion to confirm an arbitration award is very nearly like asking a court to recognize and enforce the judgment of a different court… so long as the rendering court had jurisdiction, 'the court in which execution is sought will not look behind the judgment and reopen the case on the merits'" *Id.* at

14

1237-1238.

## II. Arbitrator Charny Was Impartial And Did Not Engage In Misconduct Or Exceed Her Authority.

### A. Stifel Waived, Or Is Estopped From Asserting, Any Objection To Arbitrator Charny.

Parties to an arbitration "may not 'sit idle', see whether the award is favorable, and then collaterally attack the proceedings on a ground that it declined to flag sooner." *Biscayne Beach Club Condo. Ass'n v. Westchester Surplus Lines Ins. Co.,* 111 F.4th 1182, 1186 (11th Cir. 2024); *see also Tecnicas Reunidas de Talara S.A.C. v. SSK Ingenieria y Construccion*, 40 F.4th 1339, 1347 (11th Cir. 2022) ("a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised ... when the result turns out to be adverse.'") (citations omitted.)

Here, Stifel waived its objection to Charny serving in two similar Roberts Arbitrations, or should be estopped from objecting, because Stifel ranked Charny to serve in the *Deluca* and *Jannetti* Arbitrations, failed to object to Charny for more than 14 months after she was appointed, and only asserted an objection for the first time after it received an adverse award in the *Deluca* Arbitration. By intentionally ranking Charny in both cases, Stifel knowingly assumed the risk that she could be appointed in both cases, and that she could issue an adverse ruling. Even though Stifel asserts that it only became aware of a potential conflict when Charny ruled against Stifel in the *Deluca* Arbitration, the potential for a conflict arose the moment Charny was appointed to both panels. And Stifel obviously knew she could issue an award in Stifel's favor in both cases (which likely is why Stifel ranked her in both cases). Thus, if Stifel's argument that a punitive damages award in a prior arbitration constitutes a conflict is to be accepted (and as discussed *infra* at II.B., it should not be), then Stifel knew of a potential conflict the minute Charny was appointed. Any other conclusion would permit Stifel to essentially "game the system." Stifel cannot now

15

complain about a circumstance of its own creation simply because it does not like the result.

In its Motion, Stifel claims to be defending "the continuing integrity of FINRA's arbitration process," and the "continued viability of FINRA arbitration as an alternative to judicial actions." (*See* Motion at 1, 25.)   But Stifel is doing precisely the opposite.   It is attacking both the integrity and viability of the FINRA process, and attempting to renege on its own agreement to be bound the rules of that process.   Indeed, not only is an arbitrator expressly permitted to preside over two similar cases against the same broker-dealer involving several of the same witnesses and investments, it is a common occurrence.   As discussed *infra* at Section II. B., the law presumes that an arbitrator -- like a judge -- is uniquely qualified to remain impartial when adjudicating cases involving similar parties and facts.   To that end, Stifel admits in its Motion that "the Parties agreed that FINRA's rules and procedures would define the terms on which they submitted their dispute to arbitration."   (Motion at 20.)   The FINRA Director determined that those rules did not prevent Charny from serving in the *Jannetti* Arbitration after issuing an award of punitive damages -- with two other arbitrators -- in the *Deluca* Arbitration.   (*See* Ex. 32.)[11]   Dissatisfied with the FINRA Director's enforcement of the very FINRA rules and procedures to which Stifel agreed, Stifel now seeks to undermine those rules and procedures by asking this Court to throw out the Award issued by Charny -- and two other arbitrators -- because Stifel's litigation strategy did not work out as planned.   Stifel obviously would not have raised any concerns about Charny's ability to be fair and impartial in the *Jannetti* Arbitration had Stifel not received such an unfavorable result in the

---

[11] In its Motion (Motion at 19 n.12, Ex. V), Stifel cites to a FINRA ruling in the pending matter of *Diamantopoulos, et al. v. Stifel, Nicolaus & Co., Inc.,* (FINRA DR Case No. 23-03052) without submitting the relevant pleadings (the undersigned counsel does not represent the Claimant in that case).   However, in *Diamantopoulos*, Stifel timely asserted an objection to an arbitrator whose name appeared on a list of potential arbitrators.   Even if that were a legitimate objection (and it is not), Stifel raised its objection *before* the parties submitted their rankings to FINRA, and requested a new list with a replacement arbitrator from FINRA in accordance with FINRA rules.

16

*Deluca* Arbitration.   In essence, Stifel is seeking an *ex post facto* opportunity to strike Charny in the *Jannetti* Arbitration.   The law does not permit such an outcome.

The weakness of Stifel's belated objection to Charny is further underscored by the two contradictory positions taken by Stifel in its Motion.   On the one hand, Stifel repeatedly asserts that the *Deluca* Arbitration and the *Jannetti* Arbitration are "virtually identical."   (*See* Motion at 1, 4, 8 and 17.)   At the same time, however, Stifel asserts that it "did not know (and could not have known) at the time Ms. Charny was appointed" of the overlapping issues in the *Deluca* Arbitration and the *Jannetti* Arbitration.   (Motion at 8.)   Putting aside that there are material and significant differences between the *Deluca* and *Jannetti* Arbitrations, Stifel's assertion that it did not know at the time Charny was appointed of the similarities between the two cases -- and that the undersigned counsel would rely on similar facts and witnesses -- is not credible.   The overlapping issues in the two cases are plainly evident from, among other things, a simple reading the Statements of Claim filed in each case.   (*See* Ex. 14; Ex. 17.)   To that end, the undersigned counsel and Stifel entered into a "Global Discovery Agreement" applicable to all Roberts Arbitrations involving investors represented by the undersigned counsel, including the *Deluca* and *Jannetti* Arbitrations.[12]   Furthermore, from July 8 to August 28, 2024, Stifel participated in eleven days of hearings before Charny in the *Deluca* Arbitration.   Thus, by the conclusion of the *Deluca* Arbitration, Stifel clearly was aware of any overlapping issues.   Yet even then, Stifel still had no objection to Charny's service in the *Jannetti* Arbitration.   It was only 36 days later, when the *Deluca* Arbitration award was issued, that Stifel supposedly developed its concerns that the similarities between the *Deluca* and *Jannetti* Arbitrations rendered Charny incapable for being fair and impartial.   In other words, Stifel waited to learn the outcome of the *Deluca* Arbitration before

---

[12] Because the terms of that agreement are confidential, it is not submitted herewith.

17

asserting an objection based upon information it had known for more than a year.   As such, it waived any objection it may have had.   *See Tecnicas*, 40 F.4th at 1347 ("[t]o conclude otherwise would allow Técnicas to 'keep a proverbial ace up its sleeve' by 'wait[ing] until it received a final adverse ruling to state its concerns… Any other rule would undermine the efficiency and fairness of arbitral proceedings… and would be contrary to our federal policy of enforcing arbitral awards.")

### B.  Arbitrator Charny Was Unbiased As A Matter Of Law.

It is well-settled that the evident partiality requirement set forth in §10(a)(2) must be strictly construed.   *See Torres*, 839 Fed. App'x at 330; *Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 828 (11th Cir. 2011).   This Court has held that, in order to vacate an arbitration award for evident partiality, a party bears a heavy burden to prove that the alleged partiality was "direct, definite and capable of demonstration rather than remote, uncertain and speculative."   *Aegis Capital Corp. v. Cohen*, 2019 WL 7168305, at *2 (S.D. Fla. Dec. 24, 2019) (*quoting Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 433 (11th Cir. 1995)).   "[T]he mere appearance of bias or partiality is not enough to set aside an arbitration award."   *Id.*   Rather, to satisfy this exceedingly high standard, a party seeking vacatur for evident partiality must either:   (i) point to evidence of an actual conflict of interest; or (ii) identify a business or other connection that might create a reasonable impression of bias that the arbitrator knew of and failed to disclose.   *Cohen*, 2019 WL 7168305, at *2 (citing *Aviles*, 435 F. App'x at 829); *see also Torres*, 839 Fed. Appx. at 331.

Here, Stifel has not alleged (nor could it allege) that Charny knowingly failed to disclose a business or other connection which might create a potential conflict of interest or impression of bias.   As such, the only remaining ground for Stifel to establish evident partiality under §10(a)(2) is for Stifel to provide evidence of an actual conflict of interest.   But Stifel fails to allege that Charny had an actual conflict of interest.   Rather, Stifel asserts that "the question of 'actual

18

conflict' is equivalent to demonstrable bias." (Motion at 14.)[13]

Even assuming that the actual conflict element of the evident partiality analysis can be satisfied through evidence of actual bias, Stifel's Motion still fails. Stifel has failed to present *any* evidence of demonstrable bias on the part of Charny -- relying on conjecture, supposition and accusation -- let alone establish that her alleged bias was direct, definite and capable of demonstration. The only support that Stifel offers for its assertion that Charny prejudged the issues and was biased against Stifel is that she served as one of three members on an arbitration panel that unanimously issued a punitive damages award against Stifel in a case involving the same financial advisor and some of the same investments.[14] But Stifel fails to cite any authority to support the assertion that an arbitrator's prior award in a similar case constitutes direct and definite evidence of partiality sufficient to warrant vacatur. Of course, that is because the law is exactly the opposite.

---

[13] To support this proposition, Stifel cites to three decisions, *Aviles*, 435 F. App'x at 829, *Mendel v. Morgan Keegan & Co.*, 654 F. App'x 1001, 1004-05 (11th Cir. 2016) and *Fed. Vending, Inc. v. Steak & Ale of Fla., Inc.*, 71 F. Supp. 2d 1245, 1247 (S.D. Fla. 1999), none of which hold that "actual conflict" is equivalent to "demonstrable bias." *Aviles* holds only that "*partiality* as used in the FAA is synonymous with bias…" 435 F. App'x at 829 (emphasis added.) The *Mendel* court refused to entertain an argument of an "actual conflict" that was not raised in the underlying district court proceeding, and thus addressed only the arbitrator's purported failure to disclose a potential conflict. 654 F. App'x at 1005. While the Court does interpose the term "actual[] bias" for "actual conflict," the Court otherwise discusses the issue in terms of conflict, not bias. *See id.* Finally, the extent of the discussion of the issue in *Steak & Ale* is a single sentence stating: "Because there are no allegations of actual conflict or bias, the court will focus on the second nondisclosure prong…" 71 F. Supp. 2d at 1247.

