UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-21176-CIV-DPG/EIS

DAVID JANNETTI, *et al.*,

     Petitioners,

v.

STIFEL, NICOLAUS & CO., INC.,

     Respondent.

_____/

**REPORT AND RECOMMENDATION ON
RESPONDENT'S MOTION TO VACATE ARBITRATION AWARD AND
PETITIONERS' CROSS-MOTION FOR POST-AWARD PREJUDGMENT INTEREST AND SANCTIONS**

This matter is before the Court on Respondent's Motion to Vacate Arbitration Award, ECF No. 27, and Petitioners' Cross-Motion for Post-Award Prejudgment Interest and Sanctions, ECF No. 39 at 62-63.[1] After careful review of the motions, the parties' filings, the pertinent portions of the record, and the applicable law, and the undersigned being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that Respondent's Motion to Vacate Arbitration Award, ECF No. 27, be **DENIED** and that Petitioners' Cross-Motion for Post-Award Prejudgment Interest and Sanctions, ECF No. 39 at 62-63, be **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

On May 11, 2023, Petitioners, four members of the Jannetti family, initiated a Financial Industry Regulatory Authority ("FINRA") arbitration against Respondent in Case No. 23-01342 ("*Jannetti*").  *See* ECF No. 27-4 at 2-3.  Petitioners asserted claims against Respondent for (i)

---

[1] The Honorable Darrin P. Gayles referred both motions to the undersigned.  ECF Nos. 43, 55.

breach of fiduciary duty; (ii) negligence; (iii) negligent supervision; (iv) fraud; (v) breach of contract; and (vi) violation of the Florida Securities and Investor Protection Act ("FSIPA"). ECF No. 27-2 at ¶¶ 70-96. Specifically, Petitioners alleged that one of Respondent's employees, investment advisor Chuck Roberts ("Roberts"), solicited Petitioner David Jannetti as a customer by, among other specific misrepresentations, stating that the structured notes he recommended were "less risky than investing in stocks," had "downside protection," and "would preserve his capital" while generating a long-term average return of about 12.25%. *Id.* at ¶ 15. Petitioners also alleged that once they had opened accounts with Respondent, Roberts "cultivated a close personal relationship" with David Janetti, "lulled him into believing that Roberts was his friend," and made additional misrepresentations and unsuitable investment recommendations (*e.g.*, recommending structured notes linked to single high-risk stocks and overconcentration in structured notes linked to high-risk securities) that induced Petitioners into purchasing high-risk and unsuitable structured notes, engaging in unsuitable short-term trading of speculative stocks, making extreme and unsuitable use of leverage, and authorizing Roberts to execute trades (which included trading in speculative and volatile stocks) without prior authorization. *E.g.*, *id.* at ¶¶ 17, 22, 31-36, 41-43, 46, 52-63. Petitioners claimed Respondent failed to exercise "any adequate supervision" over Roberts, thereby allowing him to "succeed in his abusive conduct," and that Respondent was vicariously liable for the acts and omissions of its employees and other agents, including Roberts. *Id.* at ¶¶ 8, 68.

Two days earlier, on May 9, 2023, a separate FINRA arbitration was initiated by the claimants in Case No. 23-01288 ("*Deluca*"), setting forth claims against Respondent concerning investment losses they suffered. *See* ECF No. 39-36 at 2. In that arbitration—which involved the same counsel and ran in large part concurrently with *Jannetti*—the claimants also brought claims

2

against Respondent for (i) breach of fiduciary duty; (ii) negligence; (iii) negligent supervision; (iv) fraud; (v) breach of contract; and (vi) violation of the FSIPA.  ECF No. 39-28 at ¶¶ 47-73.  The *Deluca* claimants alleged that they opened accounts with Respondent based on specific misrepresentations made by Roberts to claimant Louis Deluca (who had stage four lymphoma and had informed Roberts that he was a conservative investor who was "not interested in high risk or speculative investments"), including Roberts' claims that the structured notes he recommended were "low risk," had "downside protection," and "would preserve his capital and generate around 12%."  *See* ECF No. 39-28 at ¶¶ 8, 11-14.  The *Deluca* claimants further alleged: that Roberts made additional misrepresentations that induced them into making and maintaining high-risk unsuitable investments, including Roberts' representation that they "should not pay attention to pricing and the related losses" on the structured notes in which they had invested because they would "get back [their] investment at full maturity"; that Roberts purchased structured investment products for the claimants' accounts without authorization and/or informed consent; and that when Roberts obtained authorization to execute discretionary trades for claimants without prior authorization, he traded in speculative and volatile stocks.  *Id.* at ¶¶ 17-19, 26, 31, 34, 37.  According to the *Deluca* claimants, Respondent's failure to exercise "any adequate supervision" over Roberts allowed him to "succeed in his abusive conduct," and Respondent is vicariously liable for the acts and omissions of its employees and other agents, including Roberts.  *Id.* at ¶¶ 6, 45.

On June 30, 2023, the parties in the *Deluca* arbitration were provided with an arbitrator ranking form containing a list of potential arbitrators for each party to rank or strike—one of which was a public arbitrator by the name of Stephanie Jeanette Charny ("Charny").  *See* ECF No. 39-30 at 8.  A few days later, on July 5, 2023, a similar ranking form was issued in *Jannetti*, in which Charny was also listed as a potential arbitrator.  *See* ECF No. 39-31 at 8.  Respondent, a party to

both the *Deluca* and *Jannetti* arbitrations, ranked Charny as a potential arbitrator in both, and FINRA subsequently sent letters to the parties on July 28 and August 4, 2023 confirming that Charny had ultimately been appointed to both panels.  ECF No. 39-33 at 2, 7; ECF No. 39-34 at 2, 7.  The Initial Pre-Hearing Conferences before the appointed arbitration panels were held on August 24 and September 12, 2023.  *See* ECF No. 39-33 at 2; ECF No. 39-36 at 6; ECF No. 39-34 at 2; ECF No. 39-2 at 6.  Respondent did not object at the time to Charny serving as an arbitrator in both arbitrations.