[14] Despite the similarities, there are a number of significant differences between the *Deluca* and *Jannetti* Arbitrations. For example, the Jannetti Award specifically cites as grounds for its punitive damages award factors that were not at issue in *Deluca*, including Stifel's suppression of a letter that would have advised Jannetti of the high level at risk in his account. (Ex. 1 at 3.) In addition, unlike *Deluca*, Roberts intentionally cultivated a close personal relationship with Jannetti, which caused Jannetti to repose even greater trust and confidence in Roberts than an ordinary fiduciary. (*See* Ex. 3-B, Tr. 10-15-2024, at 208:6 – 210:7.) Moreover, there is no way to know the basis for the *Deluca* Panel's punitive damages award because it is entirely silent on the issue. (*See* Ex. 25.)

19

In *Liteky v. U.S.,* 510 U.S. 540 (1994), the United States Supreme Court observed that "it has long been held that judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."   510 U.S. at 555.   The *Liteky* Court specifically rejected the very premise underlying Stifel's motion here:

> Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings.   It has long been regarded as normal and proper for a judge to sit in the same case upon remand, and to sit in successive cases involving the same defendant.

510 U.S at 551.

The Eleventh Circuit similarly has held that "simply presiding over two cases with the same plaintiff and with overlapping facts -- and entering adverse judgments in each case -- is no evidence of the sort of pervasive bias" that could have prejudiced a party in those proceedings. *Waller v. Roche*, 138 Fed. Appx 165, 167 n.2 (11th Cir. 2005); *see also United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999) (party seeking to disqualify a judge for bias must show that the judge's specific actions demonstrate "such pervasive bias and prejudice that it unfairly prejudices one of the parties"); *Miccosukee Tribe of Indians of Fla. v. Cypress*, 56 F.Supp.3d 1324, 1331 (S.D. Fla. 2014) (denying recusal of judge who had presided over a different case with similar parties); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("Ordinarily, a judge's rulings in the same or a related case may not serve as the basis for a recusal motion."); *Maldonado v. Rhoden*, 2021 WL 1293425, at \*1 (M.D. Fla. Apr. 7, 2021) ("A judge is not biased against a civil litigant merely because the judge participated in a criminal action involving the same litigant or related facts."); *Santisteban v. State*, 72 So.3d 187, 194 (Fla. 4th DCA 2011) (the "mere fact that [a judge] made an adverse ruling" against a party on the issue of punitive damages "in a related civil case… did not demonstrate that the judge was personally biased or prejudiced against" that party).

20

Moreover, the standard for vacating an award based on evident partiality is even more exacting than the standard for recusal of a judge. *See Scandinavian Reins. Co. Ltd.,* 668 F.3d 60, 72 (2d Cir. 2012) ("[U]nlike a judge who can be disqualified in any proceeding in which his impartiality might reasonably be questioned, an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would have to conclude that an arbitrator was partial to one side.") (internal citations omitted); *Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 83–84 (2d Cir. 1984) ("something more than the mere 'appearance of bias'" is required to vacate an arbitration award); *see also Austin S. I, Ltd. v. Barton-Malow Co.,* 799 F. Supp. 1135, 1142 (M.D. Fla. 1992) (same).

In *Morgan Keegan & Co. v. Smythe*, 2014 WL 2462853 (Tenn. App. 2014), a Tennessee Court of Appeals addressed a nearly identical motion to Stifel's Motion, and rejected the very same arguments that Stifel makes here. In *Smythe*, Morgan Keegan initially sought to recuse two of the three appointed FINRA arbitrators on the grounds that they previously had entered adverse awards (including punitive damages) against the brokerage firm in "substantially similar" cases. *Id.* at *4-5. Those cases involved "presentation of the same or similar evidence, witnesses and testimony," the "same counsel for both parties," and claims that were "premised on the same theory" involving "the same issues and disclosures" regarding the same investment products. *Id.*

The arbitrators declined to recuse themselves and the brokerage firm then sought to have them removed by FINRA, which also declined to remove the arbitrators. 2014 WL 2462853 at *1. The arbitrators remained on the panel and entered an award against the brokerage firm, which then sought to have the award vacated on the grounds that the arbitrators had previously "formed biases and opinions" about the evidence and issues in the case, and that their prior decisions demonstrated "evident partiality and misconduct" which prejudiced the brokerage firm. *Id.* The trial court granted the brokerage firm's motion to vacate and the investor appealed. *Id.*

21

The Tennessee Court of Appeals reversed and reinstated the award. In doing so, the appellate court held that the arbitrators' prior awards (including an award of punitive damages) in a substantially similar case involving the same investments, issues and witnesses did not constitute actual bias or evident partiality, and that Morgan Keegan's assertion to the contrary was nothing more than mere "speculation."

> Morgan Keegan does not allege that either Mr. Katz or Mr. Hill have a professional, social, or family relationship with any of the attorneys, witnesses, or parties involved. It also does not allege that Mr. Katz or Mr. Hill had any prior knowledge of the Smythe case or Smythe's circumstances. Rather, Morgan Keegan's argument, as we perceive it, is that Mr. Katz and Mr. Hill were pre-disposed to decide in Smythe's favor merely because they had decided in favor of previous claimants represented, in some cases, by the same attorneys and where some of the witnesses overlapped…

> [i]t is not unusual that some proceedings would involve the same attorneys and sometimes the same witnesses, or that individual FINRA arbitrators would participate in more than one arbitration proceeding involving the RMK Funds. *We agree with Smythe that Morgan's Keegan's allegations of evident partiality based on Mr. Katz's participation in two similar arbitration proceedings and Mr. Hill's participation on a panel that awarded punitive damages against Morgan Keegan rest on speculation and not direct, definite evidence of improper motives*…

> The fact that Mr. Katz and Mr. Hill served on previous FINRA arbitration panels involving Morgan Keegan and the RMK Funds is not direct, definite proof of improper motivation on their part.

*Id.* at *1-6 (emphasis added); *see also Scandinavian Reins. Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.,* 668 F.3d 60 (2d Cir. 2012) (arbitrators were not "evidently partial" even though two arbitrators failed to disclose their concurrent service as arbitrators in another, arguably similar arbitration that "overlapped in time, shared similar issues, involved related parties, and included [] a common witness").[15]

---

[15] None of the authorities cited by Stifel are remotely on point, as they involved bias based on financial interests or specific comments. *See Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*, 2019 WL 2462865, at *3 (M.D. Fla. June 13, 2019) (disqualifying appraisers that had a financial interest in the proceedings as the result of a contingency fee arrangement); *Verneus v. Axis Surplus Ins. Co.,* 2018 WL 3417905, at *6 (S.D. Fla. July 13, 2018) (same); *Franklin v.*

The court's reasoning in *Smythe* squarely applies here.   Despite the 19 days of evidentiary hearings in the *Jannetti* Arbitration, and the 11 days of evidentiary hearings in the *Deluca* Arbitration, Stifel failed to allege a single instance of any alleged inappropriate conduct, comment, ruling or other action by Charny.   As such, Stifel fails to meet its burden to demonstrate "direct or definite" evidence of partiality, and instead relies on remote, uncertain and speculative allegations of bias that are based on nothing other than Charny's prior decision in a related case. That is insufficient as a matter of law, and the Motion should be denied.

### C. Arbitrator Charny Did Not Engage In Misconduct.

As this Court previously held, a party seeking to obtain a vacatur for misconduct under §10(a)(3) has the burden to prove that "the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct" that deprived the party of a fundamentally fair proceeding.   *UBS Financial Services Inc. of Puerto Rico v. Efron*, 2023 WL 8412592, at *3 (S.D. Fla. Sept. 25, 2023); *see also Lifecare Int'l, Inc.*, 68 F.3d at 433.   Mere "conclusory" accusations that are "not supported by any evidence in the record" are insufficient to meet that standard. *Efron*, 2023 WL 8412592, at *3.

Here, Stifel attempts to repackage its baseless evident partiality argument under §10(a)(2) by launching a personal attack against Charny.   Stifel accuses Charny of misconduct because she failed to recuse herself in light of the punitive damages award in *Deluca*, and she submitted an

---

*McCaughtry*, 398 F.3d 955, 962 (7th Cir. 2005) (bias demonstrated by actual statements made by the judge in another proceeding about the case at issue); *Norris v. United States*, 820 F.3d 1261, 1265 (11th Cir. 2016) (conviction vacated based on bias demonstrated by judge being investigated for misconduct, which revealed the judge had mental illness, a brain injury from an accident, and disclosed allegations of racial bias); *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 66 (2d Cir. 2003) (arbitrator used by both parties as a CPA may have prejudged the issue by circulating a draft calculation concerning the very matter in dispute); *Kates v. Seidenman*, 881 So. 2d 56, 58 (Fla. 4th DCA 2004) (specific comments made by the judge during a hearing suggested the judge had pre-judged claims for permanent alimony).

23

Oath certifying that she could be impartial in light of the *Deluca* award -- *i.e.,* she supposedly lied. But stripped of its invective, Stifel has failed to provide this Court with any evidence -- proffering only Stifel's self-serving accusation -- that Charny lied to the parties by submitting her arbitrator Oath and certifying that she could decide the *Jannetti* Arbitration fairly and impartially.   Stifel's arguments are entirely conclusory, and Stifel points to no legitimate bad faith actions by Charny or actions that are so gross at to amount to affirmative misconduct.