A year later, in July and August of 2024, final hearings were held in *Deluca*, in which Charny and the other arbitrators on the panel heard testimony concerning the *Deluca* claimants' investments, Roberts' misrepresentations to those claimants, and Respondent's failure to supervise Roberts.[2]  *See* ECF No. 39-36 at 6; *see also id.* (pre-hearing conference before panel on June 4, 2024).  Those hearings concluded on August 28, 2024, but Respondent still filed no objection to Charny's continued participation on the *Jannetti* arbitration panel.  Over a month later, on October 3, 2024, the *Deluca* panel issued an award in the claimants' favor, finding Respondent liable for $4,065,436 in compensatory damages, $9,000,000 in punitive damages, $1,100,000 in attorneys' fees, and $100,000 in costs.  *See* ECF No. 39-36 at 3-4.  The next day, in *Jannetti*, Charny issued an updated Oath of Arbitrator and Disclosure Checklist, disclosing that she had served in an arbitration involving the same counsel and "similar allegations," and certifying that she had not "formed an opinion, positive or negative, about any of the parties, their counsel or the subject matter of the arbitration."  ECF No. 27-9 at 9.

---

[2] On July 8th, 2024, the first day of the final hearing in *Deluca*, Charny disclosed to the parties that she was also assigned to serve as an arbitrator in the *Janetti* case.  *See* ECF No. 27-11 at 5.

Immediately following Charny's award in *Deluca* and her submission of the updated oath in *Jannetti*, Respondent filed a motion seeking—for the first time—Charny's recusal or removal from the *Jannetti* panel.  *See* ECF No. 27-10; *see also* ECF No. 27-12.  That motion, however, was denied, and Charny ultimately remained on the panel over Respondent's objections.  *See* ECF Nos. 27-11, 27-13 (denials of Respondent's motion).  From October 2024 through January 2025, final hearings were held in *Jannetti*, during which the parties presented testimony and evidence to the arbitration panel—Charny included—concerning Petitioners' claims.  *See* ECF No. 39-2 at 6.  On March 12, 2025, the panel issued an award in Petitioners' favor for $26,504,292 in compensatory damages, $79,512,876 in punitive damages, and $26,504,292 in attorneys' fees and costs.  *See id.* at 3-6.

Respondent now challenges that award pursuant to sections 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11, and Petitioner requests prejudgment interest on the award and sanctions against Respondent for the filing of its motion to vacate the award.

## II.  LEGAL STANDARD

The FAA provides the "exclusive means by which a federal court may upset an arbitration panel's award."  *White Springs Agric. Chems., Inc. v. Glawson*, 660 F.3d 1277, 1280 (11th Cir. 2011).  Under the FAA, there is a "heavy presumption in favor of confirming arbitration awards; therefore, a court's confirmation of an arbitration award is usually routine or summary."  *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (quotation omitted).  Indeed, "[t]he Supreme Court has stressed that judicial review of an arbitration award is very limited in scope," *Barclays Cap. Inc. v. Urquidi*, 786 F. App'x 970, 973 (11th Cir. 2019) (citing *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 568 (2013)), and the Eleventh Circuit has stated that judicial review of arbitration decisions is "among the narrowest known to the law," *Bamberger Rosenheim,*

5

*Ltd. v. OA Dev., Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017) (quoting *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)).

Accordingly, a court may *vacate* an arbitration award under narrow circumstances, where: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators, or either of them"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  *See* 9 U.S.C. § 10(a).  In addition, a court may *modify or correct* an arbitration award where: (1) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; (2) "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"; or (3) "the award is imperfect in matter of form not affecting the merits of the controversy."  *Id.* § 11.

These "seven grounds for 'vacating or modifying' an arbitration award listed in §§ 10 and 11 of the FAA are 'exclusive.'"  *C. Czarnikow Sugar, Inc. v. Pullman Sugar,* LLC, No. 24-CV-23809, 2025 WL 3165224, at *3 (S.D. Fla. Nov. 12, 2025) (quoting *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)).  "While several judicially-created bases for vacatur had developed in this circuit," the Eleventh Circuit "held in *Frazier* that such grounds are no longer valid in light of the Supreme Court's decision in *Hall Street.*"  *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015); *see also Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313,

1324 (11th Cir. 2010).[3]

### III.     ANALYSIS

Respondent asks the Court to vacate the entire arbitration award and argues that to the extent the Court declines to do so, it should vacate or modify the punitive damages and attorneys' fees awards.  *See* ECF No. 27 at 11-14.   The undersigned addresses each of Respondent's arguments in turn.

### A. Vacatur of the Entire Award Is Not Warranted Under Section 10(a) of the FAA.

Respondent first asks the Court to vacate the entire arbitration award pursuant to section 10(a) of the FAA on multiple grounds concerning Charny's purported partiality or bias in *Jannetti*. For the reasons explained below, vacatur on these bases is not warranted.

### i.     *Respondent Has Waived Its Objection to Charny's Purported Partiality or Bias.*

Respondent first contends the *Jannetti* award should be vacated under section 10(a)(2) because Charny's prior award in *Deluca* establishes her "evident partiality."  *See* ECF No. 27 at 23-31.   Specifically, Respondent argues that Charny "prejudged the key material factual and legal issues at the core of" *Jannetti* because she determined in *Deluca* that the "same alleged misconduct by the same financial advisor and his supervisors based on most of the same" witnesses warranted punitive damages, thereby revealing that she "had formed a negative impression" of Respondent and its conduct.  *Id.* at 26-27; *see also* ECF No. 40 at 7 ("To award punitive damages [in *Deluca*], Ms. Charny was required to find [Respondent] guilty of . . . either intentional misconduct or gross negligence.").  Petitioners, however, argue that Respondent has waived or should be estopped from

---

[3] Accordingly, to the extent Respondent now seeks review of the *Jannetti* award on any judicially-created bases for vacatur, *see, e.g.*, ECF No. 27 at 51 n.22 (arguing the panel's attorneys' fee award was arbitrary and capricious, and that the panel manifestly disregarded the law), such review is precluded by *Frazer*.  *See Johnson*, 797 F.3d at 1299.

raising these grounds because Respondent "failed to object to Charny for more than 14 months after she was appointed, and only asserted an objection for the first time after it received an adverse award in the *Deluca* [a]rbitration."  ECF No. 39 at 28.

The Eleventh Circuit has explained that "[w]hen a party discovers an arbitrator's conflict, it must 'contest' the partiality 'at that time' or else 'waive[] the right to object in the future.'" *Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, 111 F.4th 1182, 1186 (11th Cir. 2024) (quoting *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1340 (11th Cir. 2002)).  In other words, a party "may not 'sit idle,' see whether the award is favorable, and then collaterally attack the proceedings on a ground that it declined to flag sooner." *Id.* (quoting *Técnicas Reunidas de Talara S.A.C. v. SSK Ingeniería y Construcción S.A.C.*, 40 F.4th 1339, 1347 (11th Cir. 2022)).  Instead, that party "must, in the face of known potential bias, object or hold their peace."  *Id.* (citing *Bianchi v. Roadway Exp., Inc.*, 441 F.3d 1278, 1286 (11th Cir. 2006)).