Stifel's assertion that Charny engaged in misconduct because she supposedly was required to recuse herself as a result of her ruling in *Deluca* is directly contrary to applicable law.   Indeed, a judge is not required to recuse herself based upon the judge's rulings in the same or a related case because "factual knowledge gained during earlier participation in judicial proceedings involving the same party is not sufficient to require a judge's recusal."   *Jaffe v. Grant*, 793 F.2d 1182, 1189 (11th Cir. 1986); *see also McWhorter, supra; Levy v. Citigroup Global Markets, Inc.*, 2006 WL 8432648, at *6 (S.D. Fla. Oct. 17, 2006) (arbitrator who previously served in other arbitrations involving the same party and counsel did not demonstrate evident partiality by refusing to recuse himself).[16]

---

[16] The authorities cited by Stifel confirm that recusal requires affirmative evidence of bias, such as specific comments or an improper financial interest.  *See Port Everglades Auth. v. Andrews*, 603 So. 2d 118 (Fla. 4th DCA 1992) (holding that a judge should have recused himself after the judge made *specific comments* at a social gathering prior to trial "indicating he may have prejudged the case [at issue]."); *Irwin v. Marko*, 417 So. 2d 1108, 1109 (Fla. 4th DCA 1982) (judge created an appearance of bias after making *specific comments* "on the record… that he intends to grant the subject motion for attorney's fees and to award an amount in the six figures," and where the "comments were made prior to any hearing… on the said motion."); Leslie v. Leslie, 859 So. 2d 543, 544-45 (Fla. 4th DCA 2003) (granting motion to disqualify where judge made *specific comments* in a related proceeding that were "so prejudicial as to mandate recusal"); *State v. Steele*, 348 So. 2d 398, 403 (Fla. 3d DCA 1977) (court found that judge made *specific comments* that cast a cloud on his impartiality); *Royal Caribbean Cruises Ltd. v. Soskin*, 2019 WL 12536389, at *4 (S.D. Fla. Feb. 6, 2019) (statements by the arbitrator that he had concluded the claims were baseless, made after the arbitrator had received certain evidence and reviewed summaries of what other witnesses would testify about, did not reflect bias or partiality); *Strasser v. Yalamanchi*, 783 So. 2d 1087, 1091 (Fla. 4th DCA 2001) (refusing recusal where judge made comments that, "in

24

Moreover, Stifel fails to cite any authority to support its assertion that an arbitrator (or judge) engages in misconduct when he or she presides over a case after issuing or presiding over an adverse ruling involving some of the same facts and parties. If Stifel truly believed that an arbitrator's determination on the merits of a case rendered them incapable of being fair and impartial in future cases involving the same party, then Stifel would never have ranked the same seven arbitrators to serve twice in 14 similar Roberts Arbitrations. (Ex. 24 at pdf p. 5.) Similarly, if FINRA believed that an arbitrator's issuance of an adverse award, or an award of punitive damages rendered an arbitrator incapable of being fair and impartial in similar future cases, FINRA rules and procedures would prohibit those arbitrators from serving in similar future cases. Of course, FINRA rules and procedures contain no such prohibition, and the FINRA Director has explicitly and repeatedly rejected this very argument. (*See* Ex. 32.)

In addition, Stifel's attempt to rely on Charny's Updated Arbitrator Disclosure Form as constituting evidence of misconduct is a red herring because Stifel had actual knowledge for at least 14 months that Charny was serving in the *Deluca* Arbitration. As such, there is nothing in Charny's Updated Arbitrator Disclosure Form that Stifel did not already know.[17]

---

hindsight," were not appropriate, but did not reach the threshold level required for recusal); *Harper v. Pro. Prob. Servs. Inc.,* 976 F.3d 1236, 1241 (11th Cir. 2020) (city's outsourced probation program, which was quasi-judicial and subject to impartiality requirement, was not impartial because for-profit corporation earned fees based on the length of the probations it administered).

[17] In support of its Motion, Stifel also submits the Declaration of Jeff Bindon, which refers to *Hagman v. Citigroup Global Markets, Inc.,* 2011 WL 975535 (Cal. Super. Feb. 9, 2011). *Hagman* is an unpublished trial court decision from Los Angeles County Superior Court that does not address or even mention the FAA. In *Hagman,* an arbitration award was vacated "on a single ground: the failure of the Arbitrator to disclose his involvement two years before in his own lawsuit involving the same subject matter." Stifel has not alleged -- and cannot allege -- any such disclosure failure by Charny. And Stifel's argument was explicitly rejected by FINRA precisely because all required information was disclosed to Stifel. (*See* Ex. 32.) Moreover, FINRA recently reaffirmed its position on this issue when denying a virtually identical Motion to Recuse filed by Stifel in another Roberts Arbitration. (*See* Ex. 40.)

Finally, as discussed *infra* at Section III.C.2., Stifel cannot demonstrate that it did not receive a fundamentally fair hearing.  Stifel acknowledges that a fundamentally fair hearing requires only that it receive adequate notice, a hearing on the evidence and an impartial decision (Motion at 18), and there is no dispute that Stifel received adequate notice and a hearing on the evidence.[18]

###### D.      Arbitrator Charny Did Not Exceed Her Authority.

The test for whether an arbitrator exceeds their authority is whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue.  *See Gherardi*, 975 F.3d 1239; *Computer Task Group, Inc. v. Palm Beach County*, 782 So.2d 942, 943 (Fla. 4th DCA 2001).  Here, Charny and the two other arbitrators clearly had the power to rule on the issue of punitive damages.  (*See* Section III.A., *infra*.)

Notwithstanding, Stifel again attempts to repackage its evident partiality argument by seeking vacatur under §10(a)(4) on the grounds that Charny supposedly exceeded her authority by

---

[18] The authorities cited by Stifel confirm that Stifel received a fundamentally fair hearing here. *See Rosensweig v. Morgan Stanley & Co.,* 494 F.3d 1328, 1333 (11th Cir. 2007) (vacatur was not warranted under section 10(a)(3) because, even though the arbitration panel refused to hear certain evidence, the party was not deprived of a fair hearing); *Pochat v. Lynch*, 2013 WL 4496548, at *12 (S.D. Fla. Aug. 22, 2013) (vacatur not warranted because, even if FINRA discovery rule violation could constitute "misbehavior," petitioner rights were not prejudiced where he was permitted to submit and argue his emergency motion); *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.,* 522 F.3d 746, 751 (7th Cir. 2008), *aff'd*, 558 U.S. 67 (2009) (National Railroad Adjustment Board violated due process by requiring the presentation of certain evidence without notice to the petitioners); *Karaha Bodas Co. v. Negara et al.,* 364 F.3d 274, 298-99 (5th Cir. 2004) (hearing was fundamentally fair where plaintiff had notice and opportunity to present ample evidence and make its arguments); *NYKCool A.B. v. Pac. Fruit, Inc.,* 507 F. App'x 83, 88 (2d Cir. 2013) (hearing was fundamentally fair where, even though petitioner was denied the opportunity to present certain evidence on joint and several liability, the panel had an ample evidentiary record from which it could have reached the result it did, and the parties filed written submissions on the issue).

"failing to be truthful or impartial."   Stifel's contorted argument in this regard asserts that because the parties' arbitration agreement provides that their dispute would be governed by FINRA rules and procedures, which include the FINRA Arbitrator Guide, which contains a reference to the FINRA Code of Ethics, which prohibit arbitrators from prejudging the dispute before them, Charny exceeded her authority by supposedly prejudging the merits of the *Jannetti* Arbitration.   Of course, Stifel's house of cards argument relies entirely on the false and unsupported assumption that Charny prejudged the issue.

Putting aside that Stifel has failed to provide any evidence that Charny was untruthful or impartial or prejudged the issue, Stifel also fails to provide this Court with any legal authority to support its assertion that an alleged violation of FINRA's Code of Ethics constitutes a violation of FINRA rules sufficient to support a finding that an arbitrator exceeded their authority under the parties' arbitration agreement.[19]

Finally, it is worth noting that the Award was unanimous, while FINRA rules merely require that arbitration awards be based on a majority determination.  (*See* Ex. 35.)   As such, even if Charny could somehow be viewed as having exceeded her authority by ruling on the punitive damages issue, Charny's vote was not outcome determinative.  *See Shimko v. Wells Fargo Clearing Services, LLC,* 2019 WL 13549465, at *4 (S.D/. Fla. Dec. 27, 2019)("[t]he votes of the remaining two arbitrators are sufficient to sustain their decision"); *Fort Hill Buildings, Inc. v. National Grange Mut. Ins. Co.,* 866 F.2d 11, 14 (1st Cir. 1989) (refusing to find evident partiality

---

[19] Not surprisingly, the authorities cited by Stifel do not support its argument.   *See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.,* 314 F. Supp. 3d 1346, 1356 (S.D. Fla. 2018), *aff'd, Floridians for Solar Choice, Inc. v. Paparella,* 802 F. App'x 519 (11th Cir. 2020) (rejecting claim that sole arbitrator who awarded over $1 million in damages exceeded his authority because the parties agreed to submit their dispute to a single arbitrator); *Cat Charter, LLC v. Schurtenberger,* 646 F.3d 836, 843 (11th Cir. 2011) (denying motion to vacate where parties required a reasoned award and the panel sufficiently justified its award so as to constitute a "reasoned award").

and affirming unanimous arbitration award that exceeded the amount of damages requested by claimant, and observing that "defendants alleged no wrongdoing on the part of the other two [panel] members").

### III.   The Punitive Damages Award Was Within The Panel's Authority.

#### A.   The Parties Empowered The Arbitrators To Decide The Issue Of Punitive Damages.

A Court's review of an arbitration award under §10(a)(4) is merely a binary jurisdictional review to determine whether the parties agreed to submit the issue in question to the arbitrator. *Gherardi*, 975 F.3d at 1237 (likening a review under §10(a)(4) to the domestication of a judgment: "in § 10(a)(4) cases, our review is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved…").   It is well-settled law in the Eleventh Circuit that §10(a)(4) must be interpreted "very narrowly", and that Stifel bears a "heavy burden" to prove that the Panel exceeded its authority.   *See Gherardi,* 975 F.3d at 1237; *Torres*, 839 Fed. Appx at 333.   Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration.   *See Morgan Stanley & Co, LLC v. Core Fund*, 884 F.Supp.2d 1229, 1231 (M.D. Fla. 2012).

Here, the parties unquestionably empowered the Panel to determine the issue of punitive damages, and the Panel had the authority to do so.   The issue of compensatory and punitive damages was properly submitted to the arbitrators on numerous occasions, both in writing and verbally.   Petitioners' Second Amended Statement of Claim repeatedly requests compensatory and punitive damages (*see* Ex. 14, at pp. 15-19), and the Jannettis briefed this issue extensively for the Panel (*see* Ex. 18, at pp. 44-45, 72-78, 82-86).   Moreover, Stifel repeatedly acknowledged that the Panel had the authority to determine the issue of punitive damages.   Stifel's Pre-Hearing Brief argued that the Panel should apply the "clear and convincing" standard of proof when deciding the

28

issue of punitive damages (*see* Ex. 33, at p. 47.), and Stifel addressed the issue in its closing argument (*see* Ex. 3-J, Tr. 1-24-2025 at 232:15 - 235:13).   At no point in the Arbitration did Stifel assert that the Panel lacked the authority to award punitive damages.   Thus, having empowered the Panel on multiple occasions to award punitive damages, Stifel is prohibited from challenging the award simply because things went badly and it disagrees with the Panel's decision.   *See Torres v. Morgan Stanley Smith Barney LLC*, 2020 WL 13413689, at *6-7 (S.D. Fla. April 8, 2020) (denying vacatur of sanctions award where the petitioners raised the issue of sanctions on the first day of the evidentiary hearings, and both parties briefed the issue).