Here, Respondent argues that it did not waive its objection because the conflict at issue stems from the *Deluca* award itself, and thus, Respondent could not have discovered or known about any conflict until after the award was issued.  *See, e.g.*, ECF No. 40 at 9-10 (arguing that "[t]he operative event here is Ms. Charny's award in *Deluca*").  But to the extent, if any, that the *Deluca* award created a conflict sufficient to warrant Charny's recusal or removal in *Jannetti*, Respondent knew (or should have known) of that potential conflict well before the *Deluca* award was issued.  Indeed, by no later than August 2024, it would have been apparent to Respondent that both arbitrations involved what it contends are "the same conduct, claims, evidence, and witnesses."  *See* ECF No. 27 at 27.  By then, the statements of claim submitted in each arbitration set forth similar allegations, *compare* ECF No. 39-28, *with* ECF No. 39-24, and the final hearings

8

in *Deluca* had concluded, providing ample notice to Respondent of the evidence that Charny would be evaluating and whether it included any of the same evidence that would be presented in *Jannetti*, *see* ECF No. 39 at 22-23 (indicating the *Deluca* final hearings were held in July and August of 2024); ECF No. 27 at 18-19 (discussing similarity between the allegations and evidence in both arbitrations).   Moreover, Respondent knew the claimants in *Deluca* were seeking punitive damages, *see* ECF No. 27 at 19, and knew that Charny and the *Deluca* arbitration panel would be evaluating the evidence of Roberts' and Respondent's conduct with respect to the *Deluca* claimants and making the very subject matter determinations that Respondent now decries as "negative." *See* Fla. Stat. § 768.72(2) (punitive damages are permitted only if the defendant is found guilty of intentional misconduct or gross negligence).

Yet, despite knowing Charny was considering what Respondent describes as "substantially the same" evidence in both arbitrations, *see* ECF No. 27 at 18, and that the *Deluca* panel, including Charny, could potentially issue a punitive damages award in *Deluca* that would necessarily be based on negative findings about Respondent's conduct with respect to the *Deluca* claimants, Respondent raised no objection to Charny's participation in *Jannetti* until *after* the *Deluca* award was issued on October 3, 2024.  *See* ECF No. 39-36 (*Deluca* award); ECF No. 39-37 at 2-7 (Respondent's motion to recuse Charny, filed the day after the *Deluca* award was issued).  In other words, to the extent Charny's award in *Deluca* may have created a conflict in *Jannetti*, Respondent was aware of that "known potential" conflict well before the *Deluca* award was issued, but "s[a]t idle" for at least a month—and for more than a year after the statements of claim were submitted in the two arbitrations—waiting to see "whether the award [was] favorable," and, only upon discovering that the award was unfavorable, raised an eleventh-hour challenge to Charny's participation in *Jannetti* on a ground that it had "declined to flag sooner."  *See Biscayne Beach*

9

*Club*, 111 F.4th at 1186.  By doing so, Respondent "waived the right to object in the future," *id.*, and it should not be permitted to seek vacatur of the *Jannetti* award under section 10(a)(2).

### ii.     *In Any Event, Respondent Has Not Established Partiality Under Section 10(a)(2).*

Even if it had not waived its objection, Respondent nonetheless fails to meet its burden for establishing evident partiality under section 10(a)(2).  *See Barclays Cap. Inc. v. Platt*, No. 15-21850-CIV, 2018 WL 10759189, at *2 (S.D. Fla. Dec. 26, 2018) ("[T]he burden of proof for showing facts which would establish partiality under 9 U.S.C. § 10(a)(2) is on the party challenging the arbitration award.") (quotation omitted), *aff'd sub nom. Barclays Cap. Inc. v. Urquidi*, 786 F. App'x 970 (11th Cir. 2019).  "Evident partiality exists where a reasonable person would ***have*** to conclude that an arbitrator was partial to one party," *id.* (quotation omitted and emphasis added), such that "an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Univ. Commons-Urbana, Ltd.* 304 F.3d at 1339 (quoting *Gianelli Money Purchase Plan & Trust v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998)).  To establish evident partiality, Respondent must establish partiality that is "direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Gianelli Money Purchase Plan & Trust*, 146 F.3d at 1312 (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982)); *see also, e.g.*, *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996) (agreeing with the Fourth Circuit that "the burden on a claimant for vacation of an arbitration award due to 'evident partiality' is heavy, and the claimant must establish specific facts that indicate improper motives on the part of an arbitrator" (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir. 1993)).  "[T]he mere appearance of bias or partiality is not enough

to set aside an arbitration award." *Lifecare Intern., Inc. v. CD Medical, Inc.*, 68 F.3d 429, 433 (11th Cir. 1995).

Here, Respondent has not established that Charny had any actual conflict. Instead, Respondent relies entirely on the *Deluca* award that was adverse to Respondent to infer that Charny was biased or partial against Respondent. But "[a]n adverse award in and of itself is no evidence of bias absent some evidence of improper motivation."[4] *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 330 (6th Cir. 1998) (citing *Sheet Metal Workers Int'l Ass'n Loc. Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)). As Petitioners point out, even within the context of recusal for the federal judiciary, in which the threshold for disqualification is significantly lower, *see, e.g.*, *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (explaining that a judge "can be disqualified in any proceeding in which his impartiality *might* reasonably be questioned," but an arbitrator can be disqualified "only when a reasonable person, considering all of the circumstances, would *have* to conclude that [the] arbitrator was partial") (citations and quotations omitted), courts have repeatedly emphasized that prior adverse rulings do not evince bias or partiality. *See, e.g.*, *Liteky v. U.S.*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion."); *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001) ("Precedent clearly holds that adverse rulings alone do not provide a party with a basis for

---

[4] Respondent submits two FINRA decisions as supplemental authority on this issue. *See* ECF Nos. 47-1, 51-1 (finding it reasonable to infer arbitrators were partial due to prior service in similar arbitration). At best, these non-binding authorities suggest that a prior award in a similar arbitration may create the *appearance* of partiality—which is plainly "not enough to set aside" an award under the FAA. *See Lifecare Intern, Inc.*, 68 F.3d at 433; *see also Barclays*, 2018 WL 10759189 at *2 ("Evident partiality exists where a reasonable person would *have to* conclude that an arbitrator was partial to one party to the arbitration.") (citation and quotation marks omitted) (emphasis added).