**B.      Stifel Mischaracterizes The Award In An Improper Effort To Create Grounds for Vacatur.**

Stifel's argument that the Panel exceeded its authority is premised on a gross mischaracterization of the Award.   Stifel asserts that the Panel exceeded its authority because punitive damages supposedly were awarded under -- and only under -- the FSIPA.   (Motion at 21-25.)   But the Award plainly states that punitive damages are awarded pursuant to, among other things, "Common Law" and Florida Statutes Sections 768.72.   And even if the Panel improperly awarded punitive damages solely under the FSIPA, and not the Jannettis' other claims, that would merely constitute an error of law that this Court should not -- indeed cannot -- correct.

1.   Stifel Improperly Asks the Court to Make Assumptions About the Basis for the Award.

The Award clearly states that punitive damages are awarded "[p]ursuant to Common Law and Florida Statutes Sections 768.72, 768.73 and specifically 768.72 (2)(a), and Chapter 517". (Ex. 1 at 3).   Notwithstanding, Stifel falsely states that the Panel awarded punitive damages "*solely* under the FSIPA."   (Motion at 21) (emphasis added.)   Undeterred by the actual language of the Award, Stifel asserts that the Panel did not mean what it said and attempts to reverse engineer a finding by the Panel of liability solely for violation of the FSIPA.   (*Id.* at 22-23.)

Stifel relies on the fact that the amount of the compensatory damages award -- which is silent as to which claims it applies -- equals the amount the Jannettis requested in their FSIPA claim to conclude that the Panel must have awarded compensatory damages solely under FSIPA. (Motion at 22.)   Stifel then asserts that if compensatory damages were awarded solely for violation of the FSIPA, the award of punitive damages -- which clearly states that it applies to the Jannettis' Common Law claims -- must be stricken because punitive damages are not available for violation of the FSIPA and/or were not requested by the Jannettis in their FSIPA claim.   (*Id.* at 23.)   Stifel is wrong, and the extent to which Stifel attempts to twist and distort the Award confirms the weakness of its position.

Contrary to Stifel's assertion, the Award does not state that compensatory damages were awarded for violation of the FSIPA, nor does the award deny the Jannettis' common law claims. In fact, the Award does not specify at all -- nor is it required to specify -- which of the Jannettis' common law or statutory causes of action formed the basis for Stifel's liability.   *See Gherardi,* 975 F.3d at 1237.   Rather, the Award simply states that "Respondent is liable for and shall pay to" the Jannettis a certain amount of compensatory damages.   (Ex. 1 at pp. 2-3.)   In this regard, the Panel had broad discretion to determine compensatory damages in whatever amount the Panel deemed appropriate, and there is no basis to conclude that the Panel intended to award compensatory damages only on the Jannettis' FSIPA claim (particularly when the Panel specifically awarded punitive damages on the Jannettis' other claims).   In the absence of an affirmative statement of the Panel's reasoning with respect to compensatory damages, it is not the Court's province to attempt to interpret what the Panel may or may not have meant or to rewrite the Award to include a finding that the Panel expressly did not make.   *See O.R. Sec., Inc. v. Pro. Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988) ("[T]o allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain

30

the award would improperly subvert the proper functioning of the arbital process....") (citations omitted).   Thus, given that there is no factual or legal basis to conclude that the Panel found liability and awarded compensatory damages solely for violation of the FSIPA, there can be no basis to strike the Panel's award of punitive damages.

*Rosati v. Bekhor*, 167 F.Supp.2d 1340 (M.D. Fla. 2001), is directly on point.   In that case, a brokerage firm sought to vacate an arbitration award for punitive damages on the ground that the panel exceeded its authority by finding the brokerage firm liable for violation of FSIPA, which was not a claim asserted by the investors.   In rejecting the same argument now asserted by Stifel, the court held:

> It is well established that an arbitration panel need not state any basis for its award. This Arbitration Panel, in its award, did not specify which facts it found to be true, or which facts led to its conclusion, nor did it state with any specificity upon which law or laws it relied in awarding the monetary damages. The paragraph in question does not conclusively state that the only violations found were violations of the Florida Statutes...
>
> This arbitration panel had to have made many determinations and conclusions during the course of hearing this dispute.   Out of the many determinations, this one determination was stated in the award, however, that does not allow this Court to automatically assume that this is the only conclusion drawn…
>
> Pursuant to §11 of the Federal Arbitration Act (FAA), the grounds for modification occurs if the arbitrators decide *matters* not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.   9 U.S.C.S. §11. Since the subject *matter* was submitted to them, §11 does not apply here.   Hence, there is no basis for modification of the award.   Therefore, it is the opinion of this Court that the Arbitrators did not exceed their powers.

*Id.* at 1345 (emphasis in original.)

Similarly, the Award here, like the award in *Rosati,* does not conclusively state that the only violations found were violations of the Florida Statutes.   Thus, Stifel is improperly asking this Court to make the same kind of assumptions that the *Rosati* court explicitly rejected.   Like the court in *Rosati,* this Court should reject Stifel's improper and illogical assumptions, particularly

31

when the parties submitted the issue of punitive damages to the Panel and Stifel's argument is contradicted by the plain language of the Award.[20]

> 2.   Stifel's Claimed Error of Law Is Not Grounds for Vacatur.

Even if the Court did conclude that the Panel limited its finding of Stifel's liability to FSIPA and that -- contrary to the plain language of the Award -- the Panel intended to limit its punitive damages award to FSIPA, then vacatur still is not warranted.   If the Panel improperly awarded punitive damages solely under FSIPA, that would constitute a pure error of law that this Court does not have jurisdiction to correct.   *See Torres*, 839 Fed. Appx at 334 ("Whether the Panel applied its rules consistent with 'applicable law' or in an arbitrary manner are legal questions that are beyond the limited scope of our judicial review."); cases cited *supra* at Section I.[21]

---

[20] Three of the decisions cited by Stifel directly support denial of the Motion.   In *Floridians for Solar Choice, Inc.,* 314 F. Supp. 3d 1346 (S.D. Fla. 2018), the Court ruled that the arbitrator did not act in excess of his authority under the AAA rules.   In doing so, the Court observed that it could vacate an award "*[o]nly if* 'the arbitrator act[s] outside the scope of his contractually delegated authority'".   314 F. Supp. 3d at 1356 (emphasis supplied) (citation omitted.)   Stifel omits this portion of the quote from its Motion.   (*See* Motion at 20 n. 13.)   In *In Soaring Wind Energy, L.L.C. v. Catic USA Inc.,* 946 F.3d 742 (5th Cir. 2020)*, the court upheld an award of lost profits because it did not violate* the "express" terms of the parties' agreement, which excluded special, exemplary, punitive or consequential damages.   946 F.3d at 757 ("A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration.").   And in *Morgan Stanley & Co., LLC,* 884 F. Supp. 2d at 1229 (M.D. Fla. 2012), the court upheld an arbitration panel's refusal to award prevailing party attorneys' fees where, as here, the parties submitted the issue to the panel.   884 F. Supp. 2d at 1231 ("A party cannot 'overcome the 'high hurdle' necessary for vacating an arbitration award when there is a plain basis for the panel's award in the parties' agreement.") (citations omitted.)

[21] The remaining authorities relied upon by Stifel are entirely inapplicable because in those cases, unlike here, the issue decided by the arbitrator was never submitted by the parties to the arbitrator or there was a contractual limitation on the arbitrator's ability to award certain damages.   *See Davis,* 59 F.3d 1186, 1194-95 (11th Cir. 1995) (arbitrators exceeded their authority in awarding attorneys' fees because, unlike here, they were not requested in the Statement of Claim); *Waddell v. Holiday Isle, LLC*, 2009 WL 2413668, at *14-15 (S.D. Ala. Aug. 4, 2009) (damages award against a particular respondent in an arbitration concerning entitlement to cash deposits and letters of credit exceeded the arbitrator's authority because the issue was not submitted to the arbitrator; *Antietam Indus., Inc. v. Morgan Keegan & Co.,* 2013 WL 1213059, at *9 (M.D. Fla. Mar. 25, 2013) (vacating award of attorneys' fees that was not submitted to the arbitrator where arbitrator

32

Once the Court determines that the parties empowered the arbitration panel to decide the issue before it, the award must be confirmed, regardless of the Court's view as to the merits of the panel's decision. *See Sutter*, 569 U.S. at 569, 573 ("the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong . . ."); *see also Hidroelectrica*, 119 F.4th at 925 ("[A] determination that the arbitrator interpreted the parties' contract will end our inquiry."). And if the parties agreed to submit the issue to arbitration, Courts may not vacate the award based on an alleged error of fact or law:

> For a district court to second-guess an arbitrator's conclusions of law whenever a party disagrees with the outcome—on the asserted basis that an error of law necessarily means that the arbitrator exceeded his powers—would make arbitration nothing but a costly yet meaningless exercise. That is not the intent of the FAA, and it was not the intent of the parties here when they agreed to arbitration of their disputes.

*Saturn*, 560 F.Supp.2d at 1287-88; *see also Commodities & Minerals Enterprise, Ltd,* 111 F.4th at 1300 ("a court is bound by the arbitrator's findings and conclusions even when it is 'convinced [that the arbitrator] committed serious error.").