holding that the court's impartiality is in doubt."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *United States v. Merkt*, 794 F.2d 950, 960-61 (5th Cir. 1986). And while Respondent attempts to distinguish this case based on the punitive damages award and findings in the *Deluca* arbitration in which Charny served, *see, e.g.*, ECF No. 40 at 14-15, Respondent fails to demonstrate why the same rationale—that such an award on its own does not constitute evidence of bias or partiality—would not apply. Indeed, an arbitrator's participation in a prior related arbitration, even one involving overlapping matters, does not establish evident partiality. *See, e.g.*, *Fed. Vending, Inc. v. Steak & Ale of Fla., Inc.*, 71 F. Supp. 2d 1245, 1250 (S.D. Fla. 1999) (concluding that evident partiality was not demonstrated when an arbitrator had "considered a particular issue and made a legal determination *on the merits*" in a recent prior arbitration involving one of the parties and that issue "figured prominently in the instant arbitration" because "[t]hat [the arbitrator] might likely decide the same issue the same way in a later arbitration does not mean that he has a bias for or against either party, or that he is motivated for an improper reason to decide the issue or the case one way or the other"); *Dealer Computer Servs., Inc. v. Dave Sinclair Lincoln-Mercury St. Peters, Inc.*, No. CIV.A. H-13-2006, 2013 WL 5918406, at *3 (S.D. Tex. Nov. 1, 2013) (concluding that defendant failed to establish evident partiality of arbitrator who served on an earlier arbitration panel involving plaintiff and that circumstances were "wholly insufficient to establish that [arbitrator] was partial" where plaintiff "presented the same expert witness and a similar damages model" as in earlier arbitration and "the panel's decision may have employed an analysis similar to [arbitrator's] analysis" in the prior arbitration); *cf. Levy v. Citigroup Glob. Markets, Inc.*, No. 06-21802-CIV, 2006 WL 8432648, at *5 (S.D. Fla. Oct. 17, 2006) ("Serving as an arbitrator in more than one case in which one or more of the parties is involved is not the kind of information that requires disclosure."). Beyond offering

speculation, Respondent has failed to demonstrate that Charny failed to act impartially and without bias when she considered both the claims and supporting evidence presented by the *Jannetti* claimants and the defenses and supporting evidence presented by Respondent.[5]  Under the circumstances presented, Respondent has not demonstrated evident partiality such that vacatur under section 10(a)(2) is warranted.

### iii.    *Respondent Has Not Established That Its Rights Were Prejudiced Under Section 10(a)(3).*

Respondent next seeks vacatur of the award under section 10(a)(3) of the FAA, which permits vacatur "where the arbitrators were guilty of . . . misbehavior by which the rights of any party have been prejudiced." *See* ECF No. 27 at 28-30.  "To prove misbehavior" under this subsection, Respondent "must show, as a preliminary matter, that [its] rights have been prejudiced." *Anderson v. Am. Gen. Life Ins. Co.*, 802 F. App'x 548, 553 (11th Cir. 2020).

Here, Respondent claims its "right to a fundamentally fair hearing before an impartial arbitrator" was prejudiced by Charny's supposed "misbehavior" in which she failed to recuse herself and allegedly certified falsely that she had not formed a negative opinion about Respondent or the subject matter in *Jannetti* after issuing the award in *Deluca*.  *See* ECF No. 27 at 28-30.  But, as explained above, Respondent has failed to demonstrate that Charny acted with bias or partiality, *see supra* section III(A)(i), and Respondent has thus failed to demonstrate that it did not receive a fundamentally fair hearing, that is, the "adequate notice," "hearing on the evidence," and "*impartial decision by the arbitrator*" that it claims it was denied.  *See* ECF No. 27 at 28-29

---

[5] Here, Respondent has failed to establish that either Charny's certification that she had not "formed an opinion, positive or negative, about any of the parties, their counsel or the subject matter of the arbitration," ECF No. 27-9 at 9, or her express statement that she was "certain that [she] can serve and decide the case impartially," ECF No. 27-11 at 5, were anything but truthful and accurate.  The fact that Respondent failed to prevail in both the *Deluca* and *Jannetti* arbitrations does not establish otherwise and simply does not establish evident partiality.

(citation and quotation marks omitted) (emphasis original).  Respondent has simply not established that it suffered any prejudice from Charny's participation in the arbitration, and vacatur under section 10(a)(3) is thus not warranted.  *See, e.g.*, *Graybeal v. Wells Fargo Clearing Servs., LLC*, No. 6:24-CV-01199-CEM-UAM, 2025 WL 1276849, at *3 (M.D. Fla. Mar. 27, 2025) (overruling section 10(a)(3) objection to "misbehavior" where the plaintiff failed to show his rights were prejudiced).

### iv.     *Charny's Certification Does Not Warrant Vacatur Under Section 10(a)(4).*

With respect to Charny's purportedly false certification, *see* ECF No. 27-9 at 9 (certifying that Charny had not "formed an opinion, positive or negative, about any of the parties, their counsel or the subject matter of the arbitration"), Respondent contends that the award should be vacated under section 10(a)(4) because "by failing to be truthful or impartial, [Charny's] conduct exceeded her authority under the governing [s]ubmission [a]greement."  ECF No. 27 at 30 n.13.

Respondent contends that Charny must have lied in her certification because "[n]o one could plausibly" make such a certification after issuing a punitive damages award and "acknowledging [they were] being asked to evaluate similar claims, facts, and witnesses."  *Id.* at 30.  But Respondent's assessment of Charny's bias and partiality, and hence her supposed lack of truthfulness, is based wholly on speculation, is unsupported by any evidence, and fails to establish that Charny exceeded her authority.  *See Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, No. 18-CV-23105, 2022 WL 18776152, at *9 (S.D. Fla. Mar. 1, 2022) (rejecting section 10(a)(4) argument for lack of evidence), *aff'd*, 111 F.4th 1182 (11th Cir. 2024).  Moreover, it is more than merely "plausible" that an arbitrator, like a judge, could make a decision in a given case without forming personal opinions that require recusal.  *See, e.g.*, *United States v. Gelin*, No. 21-11091, 2022 WL 10220112, at *2 (11th Cir. Oct. 18, 2022) (finding impartiality of

14

judge could not have reasonably been questioned when recusal arguments were based solely on judge's conduct during proceedings and adverse rulings, and not personal or extrajudicial sources). Charny's decision not to recuse herself and to remain on the *Jannetti* panel, even if that decision had been erroneous, did not exceed her authority and is not a basis to vacate the award under section 10(a)(4).  *See, e.g.*, *Hidroelectrica Santa Rita S.A. v. Corporacion AIC, SA*, 119 F.4th 920, 928 (11th Cir. 2024) ("[A]n arbitrator does not exceed his power when he makes errors.").