Thus, although the Panel here did not commit error in awarding punitive damages (in light of the historically egregious nature of Stifel's misconduct, given that the parties submitted the issue to the Panel, and the Panel awarded punitive damages "pursuant to Common Law" among others), any such error still would not -- and cannot -- justify vacatur:

> Arbitrators do not exceed their powers when they make errors, even "a serious

---

converted unilateral attorneys' fees provision into a reciprocal provision, neither party objected to a magistrate judge's report and recommendation vacating the award, and respondent challenged the arbitrator's right to award attorneys' fees during the arbitration); *Schneider v. First Am. Bank*, 336 So. 3d 43, 47 (Fla. 4th DCA 2022) (a trial court cannot award relief that was not requested in the pleadings or tried with consent). Moreover, *Diageo Dominicana, S.R.L. v. United Brands, S.A.,* 314 So. 3d 295 (Fla. 3d DCA 2020), and *Oliveira v. Ilion Taxi Aero Ltda*, 830 So. 2d 241 (Fla. 4th DCA 2002) are not persuasive because those decisions -- which do not involve arbitrations -- simply stand for the unremarkable proposition that a jury verdict awarding punitive damages must be based upon an underlying finding of liability.

error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). . .
That means, however difficult it may be, "we must defer entirely to the arbitrator's
interpretation of the underlying contract no matter how wrong we think that
interpretation is." *Wiregrass*, 837 F.3d 1083, 1087 (11th Cir. 2016)

*Gherardi,* 975 F.3d at 1237.   This is true even where, as here, the panel fails to explain the basis

for their decision.   *See id.* ("In fact, under our current scheme, an arbitrator's actual reasoning is

of such little importance to our review that it need not be explained—the decision itself is

enough.") (*citing O.R. Sec., Inc.,* 857 F.2d at 747).   Thus, even if Stifel's contorted interpretation

of the Award were credited by the Court and the Panel were deemed to have awarded punitive

damages only under FSIPA, the motion still should be denied.

### C.      Stifel Was Not Deprived Of A Right To Due Process.

The Court should reject Stifel's improper request for it to review and vacate or modify the

Panel's award of punitive damages on the grounds of due process.   First, constitutional due

process concerns that permit court review of punitive damages awards in *jury* cases do not apply

in the context of private arbitration.   Second, the minimal requirements of fairness in arbitration

necessitate only notice, an opportunity to be heard, and an impartial decision.

### 1.      Due Process Rights Do Not Apply In Private Arbitrations.

It is settled law in the Eleventh Circuit that private arbitrations do not constitute state action,

and thus do not implicate constitutional due process concerns.   *Davis,* 59 F.3d at 1186 (11th Cir.

1995).   In *Davis*, a brokerage firm sought to overturn a district court's decision confirming an

arbitration award of punitive damages on the grounds that the district court's confirmation of the

award violated the firm's due process rights.   *Id.* at 1187.   In rejecting the brokerage firm's

argument, the Eleventh Circuit held:

> [i]t is axiomatic that constitutional due process protections "do not extend to
> 'private conduct abridging individual rights…
> [w]e agree with the numerous courts that have held that the state action element of

34

> a due process claim is absent in private arbitration cases… In the present case, the arbitration was a private proceeding arranged by a voluntary contractual agreement of the parties.   Accordingly, the arbitration proceeding itself did not constitute state action…

> Neither the punitive damages award itself nor the confirmation of the award by the district court constitute sufficient state action to trigger the application of due process mandates.

*Id.* at 1190-1191, 1193, 1196.   Many other courts are in agreement.   *See e.g., Gellman v. Hunsinger*  2012 WL 4295289, No. 18-cv-2641-BAS-AGS, at *6 (S.D. Cal. Sep 20, 2021) (confirming punitive damages award because, among other things, due process rights are not applicable in private arbitration); *Murillo v. A Better Way Wholesale Autos, Inc.,* 2019 WL 3081062, No. 3:17-CV-1883 (VLB) (D. Conn. July 15, 2019) (same); *MedValUSA Health Programs, Inc . v. MemberWorks, Inc.,* 273 Conn. 634, 641–52, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc . v. MedValUSA Health Programs, Inc.,* 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005) (same); *Mantle v. Upper Deck Co.,* 956 F.Supp. 719 (N.D. Tex. 1997) (same); *Porush v. Lemire,* 6 F.Supp.2d 178 (E.D. N.Y. 1998) (same); *United Merch. Wholesale Inc. v. Direct Containers Inc.,* No. 2:18-CV-617-KM-JBC, 2018 WL 3601232, at *6 (D.N.J. July 26, 2018) (affirming punitive damages award, reasoning that there is no authority for the proposition that the due process concerns apply "in the very different and far more deferential context of review of an arbitration award"); *Morgan Keegan & Co. v. Lalonde,* No. CIV. A. 00-2520, 2001 WL 43600, at *1 (E.D. La. Jan. 16, 2001) (applying due process analysis would disregard the standard of review established by the FAA).[22]

---

[22]   Stifel asserts that "many courts" disagree with *Davis* on this issue, and that the "better reasoned authority falling on the side favoring review"  (Motion at 27 n.15.)   Stifel is wrong, and none of the supposedly "better reasoned" cases reject *Davis* or hold that due process requirements apply to permit review of private arbitration punitive damages awards.   *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 139 (6th Cir. 1996) (applying the now inapplicable "manifest disregard of the law" standard, and "assum[ing] without deciding" that constitutional due process protections applied in an NASD arbitration, the court reviewed a punitive damage award to see if it was supported by *any* evidence); *Tempo Shain v. Bertek,* 120 F.3d 16, 20 (2d Cir. 1997) ("Our

35

Stifel attempts to distinguish *Davis* by asserting that FINRA arbitration is a "far cry from the private arbitration in *Davis*" because Stifel is "required to submit to FINRA arbitration at the customer's request." (Motion at 27-28.)   However, this argument has been described by at least one court in the Eleventh Circuit as "specious and insincere."   In *Park v. First Union Brokerage Services, Inc.,* 926 F.Supp. 1085 (M.D. Fla. 1996) the court held:

> "[I]t is axiomatic that ... only state action is subject to scrutiny under the Due Process Clause." *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186, 1190–1191 (11th Cir.1995).   FUBS recognizes that *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), and *Davis*, preclude a finding of state action in private arbitration cases.   FUBS endeavors to distinguish these precedents on the argument that the arbitration between employer and employee pursuant to NASD procedures is not voluntary, and, therefore, not "a private proceeding arranged by a voluntary contractual agreement of the parties." *Davis*, 59 F.3d at 1190.
>
> It is this Court's view that First Union is no more "compelled" to arbitration than is one of its customers who, in order to open an account with it, signs a standard form contract with an arbitration clause.   If an individual wishes to trade securities they must deal through a broker that provides them access to the market.   If they don't sign a broker's agreement, they don't participate in the market.   Similarly, if First Union doesn't like the NASD arbitration requirement, it could choose not to participate in the securities business.   The distinction of calling the former voluntary and the latter compelled is, frankly, specious and insincere.   *See Davis*, 59 F.3d at 1193… It simply defies credulity for FUBS to argue that "this is not a situation where a party is later complaining about the 'adequacy of the procedures afforded by the forum of its own choosing.'"

*Park*, 926 F.Supp. at 1090.

---

review is restricted to determining whether the *procedure* was fundamentally unfair.") (emphasis added); *Ferraro L. Firm, P.A. v. Royal Merch. Holdings, LLC,* 394 So. 3d 672, 675 (Fla. 3d DCA 2024) (procedural misconduct by arbitrator prejudiced respondent: "Generally, due process requires fair notice and a real opportunity to be heard and defend in an orderly *procedure* before judgment is rendered.") (emphasis added); *Venture Cotton Co-op v. Neudorf,* 2014 WL 4557765, at *5 (Tex. App. 2014) ("assum[ing] for argument's sake" that due process standards apply, and concluding that panel's decision to proceed *ex parte* did not violate due process because the arbitration rules to which the parties agreed to be bound provided the required "reasonable notice"); *Birmingham News v. Horn,* 901 So. 2d 27, 66–67 (Ala. 2004) (distinguishing *Davis* on its facts, but upholding punitive damages claim under the now inapplicable "manifest disregard of the law" standard).

Here, as in *Park*, the parties participated in a private arbitration pursuant to a contractual agreement between the parties.   Specifically, and contrary to Stifel's suggestion that the Jannettis forced them to arbitrate, Stifel's New Account Form requires customers like Petitioners to execute a binding mandatory arbitration agreement in order to open an account with Stifel.   (*See* Ex. 5 pdf at pp. 4-6, 10-11, 19-20, 24-25, 28-30, 33-35, 38-40.)   As the *Davis* Court noted, brokerage firms like Stifel "may not require customers to arbitrate under the terms of an account agreement that PSI [brokerage firm] drafted, and later complain about the adequacy of the procedures afforded by the forum of its own choosing." *Id.*   And as the *Park* court noted, a brokerage firm like Stifel is no more "compelled" to arbitration than are the Jannettis who, in order to open an account with Stifel, signed a standard form contract with an arbitration clause.   Accordingly, it is specious and insincere for Stifel to assert that *Davis* should not control because it was required to submit to a FINRA arbitration (as were the Jannettis).[23]

Notwithstanding, Stifel cites to two authorities -- not involving arbitrations -- for the proposition that due process concerns apply here because FINRA supposedly is "a government actor" that is "subject to constitutional due process requirements."   (Motion at 27.)   But the authorities cited by Stifel do not stand for that proposition and do not support vacatur here; to the extent these authorities stand for application of something akin to *procedural* due process, they require only a fair proceeding and an opportunity to be heard.   In *Busacca v. S.E.C.,* 449 F. App'x 886, 890 (11th Cir. 2011), the Eleventh Circuit affirmed an SEC Order (not a FINRA arbitration)

---

[23] In addition, the Second Circuit Court of Appeals has held that "[i]t is clear that NASD is not a state actor and its requirement of mandatory arbitration is not state action." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138-139 (2d Cir. 2002) ("Given the clear and unambiguous precedent in this Circuit holding that NASD is a private actor and that the adoption of compulsory arbitration by it does not constitute state action, the district court did not err in determining that [respondents'] due process argument failed to confer jurisdiction over [respondents'] action to vacate the arbitration award.")

37

upholding a FINRA disciplinary action, and specifically stated that "we have not yet determined whether FINRA is a government actor subject to the [Due Process] Clause's requirements". *Id.* at 890-91.   The Court then observed that even if due process concerns applied, they simply require "an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 890-91. And in *Rooms v. S.E.C.,* 444 F.3d 1208, 1214 (10th Cir. 2006), the Tenth Circuit affirmed an SEC Order upholding an NASD permanent bar.   The court ruled that due process requires that an NASD rule "give fair warning of prohibited conduct before a person may be disciplined for that conduct," and that the complaint in that case satisfied that requirement simply by alleging the two rules that were violated.   *Id.* at 1214.   Plainly, if due process requirements -- notice and an opportunity to be heard -- apply to this private arbitration, they have been met here.