### B.   Vacatur or Modification of the Punitive Damages Award Is Not Warranted Under Sections 10(a) and 11(b) of the FAA.

Respondent next contends that, to the extent that the Court declines to vacate the entire award, it should vacate or modify the punitive damages award under sections 10(a) and 11(b) of the FAA.  *See* ECF No. 27 at 31-44.  Respondent's arguments are unavailing.

### i.   *The Panel Did Not Exceed Its Authority by Awarding Punitive Damages.*

Respondent first asks the Court to vacate or modify the punitive damages award under sections 10(a)(4) and 11(b) by arguing that the *Jannetti* arbitrators exceeded their authority, as expressed in the parties' arbitration agreement, to decide only "the present matter in controversy, as set forth in [the] statement of claim," when they issued a punitive damages award based solely on the FSIPA.  *See* ECF No. 27 at 31-35; *see also* ECF No. 27-4 at 2 (arbitration submission agreement).

The Court's review under section 10(a)(4) "is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved." *Gherardi v. Citigroup Glob. Markets Inc.*, 975 F.3d 1232, 1238 (11th Cir. 2020).  In other words, the award "can be challenged 'not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate.'"  *Id.* (quoting *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006)).  Accordingly, "the test for whether an arbitrator exceeds his authority is whether

the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue."[6]  *Comput. Task Grp., Inc. v. Palm Beach Cty.*, 782 So. 2d 942, 943 (Fla. 4th DCA 2001), *cited and quoted parenthetically with approval in Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1304 (11th Cir. 2019).  An award will be overturned "only when it is 'apparent' the arbitrator exceeded his authority."  *Barclays*, 786 F. App'x at 973 (quoting *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envt'l & Infrastructure, Inc.*, 837 F.3d 1083, 1090-91 (11th Cir. 2016)).

Here, Respondent claims that because the arbitration panel awarded punitive damages "solely under the FSIPA," *see* ECF No. 27 at 31, and because "Petitioners never sought punitive damages on their claim for violations of the FSIPA," the panel exceeded its authority by deciding an issue that the parties "did not submit" to the panel, *see* ECF No. 40 at 18.  But Respondent's characterization of the punitive damages award is belied by its plain text, which states: "*Pursuant to Common Law and Florida Statutes Sections 768.72, 768.73 and specifically 768.72 (2)(a),* and Chapter 517, Respondent is liable for and shall pay punitive damages . . . ."  ECF No. 1-3 at 3 (emphasis added).  Considering that Petitioners did in fact request punitive damages for their common law claims within the operative statement of claims, *see* ECF No. 27-2 at 16-17, 18-19, the arbitration agreement "granted the [panel the] authority to reach the issue[]" of punitive damages, *Gherardi*, 975 F.3d at 1238, precluding vacatur or modification of the award on this basis.

Yet, Respondent claims common law could not have been the source of the panel's punitive damages award because the panel only awarded compensatory damages under the FSIPA—*not*

---

[6] Similarly, under section 11(b) of the FAA, an arbitration award may be modified "[w]here the arbitrators have awarded upon a matter not submitted to them."  9 U.S.C. § 11(b).

under Petitioners' common law claims. *See* ECF No. 27 at 32. Respondent asks the Court to reach this conclusion by reading language into the award about the legal basis for the compensatory damages that were awarded. *See id.* But the text of the award is silent as to the rationale for Respondent's liability for compensatory damages and whether the compensatory damages were awarded pursuant to the FSIPA, Petitioners' common law claims, *or both*. *See* ECF No. 1-3 at 2-3 (providing only that Respondent is liable for and shall pay certain sums "in compensatory damages"). Nothing in the language of the award says that compensatory damages were awarded solely pursuant to FSIPA. On the contrary, in the paragraph awarding punitive damages, the award makes clear that, among the reasons supporting the award of punitive damages is the finding that "Respondent's egregious conduct included, but was not limited to . . . violating its fiduciary duty owed to [Petitioners]." ECF No. 1-3 at 3. And as discussed above, Petitioners' statement of claim expressly requested punitive damages on Petitioners' common law claims, including Petitioners' breach of fiduciary duty claim. ECF No. 27-2 at 16-17 (Count I).

Notwithstanding Respondent's arguments, there is no legitimate basis to read the punitive damages award as having been issued solely under the FSIPA, and there is no basis for concluding that the arbitration panel exceeded its authority by deciding a punitive damages issue that was not submitted to it.[7] *See Barclays*, 786 F. App'x at 973 ("A mere ambiguity . . . which permits the inference that the arbitrator may have exceeded his authority[] is not a reason for refusing to enforce the award.") (quoting *Wiregrass*, 837 F.3d at 1090-91). Thus, vacatur or modification is not warranted on this basis.

---

[7] Respondent further contends that the award of attorneys' fees is proof that compensatory damages were awarded solely under the FSIPA. *See* ECF No. 27 at 32-33. But the mere fact that the panel stated that it was awarding attorneys' fees "pursuant to Florida Statutes Chapter 517" simply does not mean that the FSIPA served as the *sole* basis for the award of compensatory damages. *See* ECF No. 1-3 at 3.

ii. ***No Constitutional Due Process Protections Are Implicated by the Punitive Damages Award, And Regardless, Respondent Was Not Deprived of Any Process It Was Due.***

Respondent also seeks vacatur of the punitive damages award under section 10(a)(4) "for the independent reason that it is grossly excessive and exceeds Constitutional boundaries." *See* ECF No. 27 at 35. Specifically, Respondent asks the Court to determine "whether the [*Jannetti*] [a]rbitrators' award of punitive damages in the underlying arbitration exceeded their authority" because the award was "so excessive" as to violate Respondent's due process rights. *See id.* at 36.