Recognizing that *Davis* precludes a substantive review of the punitive damages award, Stifel asserts that *Davis* should be overruled.   (Motion at 29-30.)   But putting aside that only the Eleventh Circuit Court of Appeals can overrule *Davis*, there is no basis to do so.   Contrary to Stifel's assertion (Motion at 29), *Davis* is not at all inconsistent with prior panel precedent.   In *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir. 1979), the court found that an arbitration panel exceeded its powers by, unlike here, awarding damages on an issue that appellee had *conceded was not at issue in the arbitration.   See* id.   In doing so, the Court ruled only that arbitrators must provide "a fundamentally fair hearing" and, to that end, are restricted to ruling on those issues submitted by the parties.   *Id.*   Here, of course, both parties submitted the issue of punitive damages to the Panel (*See* Section III.A., *supra),* and the hearing was "fundamentally fair" (*See* Section III.C.2., *infra*).   But more to the point, *Davis* actually followed the reasoning in *Totem Marine* by ruling that the district court erred in confirming the arbitrators' decision on attorneys' fees because that issue, unlike the issue of punitive damages here, was not submitted to the arbitrators.   *See Davis*, 59 F.3d at 1195.

38

Moreover, Stifel's reliance on *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), and *Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994), for reversal of *Davis* is misplaced because those decisions -- like many of the decisions cited by Stifel -- address the standard for reviewing punitive damages awarded by a jury, not an arbitrator.[24]

Stifel also incorrectly asserts that *Davis* should be overturned because judicial confirmation of an arbitral award constitutes state action because the Supreme Court has held that judicial enforcement of private agreements constitutes state action.  (Motion at 30.)  But contrary to Stifel's assertion, only the cited decision in *Shelley v. Kraemer*, 334 U.S. 1 (1948), involves judicial enforcement of a private agreement (in the specific and limited context of racial discrimination).  *See Shelley,* 334 U.S. at 18-20.  The other decisions cited by Stifel do not involve private contracts.  *See Edmondson v. Leesville Concrete*, 500 U.S. 614, 631 (1991) (exercise of peremptory challenges by a party in court); *Lugar v. Edmonson Oil*, 457 U.S. 922, 937 (1982) (use of state officials to execute on an attachment of property); *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964) (civil libel dispute among private parties); *Mooney v. Holohan*, 294 U.S. 103, 113 (1935) (criminal case involving use of perjured testimony by Attorney General). By contrast, courts specifically have rejected the argument that the act of confirming an arbitration award constitutes state action.  *See, e.g., Davis, supra, MedValUSA,* 273 Conn. at 641–52; *Perpetual Sec., Inc.* 290 F.3d at 138-139; *Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2016 WL 1660049, at *2 (N.D. Cal. Apr. 27, 2016), *aff'd*, 877 F.3d 833 (9th Cir. 2017), and *amended on reconsideration*, No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14,

---

[24] Even so, the *Haslip* Court upheld a jury's damages award that was more than four times compensatory damages, was "more than 200 times the out-of-pocket expenses" of the plaintiff, and was far in excess of the fine that could be imposed under the relevant statute.  *Haslip,* 499 U.S. at 23-24.

2018), *aff'd,* 801 F. App'x 492 (9th Cir. 2020).

       2.      The Arbitration Was Fundamentally Fair.

Even if due process was applicable to private arbitration hearings in this Circuit, it is settled law that the concept of due process in an arbitration hearing requires only that the parties receive a fundamentally fair hearing.   *Rosensweig,* 494 F.3d at 1328, 1333 (11th Cir. 2007) (While parties are entitled to a "fundamentally fair hearing" in arbitration, "arbitrators are not required to follow all the niceties observed by the federal courts"); *CM South East Texas Houston, LLC v. Careminders Home Care, Inc.,* 662 Fed. Appx. 701 (11th Cir. 2016) (refusing to vacate arbitration award where respondent received a "fair proceeding"); *Totem Marine*, 607 F.2d. at 651; *Royal Caribbean Cruises Ltd.,* 2019 WL 12536389, at *4 (S.D. Fla. Feb. 6, 2019); *See also Sphere Drake Ins. Ltd. v. Lincoln Nat. Life Ins. Co.,* 2006 WL 2699270, at *7 (N.D. Ill. Sept. 13, 2006) (deferring to arbitration panel's decision where parties were provided with "a full and fair opportunity to brief and argue" the issue).

Here, Stifel received a fundamentally fair hearing, as it was provided with notice, a hearing and an impartial decision.   That ends the inquiry.   Nevertheless, Stifel asserts that it did not receive a fundamentally fair hearing -- and that its due process rights were violated -- based solely on the amount of the punitive damages award.   In doing so, Stifel conflates a fair proceeding with the fairness of the punitive award (Motion at 25-29), and then improperly invites the Court to review the basis for the award (Motion at 30-34).

To accomplish this sleight of hand, Stifel first cites to a number of decisions that stand for the proposition that a court should review the amount of a *jury's* punitive damages verdict to ensure that it complies with constitutional due process.[25]   Stifel then cites (Motion at 28) decisions stating

---

[25] See *Gore*, 517 U.S. 559 (1996) (addressing the standard for excessiveness of a jury award of punitive damages that was 500 times the actual harm); *State Farm*, 538 U.S. at 416-17 (2003);

that "a fundamentally fair arbitration hearing is one that essentially equates with due process." *Sphere Drake Ins.,* 2006 WL 2699270, at *7. Stifel essentially is arguing that in order for an arbitration hearing to be fundamentally fair, it must comply with the constitutional due process requirements regarding awards of punitive damages in *jury trials* set forth in *Gore* and its progeny. But that is not accurate. The due process that must be satisfied in the arbitral context only requires a "fundamentally fair" hearing, and the decisions cited by Stifel confirm as much. *See Sphere Drake Ins.,* 2006 WL 2699270, at *7 (due process in arbitration simply means fundamental fairness in the hearing process); *Prudential Sec., Inc. v. Dalton,* 929 F. Supp. 1411, 1417 (N.D. Okla. 1996) ("If the award is *within the submission,* and contains the honest decision of the arbitrators, after a *full and fair hearing* of the parties, a court of equity will not set it aside for error, either in law or in fact.") (emphasis added); *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.,* 341 F.3d 987, 998 (9th Cir. 2003) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard. . . legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)."); *See also Rosensweig, supra; Total Marine, supra; Careminders, supra.*

Stifel does not cite to a single authority for the proposition that the due process standard for reviewing jury awards should be applied to an award of punitive damages in the arbitration context.[26] To the contrary, it is well-settled law that the due process standard for reviewing jury

---

(applying the standard set forth in *Gore* and its progeny to review jury award of punitive damages); *Honda Motor Co.*, 512 U.S. 415 (1994) (review of jury award of punitive damages); *Haslip, supra* (reviewing jury award of punitive damages); *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 750 (11th Cir. 2020) (applying the standard set forth in *Gore* and its progeny to review jury award of punitive damages).

[26] Stifel cites to one New York state court decision holding that, even though a due process analysis "is inapplicable to arbitration," the *Gore* factors should be considered in determining whether an arbitral award of punitive damages was "irrational." *See Sawtelle v. Waddell & Reed, Inc.,* 304 A.D.2d 103, 109-11 (N.Y. App. Div. 2003). However, in that case, the court applied a

awards simply does not apply to arbitration awards.   *See United Merch. Wholesale Inc.,* No. 2:18-CV-617-KM-JBC, 2018 WL 3601232, at \*6 (D.N.J. July 26, 2018) (reasoning that *Gore* involved review of a trial verdict, and defendants cited no authority for the proposition that *Gore* applies "in the very different and far more deferential context of review of an arbitration award"); *Morgan Keegan & Co. v. Lalonde,* No. CIV. A. 00-2520, 2001 WL 43600, at \*1 (E.D. La. Jan. 16, 2001) ("for the court to engage in the analysis set forth in *Gore,* which is not an arbitration case, would disregard the standard of review required here"); *Mantle*, 956 F.Supp. 719 (N.D. Tex. 1997) (the *Gore* guideposts only apply to a jury award of punitive damages:   "The Court did not modify the highly deferential standards by which arbitration awards are to be evaluated."); *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1063-64 (9th Cir.1991) (agreement to arbitration and participation in that process waived due process challenges to award of punitive damages by arbitrators).

### D.    The Punitive Damages Award Is Not Excessive.

But even if the Court could review the merits of the punitive damages award, it was supported by the record and was not excessive or unreasonable.   Indeed, pursuant to Florida law, a punitive damages award that is three times the amount of compensatory damages generally is permissible and not excessive.   *See* Fla. Stat. § 768.73.   Because the Award here provides for total compensatory damages of $26,504,292, and total punitive damages of $79,512,876 (Ex. 1, at pp. 2-3), the Award complies with Florida law.

Notwithstanding, Stifel repeatedly refers to the Award as "shocking", "unprecedented", "staggering", "runaway", "massive" and "outsized" in an effort to distract from the legal

---

"manifest disregard of the law" standard that is not applicable in this Circuit.   As noted, Stifel does not cite to any other authorities.

sufficiency of, and overwhelming factual basis for, the punitive damages award.   (*See* Motion at 1-2, 4, 7, 13-14, 18, 26, 29, 30-31, 33-35 and 38.)   Indeed, among other truly shocking actions, Stifel's representative admitted that he intended to "chisel[]" his clients, who he referred to as "motherf**ker[s]".   (Ex. 7.)   Moreover, Stifel -- in a blatant effort to protect itself at Jannetti's expense -- suppressed a letter to Jannetti that could have put him on notice of the fraud.   (Ex. 3-E, Tr. 10-18-24 at 926:19-927:3.)   The Panel specifically and unanimously made ten findings with respect to Stifel's "egregious conduct," and concluded that "Respondent had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Claimants would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in damage."   (Ex. 1 at 3.)