Whether constitutional due process applies to the FINRA arbitration proceeding at issue is heavily disputed between the parties. *See* ECF No. 27 at 35-40; ECF No. 39 at 47-52. The Eleventh Circuit, however, has explained that "constitutional protections 'do not extend to "private conduct abridging individual rights,"'" and thus, "only state action is subject to scrutiny under the Due Process Clause." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1190 (11th Cir. 1995) (quoting *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)). The Eleventh Circuit further "agree[d] with the numerous courts that have held that the state action element of a due process claim is absent in private arbitration cases." *Id.* at 1191 (addressing "private [arbitration] proceeding arranged by a voluntary contractual agreement of the parties"). "To decide otherwise," the Eleventh Circuit said, "would constitutionalize private arbitration proceedings and diminish both the effectiveness and the appeal of the arbitral forum as an alternative means for resolving disputes." *Id.* at 1193-94. Accordingly, because the instant proceeding—to which the parties "submit[ted] the present matter in controversy" and "agree[d] to abide by and perform any award(s) rendered," *see* ECF No. 27-4 at 2, 4—constitutes voluntary private action,[8] *Davis*

---

[8] Respondent claims the fact that it is "required to submit to FINRA arbitration at the customer's request, and [FINRA's] rules and procedures . . . highlights the need for constitutional protections." *See* ECF No. 27 at 37-38. But Respondent "is no more 'compelled' to arbitration than one of its customers who, in order to open an account with it, signs a . . . contract with an arbitration clause,"

controls, and no due process protections are implicated by the punitive damages award.[9]  *See Davis*, 59 F.3d at 1190-92.

Respondent nonetheless contends that *Davis* does not apply and that due process protections are implicated in this case because, unlike the private arbitration organization in *Davis* (the American Arbitration Association), "FINRA is properly considered a government actor."  *See* ECF No. 27 at 37.  Yet as both parties acknowledge, the Eleventh Circuit has "not yet determined whether FINRA is a government actor subject to the [Due Process] Clause's requirements." *Busacca v. S.E.C.*, 449 F. App'x 886, 890 (11th Cir. 2011).[10]  Instead, the *Busacca* court assumed that FINRA was a government actor and explained that "[t]o the extent the Due Process Clause applies to FINRA proceedings, its core demand is an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  The court then found that because the petitioner "was afforded a meaningful opportunity to be heard" in a FINRA disciplinary proceeding, "he was not denied any process to which he may have been entitled."  *Id.* at 891.

Here, notwithstanding Respondent's claim of partiality by arbitrator Charny, *see supra* at

---

because "if [Respondent] doesn't like [FINRA's predecessor's] arbitration requirement, it could choose not to participate in the securities business."  *Park v. First Union Brokerage Servs., Inc.*, 926 F. Supp. 1085, 1089-90 (M.D. Fla. 1996); *see also, e.g.*, ECF No. 39-15 at 4-5 (clause binding Respondent's client to arbitration).

[9] "[R]ecognizing that this Court does not have the authority to disregard the Eleventh Circuit," Respondent argues that "*Davis* should be overruled."  ECF No. 27 at 39-40.  The question of whether *Davis* should be overruled is plainly beyond this Court's authority.  *See, e.g.*, *Parrot, Inc. v. NiceStuff Distrib. Int'l, Inc.*, No. 06-61231-CIV, 2008 WL 11332025, at *4 (S.D. Fla. Dec. 9, 2008) ("Rulings of the Eleventh Circuit are binding on this Court, and this Court must, therefore, follow them.").

[10] It must be noted that, as stated in the award, FINRA simply "makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award."  ECF No. 1-3 at 1.  "Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions."  *Id.*  In other words, FINRA had no part in making the decision to award punitive damages in this case.

section III(A)(i), Respondent was not denied a meaningful opportunity to be heard in the arbitration.[11]   Rather, Respondent claims that "the opportunity to be heard is but one requirement of the due process clause," *see* ECF No. 40 at 23-24, and that the Court should evaluate the arbitration award under the due process standard that is used to determine whether a ***jury's*** punitive damages award is unconstitutionally excessive, *see* ECF No. 27 at 36, 40-44 (citing the standard delineated in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996)).   But Respondent has not cited any authority within this Circuit supporting the application of this substantive standard to the review of an arbitration award.   *See generally* ECF Nos. 27, 40; *see also Davis*, 59 F.3d at 1192 (concluding that case law that "involved an award of punitive damages by a jury, not a panel of arbitrators," is "distinguishable" and that "[i]t is plausible to conclude that the due process safeguards required for the imposition of punitive damages by a jury are not required" in the arbitration context).   As such, under the standard articulated in *Busacca*, the "core demand" of due process has been satisfied, and Respondent was not deprived of any process that it was due.   *See* 449 F. App'x at 890.   The "due process challenge to the arbitration panel's award of punitive

---

[11] Although Respondent contends in a footnote that the panel improperly excluded expert testimony, *see* ECF No. 27 at 44 n.19, "[a]ddressing a legal argument only in a footnote is an incorrect method to present substantive arguments on the merits" and amounts to a waiver of the argument.   *Plain Bay Sales, LLC v. Gallaher*, No. 18-80581-CIV, 2019 WL 1782761, at *6 (S.D. Fla. Apr. 24, 2019); *Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote)).   At any rate, the basis for the panel's exclusion of the testimony was reasonable, *see* ECF No. 27-23 at 7-11; *United States ex rel. Salomon Constr. & Roofing, Corp. v. BES Design/Build, LLC*, No. 1:18-CV-21059-UU, 2020 WL 13953718, at *4 (S.D. Fla. June 18, 2020) (an arbitrator "is not 'guilty of misconduct'" if the arbitrator "has any reasonable basis to limit or exclude certain evidence"), and Respondent has not established that the panel acted "in bad faith or committed an error so gross 'as to amount to affirmative misconduct,'" *see Battles v. Am. Van Lines, Inc.*, No. 15-CV-62247, 2016 WL 1258597, at *4 (S.D. Fla. Mar. 31, 2016) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).   Moreover, Respondent has not shown that it was denied a meaningful opportunity to be heard on the issue.

damages must fail." *Davis*, 59 F.3d at 1193.[12]

## C. Vacatur or Modification of the Attorneys' Fees Award Is Not Warranted Under Sections 10(a) and 11(b) of the FAA.

Respondent also seeks vacatur or modification of the attorneys' fee award under sections 10(a) and 11(b). *See* ECF No. 27 at 45-51. Respondent's arguments are again unavailing.