Stifel's supposed "shock" at the Award is entirely contrived.   It also is belied by the ruling of two other FINRA arbitration panels that unanimously found Stifel liable for fraud, including $9 million in punitive damages at the very same 3:1 ratio.   These prior awards served as a clear warning that Stifel's extreme and egregious misconduct exposed it to liability for the maximum amount of punitive damages permitted under Florida law, a warning that Stifel ignored.[27]

---

[27] Stifel's assertion that it "was without notice of the possibility of the staggering punitive award" (Motion at 31) is not credible.   *Philip Morris v. Williams, 549 U.S. 346, 353 (2007)*, cited by Stifel for the proposition that evidence of conduct towards others is not relevant, confirms that such evidence is directly relevant to the reprehensibility analysis and can be considered when awarding punitive damages so long as it is not specifically designed to punish for harm caused to others. 549 U.S. at 355.   ("Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible."); *See also Action Marine, Inc. v. Cont'l Carbon Inc.,* 481 F.3d 1302, 1318, 1320 (holding that, while punitive damages may not be awarded to punish for harm inflicted on nonparties, the risk of harm to others is relevant to the reprehensibility analysis, which is considered "the most relevant" guidepost).   Significantly, the punitive damages award at issue in *Philip Morris* -- which was roughly 100 times the compensatory damages -- ultimately was upheld. 549 U.S. at 351*; Williams v. Philip Morris Inc., 344* or. 45, 61 (2008) (on remand from Supreme Court, affirming Court of appeals' reinstatement of jury verdict, including punitive damages award).

Unable to credibly argue that the Award's 3:1 punitive damages violates Florida law, Stifel attempts to concoct a higher punitive damages ratio by asserting that the Panel incorrectly calculated the compensatory damages. (Motion at 30.) Stifel argues that the total compensatory damages award of $26,504,292 is not correct because it exceeds the Petitioners' "out-of-pocket" losses of $16.3 million. (*Id.*) But even if the Panel's calculation of compensatory damages was incorrect (and it was not), Stifel's argument improperly attempts to relitigate in this Court the amount of compensatory damages awarded by the Panel. *See Saturn*, 560 F. Supp.2d at 1287 ("It is well-established, however, that a district court may not vacate an arbitration award simply because the arbitrator fumbled the applicable legal principles."); *O.R. Securities, Inc. v. Professional Planning Associates, Inc.,* 857 F.2d at 748 (11th Cir. 1988) ("[t]he issue of successor liability was clearly presented to the arbitrators and the arbitrators declined to state reasons for their conclusions. This ends the inquiry… O.R. cannot be permitted to relitigate the merits of its claim."); *White Springs Agricultural Chemicals, Inc. v. Glawson Investment Corp.,* 660 F.3d 1277, 1283 (11th Cir. 2011) ("Even though White Springs presents its argument in terms of the FAA, it asks us to do what we may not—look to the legal merits of the underlying award."). Because the Court cannot revisit the basis for the Panel's calculation of $26,504,292 in compensatory damages, then it must accept that the Panel's award of three times that amount in punitive damages is not excessive, particularly given the severity of Stifel's misconduct.[28]

---

[28] The Eleventh Circuit authorities cited by Stifel confirm that the punitive damages award here was not excessive. *See Action Marine, Inc.,* 481 F.3d at 1318 (11th Cir. 2007) (upholding 5:1 ratio of punitive damages given that defendant's action and inaction was "exceedingly reprehensible"); *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 847 (11th Cir. 2021) (upholding 3.3:1 ratio as not excessive and rejecting as *dicta* the Supreme Court's statement in *State Farm* that a ratio closer to 1:1 is appropriate where compensatory damages are substantial); *McGinnis v. Am. Home Mortg. Servicing, Inc.,* 901 F.3d 1282, 1290 (11th Cir. 2018) (upholding 5.9:1 ratio and rejecting as *dicta* that a ratio closer to 1:1 is appropriate where compensatory damages are substantial). In this regard, the should disregard the Bindon Declaration submitted by Stifel. *See Cote*, 985 F.3d at 849 ("the award in each case must be based on the facts and circumstances of

### IV.    The Panel Did Not Exceed Its Authority In Awarding Attorneys' Fees.

A. **Stifel's Assertion That The Jannettis Did Not Introduce Sufficient Evidence Of Their Attorneys' Fees Is Not A Legitimate Basis For Vacatur Or Modification Under §10(a)(4) Or §11(b).**

Because a court's review of an arbitration award under §10(a)(4) is purely a jurisdictional review to determine whether the parties' agreed to submit the issue in question to the arbitrator (*see* Torres, 839 Fed. App'x at 333), the "sole question under § 10(a)(4)," is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether she got its meaning right or wrong." (*Gherardi*, 975 F.3d at 1238).   S*ee also JPay*, 2020 WL 5763930, at \*4.

Here, Stifel's argument that the Petitioners failed to introduce sufficient evidence of their attorneys' fees is a prohibited attempt to have this Court re-examine the merits of the Panel's decision due to an alleged error of fact or law.   *See White Springs*, 660 F.3d at 1283 (declining to address arguments that the arbitration panel exceeded its power by awarding attorneys' fees prohibited by federal and state law because the courts "cannot ... review the panel's award for underlying legal error.")

Stifel cites to the *FINRA Dispute Resolution Services Arbitrator's Guide* for the proposition that if the panel determines that a party has a right to recovery of attorney's fees, that party must prove the amount of attorney's fees "to the satisfaction of the panel."   (Motion at 38.) However, the substance of Stifel's argument ignores the "to the satisfaction of the panel" qualifier. (Ex. 36 at 71.)   The Panel clearly was satisfied with the submissions on attorney's fees, as evidenced by the fact that the Panel did not request any additional testimony, evidence or post-hearing submissions on the issue.   As such, the Panel cannot have exceeded its authority to award attorney's fees.

---

the defendant's conduct and the harm to the plaintiff").

Moreover, Stifel's Motion asserts that the award of attorneys' fees should be vacated on the grounds that the Jannettis did not introduce evidence of their attorneys' fees, and therefore the Panel exceeded its authority by awarding attorneys' fees.   But Stifel does not assert, nor could it assert, that the parties did not empower the Panel to decide the issue of attorneys' fees.   In fact, Stifel itself requested attorneys' fees in its Answer to the Petitioners' Statement of Claim.   (*See* Ex. 37 at 29.)   And as a matter of law, the contract under which Stifel sought to recover its attorneys' fees from the Jannettis must be applied reciprocally.   (*See* Fla. Stat. § 57.105(7).) Accordingly, Stifel cannot now deny that it empowered the Panel to decide the issue of attorneys' fees, and the Court's analysis of Stifel's challenge to the Panel's award of attorneys' fees pursuant to §10(a)(4) and §11(b) need go no further.[29]

Stifel is improperly attempting to relitigate the same argument that has already been heard and rejected by the Panel.   Specifically, in its closing argument, Stifel's counsel argued:

> Attorneys' fees -- maybe I've forgotten.   It's been a long hearing.   I don't remember any evidence of any attorneys' fees.   I don't remember seeing any evidence of attorneys' fees. I don't remember seeing a contingent fee agreement. I don't remember seeing any evidence of cost -- cost. I don't remember seeing a single thing.

(*See* Ex. 3-J, Tr. 1-24-25, at 232:8-14.)   Thus, Stifel asserted this very argument to the Panel, which rejected Stifel's argument.   Unhappy with the Panel's decision, Stifel now improperly asks this Court to substitute its own judgment for that of the Panel.   It should not do so.

In *Hosier v. Citigroup Global Markets, Inc.,* 835 F.Supp. 2d 1098 (D. Co. 2011), a United States District Court addressed a nearly identical argument in denying a brokerage firm's attempt

---

[29] Nor is Stifel's citation to the rules of evidence persuasive.   (Motion at 39.)   FINRA rules make clear that the Federal Rules of Evidence do not apply in FINRA arbitrations.   (*See* Ex. 38, FINRA Rule 12604.)   And the *FINRA Dispute Resolution Services Arbitrator's Guide* instructs: "FINRA Rule 12604 provides that the panel will decide what evidence to admit.   The rule also provides that the panel is not required to follow state or federal rules of evidence."   (Ex. 36 at 58.)

to vacate an arbitration award of attorneys' fees:

> Finally, CGMI also contends that the amount of the $3 million award contravened FINRA procedural requirements because Petitioners failed to "prove the amount" of their attorneys' fees during the hearing. However, the Arbitrator's Guide mandates that a party "must prove the amount of attorneys' fees to the satisfaction of the panel." (Doc. # 14–26 at 52) Evidently, the Panel was satisfied by Petitioners' presentation. Accordingly, the Panel did not exceed its authority by awarding attorneys' fees to Petitioners.

*Id.* at 1108; *see also Orig. Appalachian Artworks v. JAKKS Pacific, Inc.,* 718 Fed. Appx 776, 786 (11th Cir. 2017) ("We may not vacate an arbitrator's award for mere insufficiency of the evidence.")[30]

### B. The Panel Did Not Exceeded Its Authority By Awarding Attorneys' Fees On Punitive Damages.

Stifel's assertion that the panel exceeded its authority by awarding attorneys' fees on punitive damages is yet another example of Stifel seeking vacatur based on an alleged error of law, while cloaking its argument in the language of the FAA. But even if the Court could review the Panel's decision in this regard (and it cannot), Stifel does not cite to a single authority for the proposition that an arbitration panel exceeds it authority when it awards attorneys' fees in the contingency context based on a percentage of the Award. Indeed, *Antietam Industries, Inc.,* 2013

---

[30] The other authorities cited by Stifel are inapplicable given that they address attorneys' fees awards by a trial court, rather than an arbitrator, or they address arbitrations where, unlike here, issues were not submitted to the arbitrator. *See Horowitz v. Rossdale CLE, Inc., 357* So. 3d 260, 263 (Fla. 5th DCA 2023) (trial court); *Schreiber v. Schreiber*, 331 So. 3d 874, 877 (Fla. 5th DCA 2021) (trial court); *Envirocycle Sols., Inc. v. Carpet Inn of Sarasota, Inc.,* 933 So. 2d 1280, 1281 (Fla. 2d DCA 2006) (trial court); *Morton v. Heathcock*, 913 So. 2d 662, 670 (Fla. 3d DCA 2005) (trial court); *Waddell,* 2009 WL 2413668, at *14-15 (in a case not involving attorneys' fees, an issue concerning deposits with respect to one defendant was not submitted to arbitrators); *Safeway Stores, Inc. v. United Food and Commercial Workers Union*, Local 400, 621 F. Supp. 1233, 1241 (D.D.C. 1985) (in a case not involving attorneys' fees, vacatur not granted because court will defer to arbitrator's interpretation of the record); *Fine v. Bear, Stearns & Co.,* 765 F. Supp. 824, 828 (S.D.N.Y. 1991) (same); *Standard Guar. Ins. Co. v. Quanstrom,* 555 So. 2d 828, 833 (Fla. 1990) (trial court*); Newman v. Ormond*, 396 F. App'x 636, 640 (11th Cir. 2010) (trial court); *SafePoint Ins. Co. v. Castellanos*, 394 So. 3d 731, 734 (Fla. 3d DCA 2024) (trial court).