### i. The Court May Not Vacate the Attorneys' Fee Award for Insufficiency of Evidence.

Respondent, claiming that Petitioners "introduced no evidence whatsoever concerning attorneys' fees" in *Jannetti*, argues that the panel acted without authority when it awarded attorneys' fees despite the "complete lack of evidence." *See* ECF No. 27 at 45-49 (citing Florida law and provisions of FINRA's Arbitration Guide). Respondent asks the Court to vacate that award pursuant to section 10(a)(4). *See id.*

As explained above, this Court's review under section 10(a)(4) "is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved." *Gherardi*, 975 F.3d at 1238. Here, Respondent does not dispute that the issue of attorneys' fees was properly submitted to the panel for consideration. *See generally* ECF No. 27; *see also* ECF No. 27-2 at 17, 18, 19, 20 (Petitioner's operative statement of claim, seeking

---

[12] Even were the *Jannetti* arbitration award reviewable under the guideposts and standards used to evaluate jury awards of punitive damages, *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *Gore*, 517 U.S. at 574-75, given the record in this case and the findings made by the arbitration panel concerning the reprehensibility of the knowing conduct in which the Respondent engaged, which conduct led to a punitive damages award for each Petitioner that trebled the amount of compensatory damages suffered by that particular Petitioner, *see* ECF No. 1-3 at 3, Respondent's arguments, including its recharacterization of the evidence, the damages award, and the culpable wrongfulness of Respondent's conduct directed toward Petitioners, *see, e.g.*, ECF No. 27 at 40-44, have failed to establish that the punitive damages awarded to Petitioners were constitutionally excessive. *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991) (holding that punitive damages award that was "more than 4 times the amount of compensatory damages" and "more than 200 times the out-of-pocket expense" of the plaintiff did "not cross the line into the area of constitutional impropriety" and did not violate due process).

attorneys' fees under various counts).  Instead, Respondent's "entire argument for vacatur is based on the weight of the evidence presented."  *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015).  But "that is simply beyond this [C]ourt's . . . power to review" under the FAA.  *Id.*; *see also, e.g.*, *Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*, 718 F. App'x 776, 786 (11th Cir. 2017) ("Defendant argues that there was no evidence to support this conclusion.  However, we may not vacate an arbitrator's award for mere insufficiency of the evidence.").[13]  Accordingly, vacatur is not warranted under section 10(a)(4).

### ii.     The Panel Did Not "Refuse to Hear Evidence" Under Section 10(a)(3).

Respondent next contends that the panel's "decision to award fees without hearing any supporting evidence" is equivalent to "refusing to hear evidence pertinent and material to the controversy," which is a basis for vacatur for "misconduct" under section 10(a)(3).  ECF No. 27 at 48-49; *see also* 9 U.S.C. § 10(a)(3).  Respondent's argument is both baffling and meritless.  By its text, the portion of section 10(a)(3) that Respondent relies upon contemplates an arbitrator's affirmative "refus[al] to hear evidence," *i.e.*, an arbitrator's limitation, exclusion, or other denial of evidence offered by a party in an arbitration.  Indeed, that is what the caselaw on section 10(a)(3) concerns, *see, e.g.*, *United States ex rel. Salomon Constr. & Roofing, Corp. v. BES Design/Build, LLC*, No. 1:18-CV-21059-UU, 2020 WL 13953718, at *4 (S.D. Fla. June 18, 2020) (explaining that an arbitrator "is not 'guilty of misconduct' as contemplated by" section 10(a)(3) "[i]f the arbitrator has any reasonable basis to limit or exclude certain evidence"), and it is *not* "analogous"

---

[13] Respondent attempts to distinguish *Original Appalachian* on the grounds that the case "concerned the materiality of a breach of contract claim and did not involve attorneys' fees."  ECF No. 40 at 28.  That is a distinction without a difference.  *See EWC Franchise, LLC v. DOC Dev., LLC*, No. 20-60035-CIV, 2020 WL 13367252, at *3 (S.D. Fla. July 17, 2020) (concluding that "even if the arbitrator erred . . . by making his decision [on attorneys' fees] with insufficient evidence," that is "not grounds for vacating the award") (citing *Wiand*).

to the instant case, in which Respondent identifies no evidence whatsoever that was offered by any party on the subject of attorneys' fees that the arbitrators refused to consider.  Accordingly, vacatur is not warranted under section 10(a)(3).

### iii.     *The Panel Did Not Exceed Its Authority by Awarding Attorneys' Fees.*

Finally, Respondent contends that the panel exceeded its authority when it awarded attorneys' fees and costs based on punitive damages under the FSIPA and argues that vacatur or modification under sections 10(a)(4) and 11(b) of the FAA is warranted.  *See* ECF No. 27 at 49-51.

Respondent contends the panel decided on a matter that was not submitted by the parties when it awarded attorneys' fees in the amount of 25% of compensatory *and punitive* damages, because Petitioners only requested 25% of *compensatory* damages.  *See id.* at 50.  But the "matter" of attorneys' fees was plainly submitted to the arbitrators for consideration.  *See, e.g.*, *id.* (acknowledging that Petitioners "expressly asked for 'reasonable' attorneys' fees."); *see also* 9 U.S.C. § 11(b) (modification only warranted where arbitrators "have awarded upon a matter not submitted to them").  And to the extent Respondent contends that the panel exceeded its authority because it was contrary to applicable law to include a percentage of punitive damages in the computation of an attorneys' fee award, *see id.* at 50-51 (contending FSIPA does not permit awarding attorneys' fees based on percentage of punitive damages), the Court cannot review the award on that basis.  *See White Springs*, 660 F.3d at 1283 ("These points on appeal essentially involve the same argument: the panel exceeded its powers by acting contrary to the law.  We cannot, however, review the panel's award for underlying legal error.  Even though [appellant] presents its arguments in terms of the FAA, it asks us to do what we may not—look to the legal merits of the underlying award.") (citing *Hall St.*, 552 U.S. at 586).  Accordingly, vacatur or

modification is not warranted on these grounds.

### D. Petitioners' Cross-Motion for Post-Award Prejudgment Interest and Sanctions Should be Granted in Part and Denied in Part.

In the cross-motion found at the end of Petitioners' response to Respondent's motion to vacate, Petitioners request both post-award prejudgment interest and sanctions against Respondent. *See* ECF No. 39 at 62-63. The undersigned addresses each of Petitioners' requests in turn.

### i.   *Petitioners Are Entitled to Post-Award Prejudgment Interest.*

First, Petitioners request "post-award prejudgment interest on the full amount of the [arbitration] [a]ward from the date the amount was liquidated," *i.e.*, the date the *Jannetti* award was issued, "through the date of confirmation of the [a]ward" in this Court. ECF No. 39 at 63. Here, because "[s]ubject matter jurisdiction is founded on diversity of citizenship," Florida law "governs whether [Petitioners] [are] entitled to post-award, pre-judgment interest." *Rollins, Inc. v. Black*, 167 F. App'x 798, 800 n.4 (11th Cir. 2006); *see also* ECF No. 41 at 11 n.4.