WL 1213059 (M.D. Fla. Mar. 25, 2013), stands for the unremarkable proposition that arbitrators exceed their authority by deciding an attorneys' fees issue that was never submitted to them. *Id.* at \*9. In *Rosati,* a 2001 decision that pre-dates the amendment to Fla. Stat. § 682.11 that permitted arbitrators to calculate the amount of attorneys' fees, the court specifically held that once an issue is submitted to the arbitrator, the arbitrator may consider related issues that were not submitted. *Rosati*, 167 F.Supp.2d at 1345.[31] And in *Matter of Briscoe Protective, LLC v North Fork Surgery Ctr., LLC,* 215 A.D.3d 956 (N.Y. App. Div. 2023), a New York state court -- applying New York law to the interpretation of New York's arbitration statute -- vacated an award of attorneys' fees to petitioner representing 50% of the total award because, among other things, the award was "contrary to the petitioner's agreement with its counsel". 215 A.D.3d at 957-58. Here, of course, the attorneys' fee award is only 25% of the total award and is consistent with the Jannettis' agreement with their counsel. *See Sayers Construction, LLC v. Accordant Communications, LLC*, 2019 WL 6213160, \*5 (W.D. Texas Nov. 21, 2019) (upholding award of attorneys' fees based on contingency fee agreement).[32]

---

[31] Fla. Stat. § 682.11 was amended in 2013 to provide arbitrators with the right to award attorneys' fees. The amended statute provides that "the fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under s. 682.12 or for vacating an award under s. 682.13." Fla. Stat. § 682.11 (2013).

[32] The Court should disregard Stifel's assertion that if *Frazier,* 604 F.3d 1313, at 1322-24 (11th Cir. 2010), is overruled, then the attorneys' fee award is arbitrary and capricious (Motion at 41 n. 22). *Frazier* has been recognized as good law in the Eleventh Circuit for many years and as recently as 2024. *See Graulau*, 2024 WL 1174022 (11th Cir. Mar. 19, 2024) (district court properly denied motion to vacate because party failed to establish "any of the four narrow circumstances justifying vacatur" under the FAA); *McLaurin v. Terminix Int'l Co., LP,* 13 F.4th 1239 (11th Cir. 2021) (defenses to a motion to confirm are limited to those grounds in Section 10 and 11 of the statute); *Johnson v. Directory Assistants Inc.,* 797 F.3d 1294, 1299 (11th Cir. 2015) (the grounds for vacatur listed in § 10(a) are exclusive). In addition, the two authorities cited by Stifel on this issue, *Ainsworth v. Skurnick,* 960 F.2d 939, 941 (11th Cir. 1992), and *Sands v. UZI Barany,* 2008 WL 11520308, at \*4 (S.D. Fla. Aug. 29, 2008), *have nothing to do with attorneys' fees*.

## V.  The Court Should Grant The Cross-Motion And Award Post-Award Prejudgment Interest And Sanctions.

### A.  The Jannettis Are Entitled To Post-Award Prejudgment Interest.

It is settled law that a party is entitled to post-award prejudgment interest on the full amount of an arbitration award from the date of the award through the date the award is confirmed by the Court and converted to a judgment.  *See Rollins v. Black,* 167 Fed. Appx. 798, 800 (11th Cir. 2006) ("In Florida, interest from the date of the arbitral award is 'required' where the award liquidated the amount owed."); *Grigsby & Associates, Inc. v. M Securities Investments, Inc.,* 2010 WL 11452307 at *1-2 (S.D. Fla. Sept. 30, 2010) (awarding post-award prejudgment interest at the Florida statutory rate on arbitration award of sanctions and attorneys' fees); *Shanghai Liyu Optoelectronics Co., Ltd. v. Brite Lite Tribe, LLC,*  2025 WL 1575800, at *3 (S.D. Fla. June 4, 2025) (entering a judgment for post-award prejudgment interest); *Okun v. Litwin Securities, Inc.,* 652 So.2d 387, 389 (Fla. 3rd DCA 1995) (post-award prejudgment interest is not only proper, but required).  This is so even where the Award is silent as to post-award prejudgment interest or where, as here, the Award provides for post-award prejudgment interest as to one component of damages, but not to another.  *See Grigsby,* 2010 WL 11452307, at *1-2 (awarding post-award prejudgment interest on sanctions and attorney's fee portions of the award even though the award only provided for prejudgment interest on compensatory damages); *Shanghai Liyu*, 2025 WL 1575800, at *3 (awarding post-award prejudgment interest even though the relief specified in the arbitration award did not provide for post-award prejudgment interest); *Rollins v. Black,* Case No. 3:03-cv-00772, at *2-3 (M.D. Fla. June 21, 2006) (on remand from the Eleventh Circuit, entering judgment for post-award prejudgment interest on compensatory and punitive damages, even

though the award contained no mention of prejudgment interest.)[33]

Here, the Award liquidated the amount of the Jannettis' damages as of March 12, 2025 (the date of the award.)   The Jannettis were entitled to that amount at that time, and have been deprived of the use of those funds by Stifel's continued refusal to pay the Award.[34]   Thus, the Jannettis are entitled to post-award prejudgment interest on the full amount of the Award from the date the amount was liquidated on March 12, 2025 through the date of confirmation of the Award.

### B.      Stifel's Motion To Vacate Is Frivolous And Warrants Sanctions.

The Eleventh Circuit has observed:   "Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions."   *B.L. Harbert Int'l, LLC v. Hercules Steel Co.,* 441 F.3d 905, 913-914 (11th Cir. 2006).   The Eleventh Circuit's observation squarely applies here, and sanctions are appropriate.   Stifel's Motion willfully mischaracterizes the award, ignores well-settled law and improperly seeks to relitigate the merits of the *Jannetti* Arbitration.   The Motion is without evidentiary or legal support, and this Court should enter monetary sanctions against Stifel for pursuing a frivolous challenge to the Award in the amount of the Jannettis' attorneys' fees and costs incurred in defending against Stifel's frivolous Motion.

---

[33] A copy of the court's decision on remand in *Rollins* is submitted herewith as Ex. 39.

[34] Awarding post-award prejudgment interest on the punitive damages portion of the Award does not violate the prohibition against awarding prejudgment interest on non-economic damages.   The Jannettis are not seeking prejudgment interest on punitive damages from the date of the wrongful conduct, but rather from the date of the Award.   Once the Award has been entered, the amount of the Award -- including punitive damages -- represents an amount duly owed to the Jannettis, akin to a contractual obligation.   *See Badgerow v. Walters*, 596 U.S. 1, 9, 142 S. Ct. 1310, 1316–17, 212 L. Ed. 2d 355 (2022) (an arbitral award "is no more than a contractual resolution of the parties' dispute"); *McLaurin,* 13 F.4th at 1238 (11th Cir. 2021) (motions to confirm, vacate, modify, or correct an arbitration award under the FAA "all replace what would otherwise be a separate breach of contract action to enforce or dispute an arbitration award").

## **CONCLUSION**

For the foregoing reasons, the Jannettis respectfully request that the Court enter an Order: (1) denying the Motion in its entirety; (2) granting the Jannettis' Motion to Confirm Arbitration Award; (3) entering a judgment for the Jannettis in the amount of $132,521,460.00, plus pre-judgment interest at the Florida statutory rate from March 12, 2025 through the date of the judgment; (4) granting the Jannettis' motion for sanctions; (5) reserving jurisdiction to award attorneys' fees and costs to the Jannettis; and (6) granting such further relief the Court deems just and proper.

## **Local Rule 7.1 Certification**

Pursuant to Rule 7.1 of the Local Rules for the United States District Court for the Southern District of Florida, the Jannettis' counsel certifies that counsel for the parties met and conferred concerning the substance of the Jannettis' Cross-Motion.  Specifically, on July 18, 2025, Jeffrey Erez, on behalf of the Jannettis, had a telephone conversation with Wayne Hillis, on behalf of Stifel, in which counsel discussed, but were unable to resolve, the matters at issue in the Cross-Motion.

Dated: July 18, 2025

**EREZ LAW, PLLC**

One Downtown
1 SE 3rd Avenue, Suite 1670
Miami, Florida 33131
Telephone Number:  (305) 728-3320
Toll Free Number:  (888) 840-1571
Facsimile Number:  (786) 842-7549

By: */s/ Jeffrey Erez*
Jeffrey Erez
Florida Bar No. 0102369
jerez@erezlaw.com
Stefan Apotheker
Florida Bar No. 0012502
sapotheker@erezlaw.com

51

Jonathan E. Minsker
Florida Bar No. 0038120
**MINSKER LAW PLLC**
1100 Biscayne Boulevard, Suite 3701
Miami, Florida 33132
Telephone Number:   (786) 988-1020
jminsker@minskerlaw.com

Melanie Damian
Florida Bar No. 99392
**DAMIAN VALORI CULMO**
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone Number:   (305) 371-3960
Facsimile Number:   (305) 371-3965
mdamian@dvllp.com

*Attorneys for Petitioners David Jannetti,*
*Sarah Lyn Jannetti, Adam Jannetti and Leah*
*Jannetti*

52

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Petitioners' Memorandum of Law in Opposition to Respondent's Motion to Vacate Arbitration Award and in Support of Petitioners' Cross-Motion for Post-Award Prejudgment Interest and Sanctions was served, on this 18th day of July 2025, on all counsel of record via the Court's CM/ECF system.

/s/ Jeffrey Erez
Jeffrey Erez