The parties dispute whether Petitioners are entitled to post-award prejudgment interest on the full amount of the arbitration award. Respondent argues that Florida law prohibits prejudgment interest on punitive damages, *see* ECF No. 39 at 41 at 11-13, but none of the cases cited by Respondent for that proposition squarely address the present scenario. *See* ECF No. 46 n.3 (distinguishing case law). Here, the damages at issue were liquidated under Florida law when the arbitration panel issued its award. *Okun v. Litwin Sec., Inc.,* 652 So.2d 387, 389 (Fla. 3d DCA 1995) (concluding that an arbitration award liquidates the amount owed to the prevailing party). And "[i]n Florida, interest from the date of the arbitral award is 'required' where the award liquidated the amount owed." *Rollins, Inc.*, 167 F. App'x at 800 (quoting *Okun*, 652 So.2d at 389). Respondent cites no authority that applies Florida's general prohibition of prejudgment interest on

punitive damages to an award that liquidated damages.  *See* ECF No. 39.  Indeed, the Florida

Supreme Court has explicitly distinguished liquidated claims in this context.  *See Argonaut Ins.*

*Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985) (distinguishing liquidated claims from

unliquidated claims and explaining that once damages have been "liquidated . . . as of a date

certain, computation of prejudgment interest is merely a mathematical computation" and "it is a

purely ministerial duty of the trial judge or clerk of the court to add the appropriate amount of

interest").  Accordingly, Petitioners are entitled to prejudgment interest on the liquidated amount

set forth in the award.

Respondent further contends that FINRA Rule 12904(j)—which states in relevant part that

"[a]n award shall bear interest from the date of the award: (1) If not paid within 30 days of receipt;

(2) If the award is the subject of a motion to vacate which is denied; or (3) As specified by the

panel in the award"—cabins the post-award prejudgment interest here only to compensatory

damages because the arbitration panel awarded interest solely on compensatory damages and

denied "[a]ny and all claims for relief not specifically addressed."  *See* ECF No. 41 at 8-11.  But

by its plain text, the rule Respondent relies upon does not limit interest from accruing *only* "[a]s

specified by the panel in the award," but instead *also* states that post-award interest accrues "[i]f

the award is the subject of a motion to vacate which is denied."  FINRA Rule 12904(j).  Because

the undersigned recommends denial of Respondent's motion to vacate, post-award prejudgment

interest on the entire amount of the award is appropriate.  *See Schottenstein v. J.P. Morgan Sec.,*

*LLC*, No. 21-CV-20521, 2022 WL 15497004, at *6 (S.D. Fla. Oct. 27, 2022) (rejecting the same

argument that has been advanced by Respondent and concluding, where the arbitrators only

awarded interest on compensatory damages, that the identically-worded FINRA Rule 13904(j)

*supported* awarding prejudgment interest on costs and attorneys' fees), *aff'd sub nom*, *Goldman Sachs Tr. Co., N.A. v. J.P. Morgan Sec., LLC*, 2024 WL 445571, at *3 (11th Cir. Feb. 6, 2024).

Finally, Respondent contends that Petitioners are attempting to modify or correct the underlying arbitration award. *See* ECF No. 41 at 7-8. But that argument is meritless, as Petitioners merely seek prejudgment interest to which they are entitled under Florida law and FINRA Rule 12904(j). Accordingly, Petitioners' request for prejudgment interest should be granted.

### ii.     *Monetary Sanctions Are Not Warranted.*

Next, Petitioners ask the Court to "enter monetary sanctions against [Respondent] for pursuing a frivolous challenge to the [arbitration] [a]ward in the amount of the [Petitioners'] attorneys' fees and costs incurred in defending against [Respondent's] frivolous [m]otion." ECF No. 39 at 63. Petitioners do not explicitly state the basis for the requested sanctions, but appear to be relying on the Eleventh Circuit's decision in *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, in which the court stated:

> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions.

441 F.3d 905, 913 (11th Cir. 2006). Courts in this Circuit "have invoked *Hercules Steel* in considering sanctions." *Bertin v. Zadok Real Est. Holdings, LLC*, No. 10-24508-CIV, 2012 WL 13012463, at *16 (S.D. Fla. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 13012422 (S.D. Fla. Feb. 23, 2012).

Here, despite Petitioners' conclusory assertion that Respondent's "frivolous" motion is "without evidentiary or legal support," ECF No. 39 at 63, the undersigned "cannot conclude that [Respondent's] challenge was utterly devoid of a basis of law that would compel the Court to impose sanctions" pursuant to *Hercules Steel. See Deitchman v. Bear Stearns Sec. Corp.*, No. 07-

60465CIV-MARRA/JO, 2007 WL 4592238, at *8 (S.D. Fla. Dec. 28, 2007).  Respondent raised various colorable grounds for vacatur or modification of the award and cited to a host of record evidence and applicable legal authority in support of its arguments.  *See generally* ECF No. 27. While Respondent's challenge ultimately fail on the merits, it cannot be said that Respondent pursued this challenge "without any real legal basis for doing so."  *Hercules Steel*, 441 F.3d at 913. Accordingly, Petitioners' cross-motion for sanctions should be denied.  *See, e.g.*, *Williams v. NCL (Bahamas) Ltd.*, No. 18-22774-CV, 2018 WL 5807659, at *7 (S.D. Fla. Nov. 6, 2018) (denying motion for sanctions because plaintiff's "belief that she would prevail by challenging the award in this [c]ourt" was not "objectively unreasonable," even though "many of the arguments raised by [p]laintiff [were] unavailing"), *report and recommendation adopted*, 2019 WL 568394 (S.D. Fla. Jan. 9, 2019).

## IV.     CONCLUSION

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** that Respondent's Motion to Vacate Arbitration Award, ECF No. 27, be **DENIED**, that the underlying Petition to Confirm Arbitration Award, ECF No. 1, accordingly be **GRANTED**, and that Petitioners' Cross-Motion for Post-Award Prejudgment Interest and Sanctions, ECF No. 39 at 62-63, be **GRANTED** as to the request for prejudgment interest and **DENIED** as to the request for sanctions.

Within fourteen (14) days from the date of this Report and Recommendation, that is, **by no later than February 20, 2026**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Darrin P. Gayles, United States District Judge. Failure to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

   **RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 6th day of February 2026.

                  _____

                  EDUARDO I. SANCHEZ
                  UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Darrin P. Gayles
    Counsel of Record